**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division**

CYNTISHA STEWART, TERRY BROWN,
EDUARDO CANTIZZANO, and
LISA HILL-GREEN, *on behalf of themselves
and all individuals similarly situated*,

        Plaintiffs,

v.                                           Civil Action No. <u>3:20-cv-903</u>

LEXISNEXIS RISK DATA RETRIEVAL SERVICES, LLC,
aka LexisNexis Risk Data Management Inc.,

and

LEXIS NEXIS RISK SOLUTIONS, INC.,

        Defendants.

## <u>CLASS ACTION COMPLAINT</u>

COME NOW the Plaintiffs, CYNTISHA STEWART, TERRY BROWN, EDUARDO CANTIZZANO, and LISA HILL-GREEN ("Plaintiffs"), individually and on behalf of a class of similarly situated consumers, by Counsel, and as for their Complaint against Defendants, they allege as follows:

### PRELIMINARY STATEMENT

1.    This is an action for the Defendants' violations of multiple sections of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681a–x.

2.    For years, the Big Three consumer reporting agencies ("CRAs"), Equifax, Experian, and Trans Union, reported public-record information about consumers that was widely known to be fraught with preventable inaccuracies. Significant FCRA litigation resulted, with those CRAs settling class-action cases in this District and Division with remedies including,

among other things, their agreement to cease reporting such records for lengthy periods. *Thomas v. Equifax Info. Servs., LLC*, No. 3:18-cv-00684-MHL (E.D. Va.); *Clark v. Experian*, No. 3:16-cv-00032-MHL (E.D. Va.); *Clark v. Trans Union, LLC*, No. 3:15-cv-00391-MHL (E.D. Va.).

3.     This case is a continuation of these efforts, as Defendants here remain responsible for the harm caused before and now have designed new products to circumvent these earlier settlements by Equifax, Trans Union, and Experian.

4.     With the reporting void in the market after the public-record settlements, others like the LexisNexis Defendants sought to fill it by taking up the reporting of public records. But, since many of the CRAs' errors in reporting public records occurred because they purchased those records from LexisNexis companies in the first place, this data is just as error-prone as it was prior to the public-records litigation against the Big-Three CRAs.

5.     This case presents violations of the FCRA related to the inaccurate reporting of public records, reporting of public records that are too old to be included in reports, the failure to adequately investigate disputes of inaccuracies, the failure to tell consumers who purchased their reports from LexisNexis, and the failure to provide consumers with all the information in their files when consumers requested it.

6.     Plaintiffs bring their claims on behalf of multiple nationwide classes described below, asserting Defendants' willfully violated the FCRA as to each claim and putative class. Defendants' processes and procedures relating to the violations Plaintiffs press are uniformly applied and entirely by design. These are textbook claims for pursuing as a class, where classwide proof of Defendants' conduct will drive the litigation.

## JURISDICTION

7.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681(p).

8.    Venue is proper in this District and Division because a substantial portion of the events and omissions giving rise to the claims occurred in this District and Division. All of the Plaintiffs reside in this District and three reside in this Division, and their injuries occurred here.

9.    Critical third-party witnesses are also located here in Richmond, including the Executive Secretary of the Supreme Court of Virginia, which is the custodian of records for all general district courts in the Commonwealth, the Virginia Department of Motor Vehicles, which sells information about Virginia driving records to the Defendants, and the many other witnesses who were necessary in litigation of the Big-3 Public Records cases.

## PARTIES

10.    Plaintiff Terry Brown is a natural person, a "consumer" as defined by 15 U.S.C. § 1681a(c), and a Virginia resident.

11.    Plaintiff Eduardo Cantizzano is a natural person, a "consumer" as defined by 15 U.S.C. § 1681a(c), and a Virginia resident.

12.    Plaintiff Lisa Hill-Green is a natural person, a "consumer" as defined by 15 U.S.C. § 1681a(c), and a Virginia resident.

13.    Plaintiff Cyntisha Stewart is a natural person, a "consumer" as defined by 15 U.S.C. § 1681a(c), and a Virginia resident.

14.    Defendant LexisNexis Risk Data Retrieval Services, LLC ("LN Risk Data") is a "consumer reporting agency" ("CRA") as defined by 15 U.S.C. § 1681a(f) that regularly conducts business in the Commonwealth of Virginia. LN Data is also a "reseller," as defined by § 1681a(u) of the FCRA, that assembles and merges information contained in the databases of other consumer reporting agencies and resells the data to third parties.

15.     Defendant LexisNexis Risk Solutions, Inc. ("LN Risk Solutions") is a "consumer reporting agency" ("CRA") as defined by 15 U.S.C. § 1681a(f) that regularly conducts business in the Commonwealth of Virginia.

16.     Defendants regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers in order to furnish "consumer reports" to third parties as defined by 15 U.S.C. § 1681a(d).

## FACTS

### *Fair Credit Reporting Act Requirements are Rigorous*

17.     Prior to the enactment of the FCRA, inaccurate and misleading information was identified as "the most serious problem in the credit reporting industry." 115 Cong. Rec. 2411 (Jan. 31, 1969). With this problem in mind, Congress enacted the FCRA in 1970 to ensure the "confidentiality, accuracy, relevancy, and proper utilization" of credit reports. 15 U.S.C. § 1681(b).

18.     To accomplish Congress' goals, the FCRA contains a variety of requirements to protect consumers, including §§ 1681e, 1681c, and 1681g(a), which are three cornerstone provisions of the FCRA.

19.     Whenever a consumer reporting agency prepares a consumer report, § 1681e(b) requires the CRA to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates. 15 U.S.C. § 1681e(b).  This section imposes a high, and often disregarded, standard on consumer reporting agencies.  *See, e.g.*, *Burke v. Experian Info. Sols., Inc.*, No. 1:10-cv-1064(AJT/TRJ)., 2011 WL 1085874, at *4 (E.D. Va. Mar. 18, 2011) (breaking down the requirements of § 1681e(b), and explaining that "'assure' means 'to make sure or certain: put beyond all doubt,'" "'[m]aximum' means the

'greatest in quantity or highest degree attainable[,]' and 'possible' means something 'falling within the bounds of what may be done, occur or be conceived.'" (quoting *Webster's Third New International Dictionary* 133, 1396, 1771 (1993)).

20.    FCRA § 1681c "generally provides time limits beyond which CRAs cannot include information in consumer reports." Fed. Tr. Comm'n, 40 YEARS OF EXPERIENCE WITH THE FAIR CREDIT REPORTING ACT, July 2011, at 55.[1] "[T]o protect consumers from having their credit forever impaired by aging debts, CRAs are precluded from reporting . . . 'adverse item[s] of information,' aside from criminal convictions" longer than "seven years after the adverse event." § 1681c(a)(5). When the seven-year threshold for these items is reached, CRAs may no longer lawfully report that data: in industry parlance, it has "aged off" the consumer's credit report. *Seamans v. Temple Univ.*, 744 F.3d 853, 860 (3d Cir. 2014).

21.    Pertinent to this lawsuit, because traffic infractions are not criminal convictions, they cannot be reported more than seven years after occurrence.

22.    To further strengthen the protections of § 1681c, the FCRA also requires consumer reporting agencies to "maintain reasonable procedures designed to avoid violations" of § 1681c. 15 U.S.C. § 1681e(a).

23.    In enacting the FCRA, and in particular its disclosure rights, Congress "hoped to address a number of related problems, including 'the inability at times of the consumer to know he is being damaged by an adverse credit report,' the lack of 'access to the information in [his] file,' [and] the 'difficulty in correcting inaccurate information.'" *Cortez v. Trans Union, LLC*,

---

[1] Available at https://www.ftc.gov/sites/default/files/documents/reports/40-years-experience-fair-credit-reporting-act-ftc-staff-report-summary-interpretations/110720fcrareport.pdf.

617 F.3d 688, 706 (3d Cir. 2010) (citing *TRW Inc. v. Andrews,* 534 U.S. 19, 24, 122 S. Ct. 441, 151 L. Ed. 2d 339 (2001).

24.     In furtherance of these ends, "the FCRA allows the consumer to check the accuracy of the information possessed by a consumer reporting agency by requiring that '[e]very consumer reporting agency shall, upon request . . . clearly and accurately disclose to the consumer [a]ll information in the consumer's file at the time of the request.'" *Gillespie v. Equifax Info. Servs., LLC*, 484 F.3d 938, 940–41 (7th Cir. 2007) (citing 15 U.S.C. § 1681g(a)(1)).

25.     More specifically, § 1681g(a)(2) requires a CRA on request to disclose the "sources of the information" of the consumer's credit reports. "The FCRA's disclosure provisions, including § 1681g(a), promote consumer oversight of compliance with the FCRA by informing consumers of the source of the reported information, thereby advancing the broader purposes of 'fair and accurate credit reporting.'" *See Gillespie*, 484 F.3d at 941 (stating that the primary purpose of disclosure requirement is to 'allow consumers to identify inaccurate information in their credit files and correct this information'); *Hauser v. Equifax, Inc.*, 602 F.2d 811, 817 (8th Cir. 1979) ('The purpose of the Act's disclosure requirement [in 15 U.S.C. § 1681g(a)] is to provide the consumer with an opportunity to dispute the accuracy of information in his file.')." *Clark v. Trans Union, LLC*, No. 3:15-cv-391, 2016 WL 7197391, at *8 (E.D. Va. Dec. 9, 2016).

26.     Once consumers learn information is inaccurate and dispute that information with the CRA, the FCRA imposes upon the CRA the requirement that it investigate the disputed item. 15 U.S.C. § 1681i. The investigation must be reasonable, with the CRA having to consider all

information the consumer provides along with the dispute. The CRA may not get by with simply reviewing the same information it already reported and confirming that nothing has changed.

### Defendants' Business

27.     Defendant LN Risk Solutions markets itself to a diverse group of potential customers, including those in the collections and recovery industry, financial services, government, and law enforcement, to name a few.[2]

28.     One aspect of LN Risk Solutions' business prominently touted on its website is its matching technology, where it purports to "uses a proprietary linking technology in combination with our own unique identifier, LexID®, to resolve, match and manage information."[3]

29.     LN Risk Solutions has operated in the consumer reporting business for decades, and now claims to "help tens of thousands of customers and hundreds of thousands of individual users be prepared to manage change and meet their growing risk management challenges."[4]

30.     Through that business model, LN Risk Solutions markets dozens of reports and searches to what is claims are hundreds of thousands of customers worldwide.[5]

31.     LN Risk Data has a much-less prominent internet presence, as it does not appear to operate a website at all.

32.     LN Risk Data works together with LN Risk Solutions in providing consumer reports to LN Data's customers by intaking information that goes into those reports, warehousing it, and providing that data to LN Risk Solutions for sale to LN Risk Solutions' customers.

---

[2] https://risk.lexisnexis.com/#gnav=header;

[3] https://risk.lexisnexis.com/our-technology#gnav=header;Our%20Technology

[4] https://risk.lexisnexis.com/our-technology.

[5] *Id.*

33.     Separately, LN Risk Data sells information to non-LexisNexis entities CRA such as RP On-Site. For example, as pertinent here, LN Risk Data sold RP On-Site information that RP On-Site used in a report that it provided to a potential landlord of Plaintiff Brown.

34.     Because LN Risk Data provided that information to RP On-Site for use in an FCRA-governed "consumer report," LN Risk Data qualifies as a CRA under the FCRA.

35.     LN Risk Data corporate parent is LexisNexis Risk Solutions Inc. ("LNRS"). LNRS is directly owned by LexisNexis Risk Assets Inc., which is owned by LexisNexis Risk Holdings Inc.

36.     Defendants operate as a single, unified CRA because of the way in which they and their data-sharing processes are integrated. As the FCRA sets forth, a CRA is:

> [A]ny *person*[6] which, *for monetary fees*, dues, or on a cooperative nonprofit basis, *regularly engages* in whole or in part *in the practice of assembling* or evaluating consumer credit information or *other information on consumers for the purpose of furnishing consumer reports to third parties*, and which uses any means or facility *of interstate commerce for the purpose of preparing* or furnishing consumer reports.

15 U.S.C. § 1681a(f) (emphasis added).

37.     As demonstrated above, Defendants encompass the definition of a credit reporting agency because (1) in exchange for compensation; (2) Defendants regularly assemble information on consumers; (3) for the purpose of furnishing consumer reports; and (4) by means of interstate commerce.

---

[6] "Person" is defined as "any individual, partnership, corporation, trust, estate, cooperative, association, government or governmental subdivision or agency, or other entity." 15 U.S.C. § 1681a(b).

38.     As to the first element, there is no dispute that Defendants receive compensation from their customers. Someone paying money to another in exchange for a product or service is the definition of "customer."

39.     Second, Defendants obtain and market, among other things, credit-related information so that its customers that may "[e]valuate credit invisible consumers with alternative credit data to grow [their] business without growing risk."[7]

40.     Defendants also utilize public records to court law-enforcement customers, explaining "LexisNexis® Risk Solutions Law Enforcement solutions leverage public records combined with cross-jurisdictional agency data and cutting-edge analytics to prevent and investigate crimes."[8]

41.     Defendants collect and then parse that information, actively curating the records to match – in Defendants' own view – the request information provided by the customer. Defendants' customers do not merely search for specific records, but instead ask a general question: "Are there any criminal, credit, or public records anywhere that match this consumer, with this personal identifying information?" Because that information often does not match or does not provide sufficient information to match records, Defendants affirmatively sort, manipulate and infer information to adapt data results to the requests received.

42.     Third, Defendants obtain and assemble the information for the purpose of providing it to third parties, who then obtain and use the information from Defendants in order to determine a consumer's eligibility for, among other things, credit, insurance, or employment.

---

[7] https://risk.lexisnexis.com/insights-resources/article/credit-invisibles

[8] https://risk.lexisnexis.com/law-enforcement-and-public-safety#gnav=body;learn%20more.

43.     Defendants have actual knowledge that its customers use the website and Defendants' data for FCRA purposes.

44.     Fourth, Defendants utilize multiple means of interstate commence to sell their reports, which are disbursed to prospective employers around the nation. Further, Defendants obtain their public records from the Executive Secretary of the Supreme Court of Virginia and the Virginia DMV and then resell this information to other companies.

45.     Defendants' attempts to circumvent FCRA governance by way of corporate organization or feigned legal separation are ineffective, as the statute prohibits the attempted use of corporate structures, ownership restructuring and comparable legal tricks as a way to avoid being characterized as a consumer reporting agency. *See, e.g.*, 12 C.F.R. § 1022.140.

46.     Congress had already contemplated this type gamesmanship as far back as 2003, when as part of the Fair and Accurate Credit Transactions Act of 2003, Congress made it illegal to attempt to evade treatment as a consumer reporting agency by means of corporate reorganization or restructuring, or by manipulating the way in which data is physically stored. 15 U.S.C. § 1681x; 12 C.F.R § 1022.140.

47.     Here, Defendants' data is so integrated and put to cross-use, and their operations so combined that they effectively operate as a single, unified CRA for FCRA purposes.

48.     Further, with shared resources and control, the Defendants regularly cross-use data that is originated with a shared source.   That data is maintained in a manner that allows each other Defendant to access and use same such that the data branded under the control of one Defendant remains in the "file" of the other Defendant for FCRA purposes.

### *Facts as to Plaintiff Brown*

49.     In January 2020, Plaintiff Brown applied to rent an apartment at the Oasis at Montclair apartment complex in Dumfries, Virginia.

50.     As part of the application process, Plaintiff Brown was required to undergo a background check.

51.     On January 24, 2020, Plaintiff Brown's landlord ordered his background report from a consumer-reporting agency called RP On-Site.

52.     In turn, RP On-Site obtained a consumer report from LN Risk Data and resold it within its January 24, 2020 report. Within its report to RP On-Site, LN Risk Data reported three civil "Landlord Tenant Court Records" from Prince George County, Virginia.

53.     The information about each of these unlawful detainer actions was materially misleading and inaccurate.

54.     Each reported record was in fact a dismissed lawsuit with no judgment obtained against Mr. Brown. Though LN Risk Data reported that record as "Dismissed," it did so under the field "Judgment" suggesting that judgment was dismissed rather than the case itself.  Further, the report also included an amount of money in the field "Judgment Amount."

55.     The LN Risk Data further inaccurately reported a judgment amount for each of the three cases, in the amounts of $2,773, $1,392, and $1,428.

56.     In reality, each of these cases were filed against Plaintiff Brown, but were dismissed after filing, with no judgment being taken against Plaintiff Brown in any of the three cases.

57.     As a result of this inaccurate and materially misleading information, Plaintiff Brown's rental application was denied.

58.     After receiving the denial, Plaintiff Brown wrote to LexisNexis and requested a copy of his consumer file.

59.     In response to his initial request, LexisNexis refused to send Plaintiff Brown a copy of his file and instead sent him a letter stating:

> LexisNexis® has conducted a search of its databases based on the information provided to us, but was unable to locate a file sufficiently matching your data. If you have any documentation showing there may in fact be a file in our systems on you, please provide a copy of that information to us and we will be happy to conduct additional research.

60.     When LexisNexis provided Plaintiff Brown his file disclosure, it wholly withheld and omitted the civil judgments it had earlier in the year reported to RP On-Site.

61.     The LN Risk Solutions disclosure withheld the civil-judgment records because it claims to be independent of its sibling, LN Risk Data.

62.     LN Risk Solutions violated 15 U.S.C. § 1681g(a) by refusing to include in consumer file disclosures the records of LN Risk Data.

63.     LN Risk Solutions' consumer disclosure also did not contain a record of RP On-Site's access of his consumer data.

64.     In addition to these issues, the consumer disclosure revealed several additional inaccuracies in Plaintiff Brown's LexisNexis file.

65.     For example, the file disclosure included two traffic infractions from 2012.

66.     A large number of traffic infractions are non-criminal, including in Virginia, where Plaintiff Brown's infractions occurred. Jordan Blair Woods, *Decriminalization, Police Authority, and Routine Traffic Stops*, 62 UCLA L. REV. 672, 698 (2015) ("Since 1970, twenty-two states have decriminalized the bulk of minor traffic offenses by removing criminal penalties and reclassifying the offenses as noncriminal offenses. Those states are Alaska (1976), Arizona (1983), Colorado (1982), Connecticut (1975), Florida (1974), Hawaii (1978/1993), Idaho (1982), Indiana (1981), Maine (1975), Massachusetts (1986), Michigan (1978), Nebraska (1976), New

Hampshire (1974), New York (1970), North Carolina (1986), North Dakota (1973), Oregon (1975), Rhode Island (1975), Vermont (1990), Virginia (1977), Washington (1979), and Wisconsin (1971). In these states, noncriminal traffic violations are punishable by fine only with no possibility of immediate incarceration.");[9] *See* VA. CODE ANN. § 18.2-8 ("Traffic infractions are violations of public order as defined in § 46.2-100 and not deemed to be criminal in nature.").

67.     Because these traffic infractions are not criminal convictions, they cannot be reported more than seven years after they occur.

68.     Despite this prohibition, discovery will show that Defendants each reported these non-criminal, 2012 records despite that they were more than seven years old when reported.

69.     In addition, the information reported about these traffic violations was inaccurate. Each infraction contained a "suspension" and "reinstatement" date for Plaintiff Brown's driver's license.

70.     These dates are inaccurate and misleading because Plaintiff Brown's license was never suspended.

71.     Finally, Plaintiff Brown's file disclosure contained two entries for civil judgments against Plaintiff Brown in favor of Tidewater Finance Company.

72.     This information was inaccurate. Plaintiff Brown only had a single judgment against him by Tidewater Finance Company, which was satisfied in February 2019.

73.     In fact, the two reported cases were actually the same case, and the duplicate entry lacked any remark that the judgment was released.

74.     Discovery will show this inaccurate information was published to one or more companies in a report that Defendants sold about Plaintiff Brown.

---

[9] Available at https://www.uclalawreview.org/pdf/62-3-3.pdf.

### *Facts as to Plaintiff Cantizzano*

75.     In 2020, Plaintiff Cantizzano hoped to take advantage of the historically low interest rates and applied for a mortgage with Apple Federal Credit Union.

76.     As part of his mortgage application, Apple Federal Credit Union obtained Plaintiff Cantizzano's consumer report from a consumer-reporting agency, Factual Data.

77.     In total, Factual Data provided three reports in 2020 about Plaintiff Cantizzano, on March 17, August 3, and August 17.

78.     Factual Data in turn requested Plaintiff Cantizzano's consumer report from Defendant LN Risk Solutions.

79.     The report that LN Risk Solutions provided to Factual Data regarding Plaintiff Cantizzano was grossly inaccurate. Specifically, it stated that Plaintiff Cantizzano had an outstanding civil judgment against him in Prince William County General District Court.

80.     This information was inaccurate because this civil judgment does not belong to Plaintiff Cantizzano.

81.     Instead, the civil judgment belonged to a completely different person, with a different first name, middle name, date of birth, and Social Security Number, and who lived at an address where Plaintiff Cantizzano never resided.

82.     The Defendants lacked reasonable procedures, or any procedures whatsoever, to ensure that this civil judgment actually belonged to Plaintiff Cantizzano prior to placing the information on his consumer report.

83.     Discovery will show that Defendants only reviewed the online docket sheet summarizing the case and did not review the actual court file to obtain all of the relevant case information prior to placing the judgment on Plaintiff Cantizzano's report.

84.     Defendants placed the civil judgment on Plaintiff Cantizzano's consumer report using very loose matching criteria and placed this highly derogatory information on Plaintiff's consumer report even though the first name, middle name, address, date of birth and social security number in the court file did not match Plaintiff Cantizzano's information.

85.     As a result of Defendants' inaccurate consumer reports regarding Plaintiff Cantizzano, his mortgage application was denied and he suffered other reputational injury.

86.     As a result of his inability to obtain a mortgage, Mr. Cantizzano disputed the inaccurate civil judgments through Factual Data, which forwarded them to LexisNexis on his behalf.

87.     On September 9, 2020, LN Risk Solutions responded that, "We have verified that our Lawsuits, Civil Filing, Judgments and Liens Records [sic] are accurate[.]" None are.

### *Facts as to Plaintiff Hill-Green*

88.     After experiencing numerous inaccuracies in her traditional consumer credit reports, Plaintiff Hill-Green requested her consumer disclosure from LN Risk Solutions in May 2020.

89.     LN Risk Solutions responded to her request and provided her with a file disclosure dated May 22, 2020.

90.     The disclosure that the LN Risk Solutions sent to Plaintiff Hill-Green contained inaccurate and misleading information.

91.     For example, Plaintiff Hill-Green's disclosure contained two traffic infractions from Virginia.

92.     Each infraction contained a "suspension" and "reinstatement" date for Plaintiff Hill-Green's driver's license.

93. These dates are inaccurate and misleading because Plaintiff Hill-Green's license was never suspended.

94. In addition, one of the traffic infractions was from 2011—more than seven years prior to the creation of the disclosure.

95. As stated above, traffic infractions in Virginia are not allowed to be reported for more than seven years under FCRA § 1681c because they are not considered criminal convictions.

96. Discovery will show this inaccurate, misleading, and outdated information was published to one or more companies in a report that the Defendants sold about Plaintiff Hill-Green.

### *Facts as to Plaintiff Stewart*

97. After experiencing issues with the misreporting of public-record information on her traditional consumer credit reports, Plaintiff Stewart requested a copy of her consumer disclosure from LN Risk Solutions in July 2020.

98. LN Risk Solutions responded to her request and provided her with a file disclosure dated July 31, 2020.

99. The disclosure that LN Risk Solutions sent to Plaintiff Stewart contained inaccurate and misleading information.

100. For example, the disclosure contained two entries for civil judgments against Plaintiff Stewart in favor of Westlake Services, LLC.

101. This information was inaccurate. Plaintiff Stewart only has a single judgment against her by Westlake Services, LLC.

102.    In fact, the two reported cases were actually the same case, and no second case was ever filed against Plaintiff Stewart by Westlake Services, LLC.

103.    In addition, Plaintiff Stewart's disclosure also contained two traffic infractions from Virginia.

104.    Each infraction contained a "suspension" and "reinstatement" date for Plaintiff Stewart's driver's license.

105.    These dates are inaccurate and misleading because Plaintiff Stewart's license was never suspended.

106.    In addition, one of the traffic infractions was from 2011—more than seven years prior to the creation of the disclosure.

107.    As stated above, traffic infractions in Virginia are not allowed to be reported for more than seven years because they are not considered criminal convictions.

108.    Discovery will show this inaccurate, misleading, and outdated information was published to one or more companies in a report that the Defendants sold about Plaintiff Stewart.

109.    Further, Plaintiff's disclosure contains indecipherable entries in the "inquiries" section of the disclosure. That portion is designed to inform consumers to whom the Defendants sold their report.

110.    Defendants' disclosures do nothing of the kind, as for Plaintiff Stewart the entries show inquiries for "Insurance Underwriting" but failing to reasonably and clearly disclose the recipient of Plaintiff Stewart's information.

111.    The disclosure states only "State Farm Mut 1 State Farm Plaza Bloomington IL 61701."

**COUNT ONE: VIOLATION OF FAIR CREDIT REPORTING ACT**
**15 U.S.C. § 1681c(a), Class Claim**
**Reporting of Obsolete Information**
**Plaintiffs Brown, Hill-Green, and Stewart**

112.    Plaintiffs Brown, Hill-Green, and Stewart restate each of the allegations in the preceding paragraphs as if set forth at length herein.

113.    **The 1681c Class**. Pursuant to Fed. R. Civ. P. 23, Plaintiffs Brown, Hill-Green, and Stewart bring this action individually and on behalf of a class of which they are members and initially defined as:

> All natural persons residing in the United States who (a) were the subject of a report furnished by LN Risk Solutions or LN Risk Data to a third party within five years before the filing of this action; (b) where that report contained one or more traffic infractions from state public records in Virginia, Alaska, Arizona, Colorado, Connecticut, Florida, Hawaii, Idaho, Indiana, Maine, Massachusetts, Michigan, Nebraska, New Hampshire, New York, North Carolina, North Dakota, Oregon, Rhode Island, Vermont, Washington, or Wisconsin, and (c) where the traffic infraction predated the report by at least seven years.

> Excluded from the class are all persons who have signed a written release of their claim, and/or are counsel in this case, or employed by the Federal Judiciary.

114.    **The Virginia Sub-class**. Pursuant to Fed. R. Civ. P. 23, Plaintiffs bring this action individually and on behalf of a sub-class of which they are each a member and initially defined as follows:

> All members of the 1681c Class who reside in Virginia and who (a) were the subject of a consumer report furnished by LN Risk Solutions or LN Risk Data to a third party within five years before the filing of this action; (b) where that report contained one or more traffic infractions from state public records in Virginia, and (c) where the traffic infraction predated the report by at least seven years.

> Excluded from the class are all persons who have signed a written release of their claim, and/or are counsel in this case, or employed by the Federal Judiciary.

115.    **Numerosity. Fed. R. Civ. P 23(a)(1).** Plaintiffs estimate that the class and subclass are so numerous that joinder of all members is impractical. There are millions of traffic

infractions in states that do not treat them as criminal convictions. The class members' names and addresses are identifiable through documents maintained by LN Risk Solutions and the class members may be notified of the pendency of this action by published and/or mailed notice.

116. **Predominance of Common Questions of Law and Fact. Fed. R. Civ. P. 23(a)(2).** Common questions of law and fact exist as to all putative class members, and there are no factual or legal issues that differ between the putative class members. These common questions predominate over the questions affecting only individual class members. The common questions include: (1) whether LN Risk Solutions and LN Risk Data were required by 15 U.S.C. § 1681c(a) to delete the traffic infraction information after 7 years; (2) whether Defendants' conduct constituted a violation of the FCRA; and (3) whether Defendants' conduct was willful.

117. **Typicality. Fed. R. Civ. P. 23(a)(3).** Plaintiffs' claims are typical of the claims of each putative class member. Plaintiffs are entitled to relief under the same causes of action as the other putative class members. Additionally, Plaintiffs' claims are based on the same facts and legal theories as each of the class members' claims.

118. **Adequacy of Representation. Fed. R. Civ. P. 23(a)(4).** Plaintiffs are adequate representatives of the putative class because their interests coincide with, and are not antagonistic to, the interests of the other putative class members. Plaintiffs have retained counsel competent and experienced in such litigation and intends, with their counsel, to continue to prosecute the action vigorously. Plaintiffs and their counsel will fairly and adequately protect the class members' interests. Neither Plaintiffs nor their counsel have any interest that might conflict with their vigorous pursuit of this action.

119. **Superiority. Fed. R. Civ. P. 23(b)(3).** Questions of law and fact common to the class members predominate over questions affecting only individual members, and a class action

is superior to other available methods for fair and efficient adjudication of the controversy. The damages sought by each class member are such that individual prosecution would prove burdensome and expensive. It would be virtually impossible for individual class members to effectively redress the wrongs done to them. Even if the class members could afford individual litigation, it would be an unnecessary burden on the courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the legal and factual issues raised by Defendants' conduct. By contrast, the class-action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a case.

120.    As described above, Defendants failed to exclude from reports traffic infraction records that clearly antedated their reports by more than 7 years.

121.    Defendants violated § 1681c(a) of the FCRA as to Plaintiffs and each of the class members by reporting each consumer's traffic infractions for longer than the seven-year period permitted by the FCRA.

122.    Plaintiffs and each putative class member suffered real and actual harm and injury.

123.    For example, the rights at issue were determined by Congress to be an important measure to ensure continued accuracy and completeness in consumer files and reports.

124.    In each instance, each class member's credit report contained derogatory information that Defendants were legally obligated to avoid and remove.

125.    Defendants' conduct was willful, rendering them liable for statutory and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, the violation was negligent, rendering Defendants liable under 15 U.S.C. § 1681o.

126.    As a result of these FCRA violations, LN Risk Solutions and LN Risk Data are liable for statutory damages from $100.00 to $1,000.00 for Plaintiffs and each class member, punitive damages, attorney's fees, and costs pursuant to 15 U.S.C. § 1681n.

**COUNT TWO: VIOLATION OF FAIR CREDIT REPORTING ACT**
**15 U.S.C. § 1681e(b), Class Claim**
**<u>Plaintiff Cantizzano</u>**

127.    Plaintiff Cantizzano restates each of the allegations in the preceding paragraphs as if set forth at length herein.

128.    **The Inaccuracy Class**. Pursuant to Fed. R. Civ. P. 23, Plaintiff Cantizzano brings this action individually and on behalf of a class initially defined as:

> All natural persons residing in Virginia who (1) were the subject of a report furnished by LN Risk Solutions or LN Risk Data to a third party within the five years before the filing of this action and the present; (2) where the report contained one or more tax liens or civil judgments from the Executive Secretary of he Supreme Court of Virginia, a Virginia court or a Virginia court clerk, (3) the information in the court records for those liens or judgments do not match two personal identifiers: (a) first and last name, (b) the Social Security Number, (c) the full date of birth, and (d) the current address of the consumer who is the subject of the report; and (4) where the person had not obtained and received a consumer disclosure from Defendants containing such judgment or lien record prior to the date two years before the filing of this action.

> Excluded from the class are all persons who have signed a written release of their claim, and/or are counsel in this case, or employed by the Federal Judiciary.

129.    **Numerosity**. Plaintiff Cantizzano alleges that the Inaccuracy Class is so numerous that joinder of the claims of all class members is impractical. Defendants operate as one of the largest CRAs in the nation, and in Virginia alone it certainly has sold tens if not hundreds of thousands of consumer reports during the class period. Given the common nature of

public-records reporting, the class size will easily exceed hundreds or thousands of consumers. The names and addresses of the class members are identifiable through documents maintained by Defendants, and the class members may be notified of the pendency of this action by publication or mailed notice.

130.   **Existence and Predominance of Common Questions of Law and Fact**. Common questions of law and fact exist as to all putative class members. These questions predominate over the questions affecting only individual members. These common legal and factual questions include, among other things: (a) whether Defendants had reasonable procedures to assure that they accurately attributed public records to the correct consumer; (b) whether this conduct constituted a violation of the FCRA; and (c) whether the violation was negligent, reckless, knowing, or intentionally committed in conscious disregard of the rights of the Plaintiff Cantizzano and putative class members.

131.   **Typicality**. Plaintiff Cantizzano's claims are typical of the claims of each putative class member and all are based on the same facts and legal theories. Plaintiff, as every putative class member, alleges a violation of the same FCRA provision, 15 U.S.C. § 1681e(b). This claim challenges the credit reporting procedures of Defendants does not depend on any individualized facts. For purposes of class certification, Plaintiff seeks only statutory and punitive damages. The recovery of class statutory and punitive damages is ideal and appropriate in circumstances like this one, where injuries are particularized and concrete, but difficult to quantify. In addition, Plaintiff Cantizzano is entitled to the relief under the same causes of action as the other members of the class.

132.   **Adequacy**. Plaintiff Cantizzano will fairly and adequately protect the interests of the class. Plaintiff has retained counsel experienced in handling actions involving unlawful

practices against consumers and class actions. Neither Plaintiff nor his counsel have any interests that might cause them not to vigorously pursue this action. Plaintiff Cantizzano is aware of his responsibilities to the putative class and has accepted those responsibilities.

133.    Certification of the class under Rule 23(b)(3) of the Federal Rules of Civil Procedure is also appropriate in that:

a.  As alleged above, the questions of law or fact common to the members of the class and subclass predominate over any questions affecting an individual member. Each of the common facts and legal questions in the case overwhelm the more modest individual issues. Given the complex and extensive litigation necessitated by Defendants' conduct, using individual prosecution to obtain the statutory and punitive damages sought by each member would prove burdensome and expensive. Further, those individual issues that do exist can be effectively streamlined and resolved in a manner that minimizes the individual complexities and differences in proof in the case.

b.  A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Consumer claims generally are ideal for class treatment as they involve many, if not most, consumers who are otherwise disempowered and unable to afford to bring their claims individually. Further, most consumers affected by Defendants' conduct described above are likely unaware of their rights under the law or of whom they could find to represent them in federal litigation. Individual litigation of the uniform issues in this case would be a waste of judicial resources. The issues at the core of this case are class

wide and should be resolved at one time. One win for one consumer would set the law for every similarly situated consumer.

134.     Defendants violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the consumer reports they furnished regarding Plaintiff Cantizzano and each class member by erroneously listing one or more tax liens or civil judgments that did not belong to Plaintiff and class members.

135.     Defendants' violations of 15 U.S.C. § 1681e(b) were willful, rendering each Defendant liable pursuant to 15 U.S.C. § 1681n. In the alternative, Defendants were negligent, entitling the Plaintiff to recover under 15 U.S.C. § 1681o.

136.     Plaintiff Cantizzano and each class member are entitled to recover statutory damages, punitive damages, costs, and attorneys' fees from each Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

## COUNT THREE: VIOLATION OF FAIR CREDIT REPORTING ACT
### 15 U.S.C. § 1681e(b), Class Claim
### Plaintiffs Brown and Stewart

137.     Plaintiffs Brown and Stewart restate each of the allegations in the preceding paragraphs as if set forth at length herein.

138.     **The Failure-To-Update Class**. Pursuant to Fed. R. Civ. P. 23, Plaintiffs Brown and Stewart bring this action individually and on behalf of a class initially defined as:

> All natural persons residing in the United States who (1) were the subject of a furnished by LN Risk Solutions and/or LN Risk Data to a third party within five years before the filing of this action; (2) where the report contained one or more tax liens or civil judgments, and (3) the disposition of those records noted in the LN Risk Solutions and/or LN Risk Data report does not match the final disposition reflected in the court records at least 30 days before the report.

Excluded from the class are all persons who have signed a written release of their claim, and/or are counsel in this case, or employed by the Federal Judiciary.

139.   **Numerosity**. Plaintiffs Brown and Stewart allege that the Inaccuracy Class is so numerous that joinder of the claims of all class members is impractical. Defendants operate as one of the largest CRAs in the nation, and in Virginia alone they certainly has sold tens if not hundreds of thousands of consumer reports during the class period. Given the common nature of public-records reporting, the class size will easily exceed hundreds or thousands of consumers. The names and addresses of the class members are identifiable through documents maintained by Defendants, and the class members may be notified of the pendency of this action by publication or mailed notice.

140.   **Existence and Predominance of Common Questions of Law and Fact**. Common questions of law and fact exist as to all putative class members. These questions predominate over the questions affecting only individual members. These common legal and factual questions include, among other things: (a) whether Defendants had reasonable procedures to assure that they accurately updated the dispositions of public records; (b) whether this conduct constituted a violation of the FCRA; and (c) whether the violation was negligent, reckless, knowing, or intentionally committed in conscious disregard of the rights of the Plaintiffs and putative class members.

141.   **Typicality**. Plaintiffs Brown and Stewarts' claims are typical of the claims of each putative class member and all are based on the same facts and legal theories. Plaintiffs Brown and Stewart, as every putative class member, allege a violation of the same FCRA provision, 15 U.S.C. § 1681e(b). This claim challenges the credit reporting procedures of Defendants and does not depend on any individualized facts. For purposes of class certification, Plaintiffs seek only statutory and punitive damages. The recovery of class statutory and punitive

damages is ideal and appropriate in circumstances like this one, where injuries are particularized and concrete, but difficult to quantify. In addition, Plaintiffs Brown and Stewart are entitled to the relief under the same causes of action as the other members of the class.

142. **Adequacy**. Plaintiffs Brown and Stewart will fairly and adequately protect the interests of the class. Plaintiffs Brown and Stewart have retained counsel experienced in handling actions involving unlawful practices against consumers and class actions. Neither Plaintiffs nor their counsel have any interests that might cause them not to vigorously pursue this action. Plaintiffs Brown and Stewart are aware of their responsibilities to the putative class and have accepted those responsibilities.

143. Certification of the class under Rule 23(b)(3) of the Federal Rules of Civil Procedure is also appropriate in that:

    a. As alleged above, the questions of law or fact common to the members of the class and subclass predominate over any questions affecting an individual member. Each of the common facts and legal questions in the case overwhelm the more modest individual issues. Given the complex and extensive litigation necessitated by Defendants' conduct, using individual prosecution to obtain the statutory and punitive damages sought by each member would prove burdensome and expensive. Further, those individual issues that do exist can be effectively streamlined and resolved in a manner that minimizes the individual complexities and differences in proof in the case.

    b. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Consumer claims generally are ideal for class treatment as they involve many, if not most, consumers who are otherwise

disempowered and unable to afford to bring their claims individually. Further, most consumers affected by Defendants' conduct described above are likely unaware of their rights under the law or of whom they could find to represent them in federal litigation. Individual litigation of the uniform issues in this case would be a waste of judicial resources. The issues at the core of this case are class wide and should be resolved at one time. One win for one consumer would set the law for every similarly situated consumer.

144.    Defendants each violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the consumer reports they furnished regarding Plaintiffs Brown and Stewart and each class member by failing to update the final dispositions of records it attributed to Plaintiffs and class members.

145.    Defendants' violations of 15 U.S.C. § 1681e(b) were willful, rendering each Defendant liable pursuant to 15 U.S.C. § 1681n. In the alternative, Defendants were negligent, entitling the Plaintiffs to recover under 15 U.S.C. § 1681o.

146.    Plaintiffs Brown and Stewart and each class member are entitled to recover statutory damages, punitive damages, costs, and attorneys' fees from LN Risk Solutions in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

**COUNT FOUR: VIOLATION OF FAIR CREDIT REPORTING ACT**
**15 U.S.C. § 1681g(a), Class Claim**
**Failure to Provide a Full Consumer Disclosure**
**Plaintiff Brown**

147.    Plaintiff Brown restates each of the allegations in the preceding paragraphs as if set forth at length herein.

148.    Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff Brown brings this action for himself and on behalf of a class (the "File Disclosure Class") defined as:

All natural persons residing in the United States (a) who requested a file disclosure from LN Risk Solutions and/or LN Risk Data; (b) in the five years predating the filing of this Complaint; (c) where Defendant LN Risk Data and/or LN Risk Data had previously furnished a consumer report that included tradeline or public-record information to a third party within the two years preceding the file disclosure request, (d) and for whom LN Risk Solutions and/or LN Risk Data did not include the data LN Risk Data and/or LN Risk Data furnished in a file disclosure it returned to that consumer.

Excluded from the class are all persons who have signed a written release of their claim, and/or are counsel in this case, or employed by the Federal Judiciary.

149.    **Numerosity. Fed. R. Civ. P 23(a)(1).** Plaintiff Brown estimates that the class is so numerous that joinder of all members is impractical. The class members' names and addresses are identifiable through documents maintained by Defendants and the class members may be notified of the pendency of this action by published and/or mailed notice.

150.    **Predominance of Common Questions of Law and Fact. Fed. R. Civ. P. 23(a)(2).** Common questions of law and fact exist as to all putative class members, and there are no factual or legal issues that differ between the putative class members. These common questions predominate over the questions affecting only individual class members. The common questions include: (1) whether LN Risk Solutions was required by 15 U.S.C. § 1681g(a) to provide to consumers all of the information that LN Risk Data reported about them in response for a copy of their full file; (2) whether Defendants' conduct constituted a violation of the FCRA; and (3) whether Defendants' conduct was willful.

151.    **Typicality. Fed. R. Civ. P. 23(a)(3).** Plaintiff Brown's claims are typical of the claims of each putative class member. Plaintiff Brown is entitled to relief under the same causes of action as the other putative class members. Additionally, Plaintiff Brown's claims are based on the same facts and legal theories as each of the class members' claims.

152.    **Adequacy of Representation. Fed. R. Civ. P. 23(a)(4).** Plaintiff Brown is an adequate representative of the putative class because his interests coincide with, and are not antagonistic to, the interests of the other putative class members. Plaintiff Brown has retained counsel competent and experienced in such litigation and intends, with his counsel, to continue to prosecute the action vigorously. Plaintiff Brown and his counsel will fairly and adequately protect the class members' interests. Neither Plaintiff Brown nor his counsel have any interest that might conflict with his vigorous pursuit of this action.

153.    **Superiority. Fed. R. Civ. P. 23(b)(3).** Questions of law and fact common to the class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The damages sought by each class member are such that individual prosecution would prove burdensome and expensive. It would be virtually impossible for individual class members to effectively redress the wrongs done to them. Even if the class members could afford individual litigation, it would be an unnecessary burden on the courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the legal and factual issues raised by Defendants' conduct. By contrast, the class-action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a case.

154.    As described above, LN Risk Solutions failed to provide Plaintiff Brown and the File Disclosure Class all of the information in its files that LN Risk Data had provided when Plaintiff Brown requested a copy of the class member's full file.

155.    Defendants violated § 1681g(a) of the FCRA as to the Plaintiff Brown and each of the class members by failing to provide them with all of the information that it received from the national credit reporting agencies in response to the consumer's request for his or her full file.

156.    Plaintiff Brown and each putative class member suffered real and actual harm and injury.  The rights at issue were determined by Congress to be important measures to ensure continued accuracy and completeness in Defendants' files and reports.  In each instance, each class member was deprived of information that Congress has determined they were legally entitled to receive.

157.    Defendants' conduct was willful, rendering it liable for statutory and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, the violation was negligent, rendering Defendants liable under 15 U.S.C. § 1681o.

158.    As a result of these FCRA violations, Defendants are liable for statutory damages for Plaintiff Brown and each class member, punitive damages, attorney's fees, and costs pursuant to 15 U.S.C. § 1681n.

### COUNT FIVE: VIOLATION OF FAIR CREDIT REPORTING ACT
### 15 U.S.C. § 1681i, Individual Claim
### Failure to Reasonably Investigate Dispute
### Plaintiff Cantizzano

159.    Plaintiff Cantizzano restates each of the allegations in the preceding paragraphs as if set forth at length herein.

160.    LN Risk Solutions reported inaccurate information to Plaintiff Cantizzaro's potential landlord, and those inaccuracies caused the landlord to deny Plaintiff Cantizzaro housing.

161.    As is his right, Plaintiff Cantizzano disputed the inaccuracies with LN Risk Solutions, which was then obligated to conduct a "searching inquiry" into the accuracy of the information it reported.

162.    Had LN Risk Solutions conducted such an investigation into Plaintiff Cantizzano's dispute, it would have learned that the public records it attributed to him belonged to a different individual with a differently spelled first name, a different middle name, a different date of birth, different Social Security Number, and different address than Plaintiff Cantizzano.

163.    Instead, LN Risk Solutions' cursory, illegal investigation incorrectly confirmed that its inaccurate records were properly attributed to Plaintiff Cantizzano.

164.    This failure by LN Risk Solutions thwarts Plaintiff Canitzzano's statutory right to correct information that is inaccurately reported.

165.    LN Risk Solutions' violation of 15 U.S.C. § 1681i(a) was willful, rendering it liable pursuant to 15 U.S.C. § 1681n. In the alternative, the LN Risk Solutions was negligent, entitling the Plaintiff to recover under 15 U.S.C. § 1681o.

166.    Plaintiff Cantizzano is entitled to recover actual, statutory, and punitive damages, as well as costs and attorneys' fees from the LN Risk Solutions in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

WHEREFORE, Plaintiffs ask for judgment against the Defendants, for class certification as pleaded, for statutory and punitive damages for themselves and each member of the Classes described above, for actual, and punitive damages for their individual claims; for equitable and injunctive relief; and for attorneys' fees and costs and such other specific or general relief the Court does find just and appropriate.

**TRIAL BY JURY IS DEMANDED**.

Respectfully submitted,

**PLAINTIFFS,**


By: ____/s/_____
Leonard A. Bennett, VSB #37523
Craig C. Marchiando, VSB #89736
Amy L. Austin, VSB #46579
**CONSUMER LITIGATION ASSOCIATES, P.C.**
763 J. Clyde Morris Blvd., Suite 1-A
Newport News, VA 23601
Telephone: (757) 930-3660
Facsimile: (757) 930-3662
Email: lenbennett@clalegal.com
Email: craig@clalegal.com
Email: amyaustin@clalegal.com

Kristi C. Kelly, VSB #72791
Andrew J. Guzzo, VSB #82170
Casey S. Nash, VSB #84261
**KELLY GUZZO, PLC**
3925 Chain Bridge Road, Suite 202
Fairfax, VA 22030
Telephone: (703) 424-7572
Facsimile: (703) 591-0167
Email: kkelly@kellyguzzo.com
Email: aguzzo@kellyguzzo.com
Email: casey@kellyguzzo.com

*Counsel for Plaintiffs*