

*Exhibit "1"*

**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

CYNTISHA STEWART, *et al.*        :      Civil Action No.: 3:20-cv-00903-JAG

        Plaintiffs,         :

v.         :

LEXISNEXIS RISK DATA RETRIEVAL
SERVICES, LLC a/k/a LexisNexis Risk    :
Data Management and LEXISNEXIS RISK
SOLUTIONS INC.,

        :

        Defendants.

―――――――――――――――――――

**<u>SETTLEMENT AGREEMENT AND RELEASE</u>**

# TABLE OF CONTENTS

**Page**

SETTLEMENT AGREEMENT AND RELEASE ................................................................. 1

1.  RECITALS ................................................................................................ 1

2.  DEFINITIONS ........................................................................................... 4

3.  MOTION FOR PRELIMINARY APPROVAL ......................................... 16

4.  SETTLEMENT PROVISIONS SPECIFIC TO RULE 23(B)(2) SETTLEMENT ......................................................................................... 17

    4.1  Certification of Rule 23(b)(2) Settlement Class ............................. 17

    4.2  Rule 23(b)(2) Notice Plan ............................................................. 17

    4.3  Injunctive Relief ........................................................................... 21

    4.4  Objections from Rule 23(b)(2) Settlement Class Members ........... 27

    4.5  Rule 23(b)(2) Settlement Class Attorneys' Fees, Costs, and Other Expenses ....................................................................................... 29

    4.6  Rule 23(b)(2) Settlement Class Release ........................................ 30

5.  SETTLEMENT PROVISIONS SPECIFIC TO RULE 23(B)(3) SETTLEMENT ......................................................................................... 35

    5.1  Certification of Rule 23(b)(3) Settlement Class ............................. 35

    5.2  Rule 23(b)(3) Notice Plan ............................................................. 35

    5.3  Procedure for Opt-outs ................................................................. 39

    5.4  Objections from Rule 23(b)(3) Settlement Class Members ........... 41

    5.5  Settlement Fund ........................................................................... 42

    5.6  Settlement Fund Tax Status .......................................................... 43

    5.7  Rule 23(b)(3) Settlement Attorneys' Fees, Costs, and Other Expenses ......... 44

    5.8  Service Award to the Named Plaintiffs .......................................... 44

    5.9  Payment Schedule ........................................................................ 45

    5.10 Rule 23(b)(3) Settlement Class Release ........................................ 46

6.  ENTRY OF FINAL JUDGMENT AND ORDER .................................... 48

7.  TERMINATION ....................................................................................... 49

8.     MISCELLANEOUS PROVISIONS ........................................................................ 53

    8.1     Best Efforts to Obtain Court Approval ........................................... 53

    8.2     No Admission ................................................................................... 54

    8.3     Process for Resolution of Disputes Regarding Compliance with Settlement Agreement ...................................................................... 55

    8.4     Court's Jurisdiction and Choice of Law ......................................... 56

    8.5     Settlement Notices ........................................................................... 57

    8.6     Administrative Costs........................................................................ 58

    8.7     Taxes ................................................................................................ 58

    8.8     Defendants' Communication with Customers, Business Contacts, and Members of the Public ............................................................... 59

    8.9     Class Counsel's Representation of Other Consumers ..................... 59

    8.11    Confidentiality of Discovery Materials and Information................. 59

    8.12    Complete Agreement ....................................................................... 60

    8.13    Headings for Convenience Only ...................................................... 60

    8.14    Severability ...................................................................................... 60

    8.15    No Party Is the Drafter .................................................................... 60

    8.16    Binding Effect.................................................................................. 60

    8.17    Authorization to Enter Settlement Agreement................................ 61

    8.18    Execution in Counterparts................................................................ 61

This Settlement Agreement and Release ("Settlement Agreement") is made and entered into by the Named Plaintiffs, Defendants LexisNexis Risk Data Management LLC ("LNRDM") and LexisNexis Risk Solutions Inc. ("LNRS"), and their counsel as of January 20, 2022, in the case captioned *Stewart, et al. v. LexisNexis Risk Data Retrieval Services, LLC a/k/a LexisNexis Risk Data Management, et al.*, No. 3:20-cv-903-JAG (E.D. Va.)[1], and is submitted to the Court for approval pursuant to Fed. R. Civ. P. 23.

## 1. RECITALS

### 1.1 <u>The Settled Actions</u>

This Agreement, by two settlement classes described herein, constitutes two Settlements, resolves four putative class actions against Defendants alleging Defendants violated the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA") arising from Defendants' practices concerning the retrieval, reporting and sale of judgment, lien and landlord tenant records and disposition updates thereto as well as the inclusion of certain Motor Vehicle Records on consumer file disclosures.

The *Hill* putative class case was filed on July 24, 2018 in the United States District Court for the Western District of Missouri, Case No. 18-cv-560 ("*Hill*"). The *Hill* Plaintiff alleged LNRS reported to third parties in LNRS consumer reports a civil judgment record as outstanding from Missouri state court that had been set aside. The *Hill* Plaintiff alleged LNRS violated section 1681e(b) of the FCRA and sought to certify a nationwide putative class.

The *Jones* putative class case was filed on August 20, 2020 in the United States District Court for the Western District of Pennsylvania, and later transferred to the United States District Court for the Southern District of Ohio, Case No. 20-cv-06263 ("*Jones*"). The *Jones* Plaintiff

---

[1] While this Agreement is submitted under the *Stewart* case caption, the Agreement provides for benefits to and releases from two distinct settlement classes, constitutes two separate settlements and encompasses three other putative class actions that were transferred and consolidated into *Stewart* for the purpose of effectuating this settlement: *Hill v. LexisNexis Risk Solutions Inc.*, 18-cv-560 (W.D. Mo.); *Jones v. LexisNexis Risk Solutions Inc.*, No. 20-cv-06263 (S.D. Ohio); *Clark, et al. v. LexisNexis Risk Solutions Inc.*, No. 20-cv-01920 (D. Minn.).

alleged LNRS reported in a consumer report provided to Kroll Factual Data a civil judgment as outstanding from Mississippi state court that had been satisfied. The *Jones* Plaintiff alleged LNRS violated section 1681e(b) of the FCRA and sought to represent a nationwide putative class. The *Jones* Plaintiff also asserted an individual claim under 1681i of the FCRA against LNRS.

The *Clark* putative class case was filed on September 8, 2020 in the United States District Court for the District of Minnesota, Case No. 20-cv-01920, by Plaintiff Clark and was amended on September 30, 2020 to add Plaintiff Peterson ("*Clark*"). Plaintiff Clark alleged LNRS reported in an LNRS consumer report provided to Factual Data a conciliation court judgment from Minnesota state court that had been settled and dismissed. Plaintiff Peterson alleged LNRS reported in an LNRS consumer report provided to CreditPlus an outstanding civil judgment from Minnesota state court that had been satisfied. The *Clark* Plaintiffs alleged LNRS violated section 1681e(b) of the FCRA and sought to represent a putative class of Minnesota consumers. Plaintiff Peterson also asserted an individual claim under 1681i of the FCRA against LNRS.

The *Stewart* putative class case was filed on November 23, 2020 in the United States District Court for the Eastern District of Virginia by four named Plaintiffs. In addition to claims concerning the reporting of civil judgment records by LNRS and LNRDM, certain of the *Stewart* Plaintiffs also alleged their consumer file disclosures included inaccurate and obsolete Motor Vehicle Records. The *Stewart* Plaintiffs alleged violations of sections 1681c(a), 1681e(b), 1681g(a) of the FCRA and sought to represent both nationwide and Virginia-specific putative classes. Plaintiff Cantizzano also asserted an individual claim under 1681i of the FCRA against LNRS.

## 1.2     Defendants' Denial of Liability

Defendants deny each and every one of Named Plaintiffs' allegations of wrongful conduct and damages. Defendants have asserted numerous defenses to Named Plaintiffs' claims and disclaim any wrongdoing or liability whatsoever. Defendants further deny this matter satisfies the requirements to be certified or tried as a class action under Fed. R. Civ. P. 23. Defendants nevertheless desire to settle all claims that are asserted, or which could have been asserted, in the Settled Actions, on the terms and conditions set forth herein, solely for the purpose of avoiding the burden, expense and uncertainty of continuing litigation and for the purpose of putting to rest the controversies raised in or implicated by the Settled Actions. Nothing in this Agreement or any other document shall be construed as an admission or evidence of any violation of any federal or state statute, rule, or regulation, or principle of common law or equity, or of any liability or wrongdoing whatsoever, or of the truth of any of the claims or facts asserted or to be asserted in the Settled Actions, or of the lack of merit of any defenses Defendants raised or could have raised against the operative complaints or any other pleading or document filed in the Settled Actions. Further, Defendants are not estopped from challenging any such claim asserted in any Settled Action or motion for class certification in further proceedings in the Settled Actions or in any other action if the Settlement is not finally approved.

## 1.3     Settlement Through Mediation

This Settlement Agreement has been reached after the Parties exchanged discovery and a substantial amount of documents and information relevant to the claims of Named Plaintiffs and those of the classes they purport to represent. The Named Plaintiffs and Defendants recognize the outcome of this matter is uncertain, and a final resolution through the litigation process would require several more years of protracted adversarial litigation and appeals; substantial risk and expense; the distraction and diversion of the Defendants' personnel and

resources and the expense of any possible future litigation raising similar or duplicative claims; and the Named Plaintiffs, Defendants, and their counsel have agreed to resolve this matter as a settlement class action according to the terms of this Settlement Agreement. The Settlement Agreement is a product of sustained, arm's length settlement negotiations and numerous mediation sessions including multiple sessions conducted by two experienced, independent mediators as well as Magistrate Judge Mark Colombell. The negotiations and mediation sessions resulted in an agreement on the principal terms of a settlement.

NOW, THEREFORE, without (a) any admission or concession on the part of Named Plaintiffs of the lack of merit of the Litigation whatsoever, or (b) any admission or concession of liability or wrongdoing or the lack of merit of any defense whatsoever by Defendants, it is hereby stipulated and agreed by the undersigned, on behalf of the Named Plaintiffs, the Fed. R. Civ. P. 23(b)(2) and Fed. R. Civ. P. 23(b)(3) Settlement Classes, and the Defendants, that this matter and all claims of the Fed. R. Civ. P. 23(b)(2) and Fed. R. Civ. P. 23(b)(3) Settlement Classes be settled, compromised, and dismissed on the merits and with prejudice as to the Released Parties, subject to Court approval as required by Fed. R. Civ. P. 23, on the terms and conditions set forth herein.

The recitals stated above are true and accurate and are hereby made a part of this Settlement Agreement.

## 2. DEFINITIONS

For the purposes of this Settlement Agreement, including the recitals stated above, the following terms will have the following meanings:

**2.1** "Litigation" means the civil action captioned, *Stewart, et al. v. LexisNexis Risk Solutions Inc., et al.*, No. 3:20-cv-903 in the United States District Court for the Eastern District of Virginia, and all other Settled Actions consolidated into the Litigation.

**2.2** "Named Plaintiffs" means Cyntisha Stewart, Terry Brown, Eduardo Cantizzano, Lisa Hill-Green, Theresa Hill, Michael G. Clark, Christopher Peterson and Yolanda Jones or any of them.

**2.3** "*Stewart* Plaintiffs" means Cyntisha Stewart, Terry Brown, Eduardo Cantizzano, and Lisa Hill-Green.

**2.4** "*Clark* Plaintiffs" means Michael G. Clark and Christopher Peterson.

**2.5** "*Hill* Plaintiff" means Theresa Hill.

**2.6** "*Jones* Plaintiff" means Yolanda Jones.

**2.7** "LNRDM" means Defendant LexisNexis Risk Data Management LLC, and any other predecessor entities engaged in the same Covered Conduct as LNRDM, including but not limited to, LexisNexis Risk & Information Analytics Group, Inc. and LexisNexis Risk Data Retrieval Services LLC.

**2.8** "LNRS" means Defendant LexisNexis Risk Solutions Inc. and any other predecessor entities engaged in the same Covered Conduct as LNRS, including but not limited to, LexisNexis Risk Solutions Bureau LLC.

**2.9** "Defendants" means LNRS and LNRDM.

**2.10** "Party" and "Parties" mean the Named Plaintiffs, the Rule 23(b)(2) Settlement Class, the Rule 23(b)(3) Settlement Class and the Defendants.

**2.11** "CAFA Notice" means notice (in the form substantially similar to that attached as Exhibit F and approved by the Court) of the Settlements to the appropriate federal and state officials, as provided by the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, and as further described in Sections 4.2.9 and 5.2.5.

**2.12** "Claim" and "Claims" mean all claims, counterclaims, demands (including, without limitation, demands for arbitration), actions, suits, causes of action, allegations of wrongdoing, and liabilities.

**2.13** "Class Counsel" means the attorneys and law firms listed on the signature pages of this Settlement Agreement representing the Named Plaintiffs and the Rule 23(b)(2) and Rule 23(b)(3) Settlement Classes.

**2.14** "Class List" means the list generated by Defendants of the Rule 23(b)(3) Settlement Class Members, as further described in Section 5.2.1.

**2.15** "Collection Performance" means the assessment LNRDM will undertake to employ commercially reasonable procedures to achieve maximum possible accuracy of LNRDM's retrieval of Subsequent Case Update Events from Sources with a Visit Interval of sixty (60) days or less. Collection Performance assessment includes: (1) selecting from each relevant Source a statistically significant number of Open Public Records bearing action dates in the prior seven years; (2) retrieving each selected Open Public Record from the Source to determine whether a Subsequent Case Update Event is publicly available; and (3) analyzing the responses retrieved and identifying means to improve retrieval of Subsequent Case Update Events where necessary.

**2.16** "Consumer File Disclosure" means the document LNRS provides to a consumer in response to a consumer's request pursuant to 15 U.S.C. § 1681g for information in his or her file.

**2.17** "Consumer Report" means the report as defined in 15 U.S.C. § 1681a(d) and provided by a consumer reporting agency as defined in 15 U.S.C. § 1681a(f).

**2.18** "Court" means the United States District Court for the Eastern District of Virginia where the Litigation is pending.

**2.19** "Covered Conduct" means (a) the reporting of Judgments, Liens or Landlord Tenant records and any related violations of the FCRA or FCRA State Equivalents, (b) LNRS' disclosure of Motor Vehicle Records on Consumer File

Disclosures and any related violation of the FCRA or FCRA State Equivalents and (c) LNRDM's provision of data relating to Judgment, Lien and Landlord Tenant records and any related violations of the FCRA or FCRA State Equivalents.

2.20    "Customer-Facing Documentation" means documentation that LNRS may provide to current and potential LNRS customers to assist in explaining Landlord Tenant records within LNRS consumer report products, including but not limited to, marketing, sales and promotional materials and technical user guides.

2.21    "Effective Date" means the date on which this Court's entry of the Final Judgment and Order and this Court's orders regarding attorneys' fees have all become final because the following has occurred: (1.) there are no objections to the Final Judgment and Order, or (2.) if there are any objections, (i.) the expiration of three (3) business days after the time to file a motion to alter or amend the Final Judgment and Order under Federal Rule of Civil Procedure 59(e) has passed without any such motion having been filed; (ii) the expiration of three (3) business days after the time in which to appeal the Final Judgment and Order under Federal Rule of Appellate Procedure 4(a)(1) has passed without any appeal having been filed, or unless the day falls on a weekend or a Court holiday, in which case the date for purposes of this Settlement shall be deemed to be the next business day; and (iii) if such motion to alter or amend is filed, or if an appeal is taken, three business days after a final determination of any such motion or appeal that permits the consummation of the Settlement. For purposes of this definition, the term "appeal" includes all writ proceedings.

**2.22** "Escrow Account" means a non-interest bearing account at a financial institution to be identified by Class Counsel and approved by Defendants.

**2.23** "Escrow Agent" means an agent identified by Class Counsel and who has been approved by Defendants whose responsibility it is to manage the Escrow Account.

**2.24** "FCRA" means the federal Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.*

**2.25** "FCRA State Equivalents" means any statute or regulation of any State, the District of Columbia, or Puerto Rico, that has the purpose or effect of regulating the collection, procurement, use, or disclosure of the same or similar information that meets the definition of "consumer report" under the FCRA.

**2.26** "Final Judgment" or "Final Judgment and Order" means a final judgment and order of dismissal entered by the Court in this Litigation granting final approval of this Settlement Agreement (including certifying both the Rule 23(b)(2) and the Rule 23(b)(3) Settlement Classes, finding the benefits provided to and releases and other consideration provided by such Classes to be fair, reasonable and adequate, approving Class Counsel's request for attorneys' fees, costs, and other expenses and Named Plaintiffs' requests for Service Awards), and entering a judgment according to the terms set forth in this Settlement Agreement.

**2.27** "Injunctive Relief" means the injunctive relief programs to which the Defendants have agreed in the Rule 23(b)(2) Settlement and which benefits the Rule 23(b)(2) Settlement Class, as further described in 4.3.

**2.28** "Injunctive Relief Order" means the consent order attached as Exhibit A to this Settlement Agreement and proposed by the Parties with respect to the Rule 23(b)(2) Settlement for entry by the Court intended to require and accomplish the Injunctive Relief that in no way imposes any obligation, duty or

responsibility on the Defendants or creates a right on behalf of the Rule 23(b)(2) Settlement Class beyond what is described in the Injunctive Relief.

**2.29** "Judgment" means a record typically characterized by an award of money as ordered by the judge, a record of a Judgment in one court transcribed to another court, or a lien recorded on the basis of a Judgment. Subsequent case update events to "Judgment" records include satisfactions (payments in full), vacaturs (reversal of the judgment as if it did not occur) and releases of judgment liens. Judgment as defined herein does not include Landlord Tenant records which are separately defined in Section 2.30.

**2.30** "Landlord Tenant" means a record involving disputes between landlords and tenants. "Landlord Tenant" records include new suits (initial case filings), non-monetary adjudications ordering the tenant to leave the property (evictions), and awards of restitution (landlord tenant judgments). Subsequent case update events to "Landlord Tenant" records include satisfactions, vacaturs and dismissals.

**2.31** "Lien" means a record typically reflecting the non-payment of state or federal taxes. Subsequent case update events to "Lien" records include releases (payments in full) and filed in errors (reversal of the lien as if it did not occur).

**2.32** "LNRDM's Consumer Reporting Agency Customers" means LNRS and any customer of LNRDM who is contractually permitted to use data supplied by LNRDM regarding Public Records for permissible purposes as defined under the FCRA.

**2.33** "LNRDM's Oklahoma Database" means those databases maintained by LNRDM (regardless of physical location) in which LNRDM stores and

transmits data about Public Records to LNRDM's Consumer Reporting Agency Customers.

2.34  "Mail Notice" means the notice (in a form substantially similar to that attached as Exhibit D and approved by the Court) that will be mailed to the Rule 23(b)(3) Settlement Class pursuant to the Notice Plan in the Rule 23(b)(3) Settlement, further described in Section 5.2.4.

2.35  "Motor Vehicle Record" or "Motor Vehicle Records" mean traffic infraction records that may be reported in the "Motor Vehicle Records" section of Consumer File Disclosures.

2.36  "Notice Date" means the date the Settlement Administrator first mailed the Mail Notice.

2.37  "Open Public Record" means a Judgment, Lien, or Landlord Tenant record that does not have an associated publicly available Subsequent Case Update Event in LNRDM's Oklahoma Database.

2.38  "Preliminary Approval" and "Preliminary Approval Order" mean the Court's order tentatively certifying for settlement purposes the Rule 23(b)(2) and Rule 23(b)(3) Settlement Classes, preliminarily approving the proposed Settlements, approving and directing the Rule 23(b)(2) and Rule 23(b)(3) Notice Plans, appointing a Settlement Administrator, and appointing Class Counsel.

2.39  "Public Record" means a Judgment, Lien or Landlord Tenant record that was obtained from a Source.

2.40  "Released Parties" means:

    i.  LNRS,

    ii.  LNRDM, and

    iii.  Each of their past and present employees, parents and subsidiaries and affiliate corporations or other business entities, members, officers,

directors, employees, agents, contractors, personal representatives, insurers, attorneys and assigns, as well as LNRS's customers, resellers and retransmitters. For purposes of clarity, "Released Parties" does not include entities that purchased data from LNRDM unless such entity is presently related by corporate ownership to either Defendant.

Notwithstanding any other provision of this Agreement, no LNRS customer, reseller or retransmitter is released for its own conduct or omission that is not based on and derivative of Covered Conduct by LNRS and/or LNRDM.

**2.41** "Rule 23(b)(2) Class Settlement" means the settlement and terms included herein by which the Rule 23(b)(2) Settlement Class settles and releases the Rule 23(b)(2) Settlement Class Released Claims.

**2.42** "Rule 23(b)(2) Settlement Website" means the Internet website to be established by the Settlement Administrator, as part of the Rule 23(b)(2) Notice Plan as set forth in Section 4.2.4.

**2.43** "Rule 23(b)(2) Internet Notice" means the longer form of notice (in a form substantially similar to that attached as Exhibit C and approved by the Court) to the Rule 23(b)(2) Settlement Class under the Rule 23(b)(2) Notice Plan that will be posted on the Rule 23(b)(2) Class Settlement Website, as further described in Section 4.2.3.

**2.44** "Rule 23(b)(2) Notice Plan" means the plan for providing notice of the Rule 23(b)(2) Settlement to the Rule 23(b)(2) Settlement Class under Fed. Civ. P. 23(c)(2)(A) and (e)(1), as set forth in Section 4.2.

**2.45** "Rule 23(b)(2) Publication Notice" means the shorter form of notice (in a form substantially similar to that attached as Exhibit B and approved by the Court) providing notice of Rule 23(b)(2) Settlement to the Rule 23(b)(2) Settlement Class under the Rule 23(b)(2) Notice Plan that will be published, as further described in Section 4.2.8.

**2.46** "Rule 23(b)(2) Settlement Class" or "Rule 23(b)(2) Settlement Class Members" mean all persons residing in the United States of America who at any time from July 24, 2013 through the date of Preliminary Approval had: (1) a Lien, Judgment or Landlord Tenant record made publicly available by a government source or a Lien, Judgment or Landlord Tenant related court record included in a Consumer Report furnished by LNRS or (2) a Motor Vehicle Record included in a Consumer File Disclosure by LNRS.

**2.47** "Rule 23(b)(2) Settlement Subclass" means members of the Rule 23(b)(2) Settlement Class who only had a Motor Vehicle Record included in a Consumer File Disclosure by LNRS.  Unless expressly stated otherwise, whenever this Agreement refers to the Rule 23(b)(2) Settlement Class, the Rule 23(b)(2) Settlement Subclass is also included.

**2.48** "Rule 23(b)(2) Settlement Class Released Claims" are the claims settled in the Rule 23(b)(2) Settlement by each member of the Rule 23(b)(2) Settlement Class and his or her respective spouses, heirs, executors, administrators, representatives, agents, attorneys, partners, successors, predecessors, assigns, and all those acting or purporting to act on their behalf and include (a) the right to bring any claims that were or could have been alleged on behalf of a purported class or otherwise asserted on an aggregate basis in the Settled Actions against any and all of the Released Parties under the FCRA or FCRA State Equivalents relating to the Covered Conduct, as well as (b) any claims for statutory damages for violations of the FCRA or FCRA State Equivalents, which each member of the Rule 23(b)(2) Settlement Class will acknowledge full satisfaction of, and shall be conclusively deemed to have fully, finally, and forever settled, released and discharged, subject to the limitation herein below.  Notwithstanding the

foregoing, the Rule 23(b)(2) Settlement Class Members do not release any Released Party who is a LNRS customer, reseller or retransmitter for its own conduct or omission that is not based on and derivative of Covered Conduct by Defendants and do not in the Rule 23(b)(2) Settlement release individual claims other than as to statutory damages.

**2.49**  "Rule 23(b)(3) Settlement" means the settlement and terms included herein by which the Rule 23(b)(3) Settlement Class settles and releases the Rule 23(b)(3) Settlement Class Released Claims.

**2.50**  "Rule 23(b)(3) Class Settlement Website" means the Internet website to be established by the Settlement Administrator providing notice of the Rule 23(b)(3) Settlement to the Rule 23(b)(3) Settlement Class, as part of the Rule 23(b)(3) Notice Plan as set forth in Section 5.2.4.

**2.51**  "Rule 23(b)(3) Internet Notice" means the longer form of notice (in a form substantially similar to that attached as Exhibit E and approved by the Court) to the Rule 23(b)(3) Settlement Class under the Rule 23(b)(3) Notice Plan that will be posted on the Rule 23(b)(3) Class Settlement Website, as further described in Section 5.2.4.

**2.52**  "Rule 23(b)(3) Notice Plan" means the plan for providing notice of the Rule 23(b)(3) Settlement to the Rule 23(b)(3) Settlement Class under Fed. R. Civ. P. 23(c)(2)(B) and (e)(1), as set forth in Section 5.2.

**2.53**  "Rule 23(b)(3) Settlement Class" or "Rule 23(b)(3) Settlement Class Members" mean all individuals in the United States who disputed a lien or judgment record with LNRS (either directly or indirectly via a reseller) from July 24, 2016 through December 31, 2021.  Excluded are counsel of record (and their respective law firms) for any of the Parties, employees of Defendants, and any

judge presiding over this Litigation and their staff, and all members of their immediate family.

2.54 "Rule 23(b)(3) Settlement Class Released Claims" are the claims settled in the Rule 23(b)(3) Settlement by each member of the Rule 23(b)(3) Settlement Class and his or her respective spouses, heirs, executors, administrators, representatives, agents, attorneys, partners, successors, predecessors, assigns, and all those acting or purporting to act on their behalf that were or could have been alleged in the Settled Actions against any and all of the Released Parties, whether asserted on an individual or class basis, arising before the Effective Date whether known or unknown, matured or unmatured, foreseen or unforeseen, suspected or unsuspected, accrued or unaccrued which the Rule 23(b)(3) Settlement Class Members ever had or now has, including but not limited to, all claims resulting from, arising out of, or in any way connected to the Litigation, its underlying subject matter or the events that qualified the individual for membership in the Rule 23(b)(3) Settlement Class of which each member of the Rule 23(b)(3) Settlement Class will acknowledge full satisfaction, and shall be conclusively deemed to have fully, finally, and forever settled, released and discharged, subject to the limitation herein below. Notwithstanding the foregoing, the Rule 23(b)(3) Settlement Class Members do not release any Released Party who is a LNRS customer, reseller or retransmitter for its own conduct or omission that is not based on and derivative of Covered Conduct by Defendants, including all claims alleged in *In Re: TransUnion Rental Screening Solutions, Inc. FCRA Litigation*, No. 1:20-md-02933-JPB.

2.55 "Service Award" means the one-time payment to each of the Named Plaintiffs, for the time and resources each has put into representing the Rule 23(b)(2)

and/or Rule 23(b)(3) Settlement Classes, as set forth in Sections 4.5.2 and 5.8, subject to approval by the Court.

2.56   "Settled Actions" means the four putative class actions resolved by this Settlement Agreement: *Hill v. LexisNexis Risk Solutions Inc.*, 18-cv-560 (W.D. Mo.); *Jones v. LexisNexis Risk Solutions Inc.*, No. 20-cv-06263 (S.D. Ohio); *Clark, et al. v. LexisNexis Risk Solutions Inc.*, No. 20-cv-01920 (D. Minn.); *Stewart, et al. v. LexisNexis Risk Data Retrieval Services, LLC* a/k/a *LexisNexis Risk Data Management, et al*., No. 3:20-cv-903 (E.D. Va.).

2.57   "Settlement" means the exchange of consideration among the Rule 23(b)(2) Settlement Class, the Rule 23(b)(3) Settlement Class, Defendants and Class Counsel reflected in and contemplated by this Settlement Agreement and constituting the Rule 23(b)(2) Settlement and the Rule 23(b)(3) Settlement.

2.58   "Settlement Administrator" means, subject to Court approval, Angeion Group, LLC.

2.59   "Settlement Agreement" means this Settlement Agreement and Release, including its Exhibits.

2.60   "Settlement Fund" means the monetary relief in the Rule 23(b)(3) Settlement to which the Defendants have agreed to provide for the benefit of the Rule 23(b)(3) Settlement Class Members, as further described in Section 5.5.

2.61   "Source" means a particular courthouse, recorder's office or other government agency responsible for the publication of Public Records or providing access to Public Records.

2.62   "Subsequent Case Update Events," when referred to separately, means the subsequent case update events for Public Records as defined in Sections 2.29, 2.30, and 2.31.

**2.63**   "Sunset Date" means the earlier of seven years from the Effective Date or June 30, 2028.

**2.64**   "Transferred Cases" refers collectively to *Hill*, *Jones* and *Clark*.

**2.65**   "Vendor" or "Vendors" refers to the persons or entities that retrieve Public Records from Sources on behalf of LNRDM.

**2.66**   "Visit" means each date where LNRDM or its Vendor retrieves a Public Record from a Source.

**2.67**   "Visit Interval" means the average number of days between Visits to a Source calculated with respect to an assessment timeframe.

**3.**   **MOTION FOR PRELIMINARY APPROVAL**

As soon as reasonably practicable after the signing of this Settlement Agreement, the Named Plaintiffs shall file with the Court a Motion for Preliminary Approval of the Proposed Rule 23(b)(2) Settlement and the Rule 23(b)(3) Settlement, Conditional Certification of the Rule 23(b)(2) and Rule 23(b)(3) Settlement Classes, Appointment of Class Counsel, Approval and Direction of the Rule 23(b)(2) and Rule 23(b)(3) Notice Plans, and Appointment of the Settlement Administrator that seeks entry of an order that would, for settlement purposes only:

a)   preliminarily approve this Settlement Agreement;

b)   certify a conditional settlement class under Fed. R. Civ. P. 23(b)(2) composed of the Rule 23(b)(2) Settlement Class Members;

c)   certify a conditional settlement class under Fed. R. Civ. P. 23(b)(3) composed of the Rule 23(b)(3) Settlement Class Members;

d)   appoint Class Counsel;

e)   approve the proposed Rule 23(b)(2) and Rule 23(b)(3) Notice Plans, including the forms of notice substantially similarly to those attached as Exhibits B, C, D, and E; and

f)      appoint the Settlement Administrator.

## 4.      SETTLEMENT PROVISIONS SPECIFIC TO RULE 23(B)(2) SETTLEMENT

### 4.1      Certification of Rule 23(b)(2) Settlement Class

#### 4.1.1      Class Certification

For purposes of settlement only, and upon the express terms and conditions set forth in this Settlement Agreement, Named Plaintiffs and Defendants agree to seek certification as a mandatory class of the Rule 23(b)(2) Settlement Class.

#### 4.1.2      No Right to Opt Out

Because the Rule 23(b)(2) Settlement Class is being certified as a mandatory class under Fed. R. Civ. P. 23(b)(2), Rule 23(b)(2) Settlement Class Members shall not be permitted to opt out of the Rule 23(b)(2) Settlement Class.

#### 4.1.3      Class Certified for Settlement Purposes Only

Defendants contend the Settled Actions could not be certified as class actions under Fed. R. Civ. P. 23 for trial purposes.  Nothing in this Settlement Agreement shall be construed as an admission by Defendants that any of the Settled Actions or any similar case is amenable to class certification for trial purposes.  Further, nothing in this Settlement Agreement shall prevent Defendants from opposing class certification or seeking de-certification of the conditionally certified tentative Rule 23(b)(2) Settlement Class if any Court concludes that this settlement may not be approved.

### 4.2      Rule 23(b)(2) Notice Plan

#### 4.2.1      Rule 23(b)(2) Settlement Class Notice

Under Fed. R. Civ. P. 23, individual notice is not required for a class certified under Fed. R. Civ. P. 23(b)(2), and, thus, such notice will not be sent to the Rule 23(b)(2) Settlement Class. The Parties and the Settlement Administrator have developed an appropriate and reasonable Rule 23(b)(2) Notice Plan to reach Rule 23(b)(2) Settlement Class Members to

provide notice to Rule 23(b)(2) Settlement Class Members of the terms of the proposed Settlement, before the Court conducts a hearing for final approval. The Parties will recommend to the Court this Rule 23(b)(2) Notice Plan, which will be administered by the experienced and highly qualified Settlement Administrator, and which will employ at least four different methods for circulating information about the settlement to Rule 23(b)(2) Settlement Class Members:

a)  A Rule 23(b)(2) Class Settlement Website will be established that contains the Preliminary Approval Order, the Rule 23(b)(2) Internet Notice, the Settlement Agreement, and other relevant information regarding the Court-approval process as approved by the Parties and/or as referenced in Section 4.2.4;

b)  A toll-free telephone number will be established to provide Rule 23(b)(2) Settlement Class Members with access to recorded information, in both English and Spanish, regarding the settlement;

c)  Digital media will be developed and placed using advertising services over a sufficient time period, to notify potential Rule 23(b)(2) Settlement Class Members about the settlement; and

d)  Rule 23(b)(2) Publication Notice will be published in traditional print media in People Magazine for one circulation period in the next available issue.

In accordance with the dates established in the Preliminary Approval Order, the Defendants and the Settlement Administrator shall implement the Rule 23(b)(2) Notice Plan and other actions described in this Section.

### 4.2.2 Court Appointment and Retention of Settlement Administrator

At the Preliminary Approval hearing, the Parties will propose that the Court appoint Angeion Group, LLC as the Settlement Administrator. The Settlement Administrator will facilitate the notice and administration process by assisting the Parties and providing professional guidance in the implementation of the Rule 23(b)(2) Notice Plan.

### 4.2.3 Rule 23(b)(2) Internet Notice

The Parties and the Settlement Administrator have agreed they will jointly recommend the Rule 23(b)(2) Internet Notice, substantially in the form attached as Exhibit C, to the Court for approval. The Rule 23(b)(2) Internet Notice is designed to provide comprehensive and reasonable notice of the terms of the Settlement. The Rule 23(b)(2) Internet Notice shall be posted on the Rule 23(b)(2) Class Settlement Website.

### 4.2.4 Rule 23(b)(2) Class Settlement Website

The Settlement Administrator will create and maintain the Class Settlement Website to be activated no later than fifteen (15) business days after Preliminary Approval. The Settlement Website for the Rule 23(b)(2) Settlement Class shall be lienandjudgmentsettlement.com.

The Class Settlement Website will post important settlement documents such as the Settlement Agreement, the Rule 23(b)(2) Internet Notice (in both English and Spanish), and the Preliminary Approval Order as mutually approved by the Parties. In addition, the Class Settlement Website will include a section for frequently asked questions, and procedural information regarding the status of the Court-approval process, such as an announcement when the final approval hearing is scheduled, when the Final Judgment and Order has been entered, and when the Effective Date is expected or has been reached.

The Settlement Administrator will maintain the Class Settlement Website for one year from either (1) the Effective Date, or (2) the date on which the settlement is terminated or otherwise not approved by a court. Thereafter, the Settlement Administrator will transfer

ownership of the URL to the Defendants. Defendants shall maintain the website in static form until the Sunset Date.

### 4.2.5   Toll-Free Telephone Number

The Settlement Administrator will create and maintain a toll-free telephone number to be activated no later than fifteen (15) business days after Preliminary Approval which number will be available 24 hours per day through the Effective Date. The toll-free number will provide Rule 23(b)(2) Settlement Class Members with access to recorded information, in both English and Spanish, related to the settlement. The Toll-Free Number will also provide class members whose questions are unanswered by the recorded information to request a call back. The Settlement Administrator shall respond to such inquiries promptly, with an average return-call time of the same or next business day. The Settlement Administrator will terminate the toll-free telephone number 30 days after either (1) the Effective Date, or (2) the date on which the settlement is terminated or otherwise not approved by a court.

### 4.2.6   Digital Media Advertisements

The Settlement Administrator will take steps to attract Rule 23(b)(2) Settlement Class Members to the Class Settlement Website by working with digital media services to develop and place digital advertisements over a sufficient time period to notify potential Rule 23(b)(2) Settlement Class Members about the Settlement.

### 4.2.7   Class Counsel Contact Information

Class Counsel shall coordinate with the Settlement Administrator to establish an e-mail address by which they will receive class member communications. The Class Settlement Website shall include substantive information provided by Class Counsel explaining the settlement and how it may be effectively used by class members to obtain the benefits intended.

### 4.2.8 Rule 23(b)(2) Publication Notice

The Parties and the Settlement Administrator have agreed that they will jointly recommend the Rule 23(b)(2) Publication Notice, substantially in the form attached as Exhibit B, to the Court for approval. The Rule 23(b)(2) Publication Notice is designed to provide the Rule 23(b)(2) Settlement Class Members information about the settlement and direct them to the Rule 23(b)(2) Internet Notice posted on the Rule 23(b)(2) Class Settlement Website.

The Settlement Administrator will publish the Rule 23(b)(2) Publication Notice in traditional print media in People Magazine for one circulation cycle.

### 4.2.9 CAFA Notice

The Parties agree Defendants shall serve notice of the Settlement that meets the requirements of the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1715 and that describes the features of the Settlement specific to both the Rule 23(b)(2) and Rule 23(b)(3) Settlement Classes, on the appropriate federal and state officials not later than ten days after the filing of this Settlement Agreement with the Court. A proposed form of CAFA Notice, without the accompanying attachments, is attached as Exhibit F. Defendants may accomplish such service through the use of a third party, and at their own expense except as otherwise provided for in this Settlement Agreement.

The Defendants shall file with the Court a certification of the date upon which the CAFA Notice was served.

### 4.2.10 Costs

The Defendants shall be responsible for the costs associated with the Rule 23(b)(2) Notice Plan except as otherwise provided for in this Settlement Agreement.

### 4.3 Injunctive Relief

### 4.3.1 Agreed Injunctive Relief

Subject to the terms and conditions of this Settlement Agreement, the Named Plaintiffs

and Defendants have agreed to move jointly for the Court to enter an injunction applicable to Defendants by consent, which will contain only the terms of the Injunctive Relief as described in Sections 4.3.1.a–4.3.1.l, as set forth in the Injunctive Relief Order.  The Named Plaintiffs pursued this Litigation to address certain practices relating to Defendants' retrieval, reporting and sale of Public Records, as well as the reporting of Motor Vehicle Records on Consumer File Disclosures.  The Named Plaintiffs argued Defendants' practices violated the FCRA. Specifically, with respect to Public Records, Named Plaintiffs' argument included amongst other claims that Defendants failed to timely retrieve and report Subsequent Case Update Events for Public Records.  Defendants contest Named Plaintiffs' allegations and otherwise deny Defendants violated the FCRA.  With respect to Public Records in particular, LNRDM argues it has continuously enhanced its processes and procedures over time to address the challenges and uncertainties inherent in collecting Public Records, including but not limited to, delays at the Source in making Subsequent Case Update Events publicly available.  LNRDM further asserts it strives to collect Subsequent Case Update Events and all relevant associated data fields in a current, comprehensive and consistent manner.  Named Plaintiffs denied these assertions. Yet, Named Plaintiffs acknowledge that collection of 100% of the Subsequent Case Update Events for Public Records within any defined period of time at any Source in most cases will be neither feasible nor commercially reasonable.  But to resolve this dispute, Defendants have agreed to an injunction requiring the implementation of the following business changes that represent a substantial shift from Defendants' current business practices and industry-wide practices.

The Parties will move the Court for entry of the Injunctive Relief Order attached as Exhibit A to this Settlement Agreement, which enjoins the Defendants as follows:

- **4.3.1.a** Defendant LNRDM will report to its Consumer Reporting Agency Customers its Visit Intervals, as updated on a monthly basis, for each

Source.  On an annual basis while the Injunction is in effect, LNRDM shall disclose to Class Counsel the number of Sources that have a Visit Interval of 60 days or less and the number and identity of Sources that have a Visit Interval greater than 60 days.  This information disclosed to Class Counsel will be confidential and subject to a protective order that limits the use of the information, and all information derived therefrom, solely for purposes of assessing the Injunctive Relief in this Settlement.

- **4.3.1.b**  Defendant LNRS will not sell or otherwise furnish in Consumer Reports Public Records obtained from LNRDM unless LNRDM follows the procedures for record collection set out in this agreement, the most recent Visit Interval for such Source is sixty (60) days or less, and LNRDM follows reasonable procedures to evaluate Collection Performance at each Source at least once a year.  LNRS reserves the right to request relief from this term with respect to Visit Intervals if, with product evolution, collection frequency becomes irrelevant to Consumer Report currency (i.e., a measure of latency that describes the time elapsed between Visits).

- **4.3.1.c**  Defendants and Plaintiffs will develop a sample size for each Source of its Open Public Record data for the prior seven years of filings to permit conclusions as to agreed levels of confidence and error rate for update collection benchmarking and comparative analysis purposes.

- **4.3.1.d**  On an annual going forward basis, LNRDM will assess Collection Performance at each Source with a Visit Interval of sixty (60) days or less using the sample size derived in Section 4.3.1.c for the prior seven years of filings with the intent to continually improve on its update collection practices.  Plaintiffs acknowledge that collection of 100% of the

Subsequent Case Update Events for Public Records within any defined period of time at any Source in most cases will be neither feasible nor commercially reasonable. LNRDM will conduct a yearly confidential internal assessment to evaluate the efficacy of procedures to meet Collection Performance standards. The confidential internal assessment will be conducted through the Defendants' General Counsel's office, and it will be all Parties' understanding that any documents or other work product generated by that confidential internal assessment will be protected by all applicable privileges or protections, including but not limited to the attorney-client privilege and the self-evaluative privilege, and shall not be discoverable. Defendants will evaluate the internal assessment and will address any material findings identified in the assessment with senior management.

- **4.3.1.e** The Parties have selected Jeffrey Zeskind (the "Reviewer") as an independent, third-party to perform a one-time review ("the Review") of the methodology used to conduct Collection Performance in Section 4.3.1.d, including the methodology to establish the sample size described in Section 4.3.1.c, and to substantively report to Plaintiffs whether or not Defendants are meeting the terms of this Agreement and the methodology is commercially reasonable. The Review shall be performed within nine (9) months of the completion of 4.3.1.a–d and shall be conducted at Defendants' sole expense. The Reviewer shall complete the Review within six (6) months after the process described in Section 4.3.1.f. Notwithstanding that time limitation, the Reviewer shall be afforded reasonable extensions to complete the Review to the extent reasonably

necessary.

- **4.3.1.f**   Prior to the Review, the Reviewer and Class Counsel will be provided, subject to an agreement to protect proprietary and confidential information, a detailed presentation of LNRDM's agreed Visit Interval and Collection Performance standards, including the methodology to establish the sample size described in Section 4.3.1.c.  Following this presentation, the Reviewer will be provided with the methodologies used to determine Visit Intervals and to conduct the Collection Performance in Section 4.3.1.d, including the methodology to establish the sample size described in Section 4.3.1.c, and shall review the validity of LNRDM's conclusions as to each.  If the Reviewer cannot confirm that LNRDM is meeting the terms of this Agreement or the methodology is not commercially reasonable, the Reviewer will provide feedback to LNRDM and shall so advise Class Counsel that LNRDM is either not meeting the terms of this Agreement or the methodology is not commercially reasonable. Once the Reviewer concludes LNRDM is meeting the terms of this Agreement and the methodology is commercially reasonable, the Reviewer shall provide a substantive written report to the Court, filed under seal, and to Defendants and Class Counsel addressing whether or not LNRDM is meeting its obligations as set forth in the Injunctive Relief.

- **4.3.1.g**   Defendants shall take necessary reasonable action to promptly remediate to the extent commercially reasonable any discrepancies reported by the Reviewer.  In the event the Parties are unable to agree on remedial actions concerning the reasonable action to be taken, the process outlined in Section 8.3 shall be followed.

- **4.3.1.h** LNRS shall not include in Consumer File Disclosures any Motor Vehicle Records that antedate the report by more than seven years.

- **4.3.1.i** LNRS will re-label the "suspension" and "reinstatement" date field names for Motor Vehicle Records that LNRDM retrieves from courthouses.

- **4.3.1.j** LNRS will identify the source of the Motor Vehicle Records in its Consumer File Disclosures.

- **4.3.1.k** LNRS will revise its Customer-Facing Documentation concerning the reporting of Landlord Tenant records to clarify the distinction between "new filings," "evictions," and "monetary judgments."

- **4.3.1.l** Class Counsel will provide to Defendants any information they believe is relevant to Public Records maintained by Defendants and Defendants will review the Public Records and, in their reasonable discretion, use such information if appropriate and necessary.

### 4.3.2   Timetable for Implementation of Injunctive Relief

Defendants will make a reasonable and good faith effort to implement the Injunctive Relief within twelve months of the Effective Date. Notwithstanding this provision, if Defendants are unable to comply with this deadline, Defendants may move the Court for a reasonable extension of time sufficient to permit completion of the task upon submission of an application to the Court showing good cause for the extension.

### 4.3.3   Sunset Date

The Injunctive Relief obligations defined in Section 4.3.1 will expire the earlier of seven years from the Effective Date or June 30, 2028.

### 4.3.4   Limitations on Injunctive Relief

Any action by Defendants determined in good faith to be reasonably necessary to comply with any federal, state, or local law, enactment, regulation, or judicial ruling shall not

constitute a breach of the Settlement Agreement. In the event any obligation Defendants have agreed to undertake as part of the Injunctive Relief would be deemed unlawful with any future federal, state, or local law, enactment, regulation, or judicial ruling, then Defendants will file a motion for miscellaneous relief, seeking to be released from performing such obligation. Class Counsel shall file any brief in opposition within twenty (20) days after the service of Defendants' motion for miscellaneous relief (which may be extended by the Court for good cause). Should Class Counsel not file any brief in opposition within the twenty (20) day period, the Court shall presume that Class Counsel does not oppose the relief requested in Defendants' motion for miscellaneous relief. Defendants shall file any reply brief in support of their motion for miscellaneous relief within seven (7) days after the filing of any brief in opposition.

### 4.4 Objections from Rule 23(b)(2) Settlement Class Members

Any Rule 23(b)(2) Settlement Class Member who wants to object to this Agreement may do so only as follows.

#### 4.4.1 Notice of Intent to Object

To be effective, an objection must be made by an individual Rule 23(b)(2) Settlement Class Member, not as a member of a group or subclass and, except in the case of a deceased or incapacitated Rule 23(b)(2) Settlement Class Member, not by the act of another person acting or purporting to act in a representative capacity. For an objection to be effective, a notice of intent to object to this settlement agreement must be sent to the Settlement Administrator, postmarked no later than 90 days after the Notice Date.

The Settlement Administrator shall notify the Parties of any objection within three business days of the objection's receipt.

### 4.4.2 Contents of Objection

To be effective, an objection must substantially contain: (a) the objecting Rule 23(b)(2) Settlement Class Member's name, address, and telephone number; (b) the name of this Litigation and the case number; and (c) a written statement detailing the specific basis for each the objection.

### 4.4.3 Additional Contents for Represented Members

To be effective, an objection submitted through an attorney must contain, in addition to the information set forth in Section 4.4.2: (a) the identity, mailing address, email address, and phone number for the counsel by whom the Rule 23(b)(2) Settlement Class Member is represented; (b) a statement of whether the objecting Rule 23(b)(2) Settlement Class Member intends to appear at the Final Fairness Hearing; and (c) a written statement detailing the specific basis for each objection, including any legal and factual support that the objecting Rule 23(b)(2) Settlement Class Member wishes to bring to the Court's attention and any evidence the objecting Rule 23(b)(2) Settlement Class Member wishes to introduce in support of the objection.

### 4.4.4 Responses to Objections

Either Party may respond to an objection. A motion for final approval shall not be filed before twenty-one (21) days after the deadline for objections expires.

### 4.4.5 No Payments to Objectors or Objectors' Counsel

The Parties, Class Counsel, and Defendants' Counsel shall not make any payments to any person or counsel who files an objection in exchange for the withdrawal, dismissal or release of the objection, except with approval of the Court. This provision applies throughout the Litigation, including during the pendency of any appeal, and also operates to bar such payments in exchange for the withdrawal or dismissal of the appeal, unless such payment is approved by the Court or the applicable appellate court.

**4.5**     **Rule 23(b)(2) Settlement Class Attorneys' Fees, Costs, and Other Expenses**

### 4.5.1   Amount

At least twenty-one (21) days before the Court's deadline for submission of objections, Class Counsel shall make an application to the Court for an award of attorneys' fees, costs, and other expenses, for up to $2,850,000 for their representation of the Rule 23(b)(2) Settlement Class, and for the Service Awards identified in Section 4.5.2, to be paid by the Defendants. Class Counsel's application shall also request that the Court specifically approve all of the terms of this Section. The $2,850,000 award shall include all fees, costs, and other expenses for all attorneys (and their employees, consultants, experts, and other agents) who performed work in connection with the Litigation of the claims on behalf of the Rule 23(b)(2) Settlement Class Members as well as the Service Awards identified in Section 4.5.2. Regardless of the number of attorneys sharing in the Court's award of attorneys' fees, costs, and other expenses, Defendants shall not be required to pay any award that exceeds, in the aggregate, $2,850,000 in connection with the Rule 23(b)(2) Settlement Class.

This agreement with respect to attorneys' fees, costs, and other expenses was not negotiated until after the substantive terms of the settlement, including the Injunctive Relief to the Rule 23(b)(2) Settlement Class, had been negotiated and agreed upon during the mediations.

### 4.5.2   Service Award to the Named Plaintiffs

In advance of the Court's deadline for submission of objections, the *Hill* Plaintiff shall make an application to the Court for the Court's approval of a Service Award of $15,000, and Plaintiffs Cyntisha Stewart, Terry Brown, Lisa Hill-Green, Michael G. Clark, and Yolanda Jones shall make an application to the Court for the Court's approval of Service Awards in the amount of $10,000. Defendants will not oppose these applications.

The Parties' negotiation of, and agreement to, the foregoing Service Award did not occur until after the substantive terms of the Settlement Agreement had been negotiated and agreed upon during the mediation.

### 4.5.3   Payment Schedule

If Class Counsel's request for an award of attorneys' fees, costs, and other expenses and Service Awards identified in Sections 4.5.1 and 4.5.2 have been finally approved by the Court and upheld on any appeal, then, within the later of either (a) thirty days after the Effective Date or (b) fourteen days after Defendants' receipt of wiring instructions from Class Counsel and receipt of W9 forms completed by Class Counsel and the Named Plaintiffs, Defendants will make payment of the amount of attorneys' fees, costs, and other expenses as well as Service Awards approved by the Court up to and not more than $2,850,000, in the aggregate, by wire transfer to the agent identified by Class Counsel.

## 4.6   Rule 23(b)(2) Settlement Class Release

### 4.6.1   Scope of Release

Each Rule 23(b)(2) Settlement Class Member and his or her respective spouses, heirs, executors, administrators, representatives, agents, attorneys, partners, successors, predecessors, assigns, and all those acting or purporting to act on their behalf acknowledge full satisfaction of, and shall be conclusively deemed to have fully, finally, and forever settled, released and discharged all of the Released Parties of and from any and all legal or equitable claims for statutory damages based on the FCRA or any FCRA State Equivalents arising before the Effective Date whether known or unknown, matured or unmatured, foreseen or unforeseen, suspected or unsuspected, accrued or unaccrued which the Rule 23(b)(2) Settlement Class Members ever had or now has.  The Rule 23(b)(2) Settlement Class does not release such legal and equitable claims for statutory damages that may arise after the Effective Date, subject to the limitations in Section 4.6.4.

After entering into this Settlement Agreement, Named Plaintiffs or the Rule 23(b)(2) Settlement Class may discover facts other than, different from, or in addition to, those that they know or believe to be true with respect to the Rule 23(b)(2) Settlement Class Released Claims. Named Plaintiffs and the Rule 23(b)(2) Settlement Class Members expressly waive and fully, finally, and forever settle and release any known or unknown, suspected or unsuspected, contingent or non-contingent legal or equitable claims for statutory damages to the extent available based on the FCRA and any FCRA State Equivalents against the Released Parties, whether or not concealed or hidden, and without regard to the subsequent discovery or existence of such other, different, or additional facts.

Named Plaintiffs and the Rule 23(b)(2) Settlement Class do not release and discharge, but instead preserve, the right of a Rule 23(b)(2) Settlement Class Member to file an individual lawsuit under 15 U.S.C. §§ 1681o or 1681n or FCRA State Equivalents for actual damages or punitive damages in respect to claims arising before the Effective Date, subject to the waiver of the class action procedural device described in Section 4.6.2.

### 4.6.2    Waiver of Class Action Procedural Device

The Named Plaintiffs, Rule 23(b)(2) Settlement Class Members and their respective spouses, heirs, executors, administrators, representatives, agents, attorneys, partners, successors, predecessors, assigns, and all those acting or purporting to act on their behalf waive their right to pursue any claims pursuant to the FCRA or FCRA State Equivalents on a class basis arising on or before the Effective Date against the Released Parties that were or could have been brought in the Litigation, (and that are not otherwise released and discharged by the Settlement Agreement), using the class action procedural device or as a mass action.  "Mass action" shall mean any complaint brought on behalf of more than one class member unless all plaintiffs are immediate family members.  This waiver includes any Claims for actual damages or punitive damages under 15 U.S.C. §§ 1681o, 1681n, any FCRA State Equivalents, or

otherwise. The Named Plaintiffs and the Rule 23(b)(2) Settlement Class Members recognize that as part of this Settlement, Defendants are agreeing to the certification of a tentative Rule 23(b)(2) Settlement Class, even though Defendants expressly deny that this Litigation could be certified as a class action for trial purposes. The Named Plaintiffs and Rule 23(b)(2) Settlement Class Members further recognize that they have already availed themselves of the class action procedural device once in this Litigation, and they agree that they shall not be allowed to avail themselves of the class action procedural device a second time in any pending and/or future lawsuit against the Released Parties for Claims that were or could have been brought in the Litigation (and that are not otherwise released and discharged by the Settlement Agreement).

### 4.6.3   State-Specific Waivers

The Rule 23(b)(2) Settlement Class Members acknowledge that they are aware that they may hereafter discover facts in addition to or different from those that they or Class Counsel now know or believe to be true with respect to the subject matter of this Litigation and the Rule 23(b)(2) Settlement Class Released Claims, but it is their intention to, and they do upon the Effective Date of this Settlement, fully, finally, and forever settle and release any and all Rule 23(b)(2) Settlement Class Released Claims, without regard to the subsequent discovery or existence of such different additional facts. Rule 23(b)(2) Settlement Class Members waive any and all rights and benefits afforded by California Civil Code § 1542, which provides as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

Rule 23(b)(2) Settlement Class Members further waive any and all rights and benefits afforded by South Dakota Code § 20-7-11, which provides as follows:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.

Rule 23(b)(2) Settlement Class Members and Class Counsel understand and acknowledge the significance of this waiver of California Civil Code Section 1542, South Dakota Code Section 20-7-11, and/or any other applicable federal or state law relating to limitations on releases.

### 4.6.4 Defendants' Ongoing Operations

- **4.6.4.a**  The Rule 23(b)(2) Settlement Class, excluding the Rule 23(b)(2) Settlement Subclass, agrees that so long as Defendants comply with the Injunctive Relief and during its pendency through the Sunset Date, Defendants shall be deemed to employ reasonable collection frequency and procedures to comprehensively collect Judgment and Lien Subsequent Case Update Events to assure maximum possible accuracy of Consumer Reports as that phrase is used in 15 U.S.C. § 1681e(b) as related to Judgment and Lien records.

- **4.6.4.b**  Though Plaintiffs have disputed such contentions, Defendants believe the claims alleged in the Litigation do not lie with respect to the provision of Public Records from LNRDM's Oklahoma Database because of the unique manner in which LNRDM collects such data, disclaims the association of any record to any particular consumer, and leaves to its customers the decision about whether or not the record can be linked to a particular consumer, and if so, to whom.  In addition, LNRDM provides a service to its customers in which LNRDM will collect and transmit records of a specific case.  These two kinds of communications are "unattributed data."  In consideration for the heightened protections that will be accomplished though the Injunctive

Relief, members of the Rule 23(b)(2) Settlement Class, excluding the Rule 23(b)(2) Settlement Subclass, for purposes of this Settlement agree that from the Effective Date until the Sunset Date, LNRDM's communication of unattributed data alone shall not cause that data to be characterized as Consumers Reports. Nor shall the transmission of such data alone cause LNRDM to be characterized as a consumer reporting agency, within the meaning of the FCRA or FCRA State Equivalents. The Rule 23(b)(2) Settlement Class agrees to this because of the distinct and unique way in which LNRDM provides data to its customers. Nothing in this Settlement Agreement shall amount to an admission or concession by Rule 23(b)(2) Settlement Class Members or Class Counsel that the sale of Public Records in bulk by parties other than LNRDM or the sale (if any) of data other than unattributed data by LNRDM necessarily falls outside the FCRA.

- **4.6.4.c** To the extent Defendants are later subject to corporate name changes, reorganizations or mergers in the normal course of business during the period of the Injunctive Relief, the provisions in Sections 4.3.1 (to the extent applicable), 4.6.4.a and 4.6.4.b will be assigned to any successor entities engaged in the same Covered Conduct as Defendants.

### 4.6.5 Binding Release

Upon the Effective Date, no default by any person in the performance of any covenant or obligation under this Settlement Agreement or any order entered in connection therewith shall affect the dismissal of the Litigation, the *res judicata* effect of the Final Judgment and Order, the foregoing releases, or any other provision of the Final Judgment and Order; provided,

however, that all other legal and equitable remedies for violation of a court order or breach of this Settlement Agreement shall remain available to all Parties.

## 5.    SETTLEMENT PROVISIONS SPECIFIC TO RULE 23(b)(3) SETTLEMENT

### 5.1    Certification of Rule 23(b)(3) Settlement Class

#### 5.1.1    Class Certification

For purposes of settlement only, and upon the express terms and conditions set forth in this Settlement Agreement, Named Plaintiffs and Defendants agree to seek certification of the Rule 23(b)(3) Settlement Class.

#### 5.1.2    Class Certified for Settlement Purposes Only

The Defendants contend that this Litigation could not be certified as a class action under Fed. R. Civ. P. 23 for trial purposes.  Nothing in this Settlement Agreement shall be construed as an admission by Defendants that this Litigation or any similar case is amenable to class certification for trial purposes.  Furthermore, nothing in this Settlement Agreement shall prevent Defendants from opposing class certification or seeking de-certification of the conditionally certified tentative Rule 23(b)(3) Settlement Class if final approval of this Settlement Agreement is not obtained, or not upheld on appeal, including review by the United States Supreme Court, for any reason, or if any of the conditions exist that permit Defendants to terminate this Settlement Agreement in accordance with Section 7.

### 5.2    Rule 23(b)(3) Notice Plan

#### 5.2.1    Preparation and Production of Class List by Defendants of Identified Rule 23(b)(3) Settlement Class Members

LNRS will provide the Settlement Administrator and Class Counsel with a Class List (in an electronically accessible format) of identified Rule 23(b)(3) Settlement Class Members prepared pursuant to the procedures set forth in this Section.

In generating the Class List, LNRS will use commercially reasonable procedures to search their records and identify each individual who, from July 24, 2016 to December 31, 2021, appears to satisfy one of the following conditions:

(a)      disputed a Lien or Judgment directly with LNRS; or

(b)      disputed a Lien or Judgment record indirectly with LNRS via a reseller.

Defendants will use commercially reasonable methods to remove from the Class List any repetitious or duplicative listing of any particular person.  Defendants shall also exclude from the Class List any person who has previously released any claims against Defendants as a result of litigation or otherwise.

With respect to each Rule 23(b)(3) Settlement Class Member, the Class List shall include the following information to the extent available:

(a)      the Rule 23(b)(3) Settlement Class Member's name;

(b)      the Rule 23(b)(3) Settlement Class Member's most probable current physical mailing address; and

(c)      the Rule 23(b)(3) Settlement Class Member's Social Security Number or Tax Identification Number.

Defendants shall provide to Class Counsel and the Settlement Administrator the Rule 23(b)(3) Settlement Class List within fourteen (14) business days from preliminary approval. Class Counsel will have five business days to state any objection to the Class List.  If such concern is raised, the Parties shall immediately meet and confer to address and resolve such dispute.

The Class List shall be governed by a standard Protective Order.  For the sake of clarity, Class Counsel represents that it will not use the information in the Class List for any purpose other than administration of the Rule 23(b)(3) Settlement and otherwise assisting class members with issues addressed in the Litigation.  Class Counsel shall not use the Class List for purposes

of representing any opt-outs as further described in Section 5.3.3. Defendants will reasonably cooperate to provide information necessary for Class Counsel to respond to and assist specific inquiring class members.

### 5.2.2 Class Size

The Defendants have represented that there are approximately 23,000 Rule 23(b)(3) Settlement Class Members. This estimate is a material term of this settlement.

### 5.2.3 Court Appointment and Retention of Settlement Administrator

At the Preliminary Approval hearing, the Parties will propose that the Court appoint Angeion Group, LLC as Settlement Administrator. The Settlement Administrator will facilitate the notice and administration process by assisting the Parties and providing professional guidance in the implementation of the Rule 23(b)(3) Notice Plan.

### 5.2.4 Rule 23(b)(3) Settlement Notice

After consultation with the Settlement Administrator, Named Plaintiffs and Defendants will jointly recommend the Mail Notice, substantially in the form attached as Exhibit D, to the Court for approval. Thirty (30) business days after the Court enters Preliminary Approval, the Settlement Administrator will send the Mail Notice in both Spanish and English via U.S. mail, postage prepaid requesting either forwarding service or change service to each Rule 23(b)(3) Settlement Class Member identified on the Class List. The Mail Notice will be sent to the last known physical address reflected in the Class List. For up to forty-five (45) days following the mailing of the Mail Notice, the Settlement Administrator will re-mail the Mail Notice via standard U.S. Mail, postage prepaid, to updated addresses of Rule 23(b)(3) Settlement Class Members to the extent that it receives address change notifications from the U.S. Postal Service. No later than seven days before the final fairness hearing in this Litigation, the Settlement Administrator will file proof of the mailing of the Mail Notice with the Court. Neither the

Parties nor the Settlement Administrator will have any further obligation to send notice of the Settlement to the Rule 23(b)(3) Settlement Class Members.

The Mail Notice will explain to the Rule 23(b)(3) Settlement Class Member that he or she has the option of opting out of the Rule 23(b)(3) Settlement Class, and if that he or she does not effectively opt out within ninety days of the Notice Date, then he or she can expect to receive their portion of the Settlement Fund after the Effective Date. The Mail Notice will also provide the Rule 23(b)(3) Settlement Class Member with notice of the Settlement Agreement, and direct them to the Rule 23(b)(3) Class Settlement Website for further information.

The Settlement Administrator also will create and maintain the Rule 23(b)(3) Class Settlement Website to be activated no later than fifteen (15) business days after Preliminary Approval. The URL for the Rule 23(b)(3) Class Settlement Website will be lienandjudgmentdisputes.com. The Rule 23(b)(3) Class Settlement Website will post important settlement documents, such as the Settlement Agreement, the Mail Notice, the Rule 23(b)(3) Internet Notice, and the Preliminary Approval Order as mutually approved by the Parties and/or as may be ordered by the Court. In addition, the Rule 23(b)(3) Class Settlement Website will include a description of the Settlement Fund, a section for frequently asked questions, and procedural information regarding the status of the Court-approval process, such as an announcement when the final approval hearing is scheduled, when the Final Judgment and Order has been entered, when the Effective Date is expected or has been reached, and when payment will likely be mailed as approved by the Parties. The Rule 23(b)(3) Class Settlement Website will be in both Spanish and English.

The Settlement Administrator will create and maintain a toll-free telephone number to be activated no later than fifteen (15) business days after Preliminary Approval which number will be available 24 hours per day through the Effective Date. The toll-free number will provide Rule 23(b)(3) Settlement Class Members with access to recorded information, in both English

and Spanish, related to the settlement. The Toll-Free Number will also provide class members whose questions are unanswered by the recorded information to request a call back. The Settlement Administrator shall respond to such inquiries promptly, with an average return-call time of the same or next business day.

The Settlement Administrator will terminate the Rule 23(b)(3) Class Settlement Website and the toll-free number one hundred and eighty (180) days after either (1) the second distribution to the Rule 23(b)(3) Settlement Class Members as referenced in Section 5.9, or (2) the date on which the settlement is terminated or otherwise not approved by a court. The Settlement Administrator will then transfer ownership of the URL to the Defendants.

### 5.2.5 CAFA Notice

The Parties agree that Defendants shall serve notice of the settlement that meets the requirements of CAFA, 28 U.S.C. § 1715 and that describes the features of the Settlement specific to both the Rule 23(b)(2) and Rule 23(b)(3) Settlement Classes, on the appropriate federal and state officials not later than ten days after the filing of this Settlement Agreement with the Court. A proposed form of CAFA Notice without the accompanying attachments, is attached as Exhibit F. Defendants may accomplish such service through the use of a third party, and at their own expense except as otherwise provided for in this Settlement Agreement.

The Defendants shall file with the Court a certification of the date upon which the CAFA Notice was served.

### 5.2.6 Costs

Defendants shall be responsible for the costs associated with the Rule 23(b)(3) Notice Plan except as otherwise provided for in this Settlement Agreement.

### 5.3 Procedure for Opt-outs

### 5.3.1 Opt-Out Process

As described in Section 5.2.4, the Mail Notice will contain information about how a

Rule 23(b)(3) Settlement Class Member may opt out of the Rule 23(b)(3) Settlement, including the potential implications of doing so. A proposed Rule 23(b)(3) Settlement Class Member may request to be excluded from the Rule 23(b)(3) Settlement Class by sending and not revoking a written request for exclusion to the Settlement Administrator, addressed to "*Lien & Judgment Dispute Settlement Administrator*, ATTN: Exclusion Request, PO Box 58220, Philadelphia, PA 19102." To be valid, the proposed Rule 23(b)(3) Settlement Class Member's opt-out request must contain the proposed Rule 23(b)(3) Settlement Class Member's name, original signature, current postal address, and current telephone number, and a statement that the proposed Rule 23(b)(3) Settlement Class Member wants to be excluded from the class of Rule 23(b)(3) Settlement Class Members. To be valid, opt-out requests must be postmarked no later than ninety days after the Notice Date. To be valid, a request must not purport to opt out of the class of the Rule 23(b)(3) Settlement Class Members for a group, aggregate, or class involving more than one consumer. Requests for exclusions that do not substantially comply with the requirements in this Section 5.3.1 are invalid. A Rule 23(b)(3) Settlement Class Member may revoke an opt-out request in writing. To be valid, opt-out revocations must be postmarked no later than the date of Final Judgment and Order.

### 5.3.2   List of Opt-Outs

No later than five business days after the deadline for submission of opt-out requests, the Settlement Administrator must provide to Class Counsel and Defendants' Counsel a complete list of all persons who have validly opted out of the Rule 23(b)(3) Settlement together with copies of the opt-out requests. Class Counsel and Defendants' Counsel shall not disclose or use the list except for the purpose of carrying out their responsibilities under this Agreement, and for purposes of memorializing the list of opt-outs in connection with proceedings seeking Final Judgment.

### 5.3.3   Representation of Opt-Outs

Class Counsel agree that this Settlement Agreement is fair, reasonable, and in the best interest of the Rule 23(b)(3) Settlement Class Members. Based upon unique circumstances here, Class Counsel agree that Rule 23(b)(3) Settlement Class Members who seek to opt-out should be represented by counsel who do not agree that the Settlement Agreement is fair, reasonable, and in the best interest of the Rule 23(b)(3) Settlement Class Members. Accordingly, Class Counsel shall, if contacted, refer any such opt-outs to the applicable state bar association or other referral organization for appropriate counsel in any subsequent litigation of the claims addressed in this Settlement Agreement against Defendants.

### 5.4 Objections from Rule 23(b)(3) Settlement Class Members

Any Rule 23(b)(3) Settlement Class Member who does not opt out, but who instead wants to object to this Agreement may do so only as follows.

#### 5.4.1 Notice of Intent to Object

To be effective, an objection must be made by an individual Rule 23(b)(3) Settlement Class Member, not as a member of a group or subclass and, except in the case of a deceased or incapacitated Rule 23(b)(3) Settlement Class Member, not by the act of another person acting or purporting to act in a representative capacity.

For an objection to be effective, a notice of intent to object to this settlement agreement must be sent to the Settlement Administrator, postmarked no later than 90 days after the Notice Date.

#### 5.4.2 Contents of Objection

To be effective, an objection must substantially contain: (a) the objecting Rule 23(b)(3) Settlement Class Member's name, address, and telephone number; (b) the name of this Litigation and the case number; and (c) a written statement detailing the specific basis for each objection.

### 5.4.3 Additional Contents for Represented Members

To be effective, an objection submitted through an attorney must contain, in addition to the information set forth in Section 5.4.2: (a) the identity, mailing address, email address, fax number, phone number for the counsel by whom the Rule 23(b)(3) Settlement Class Member is represented; (b) a statement of whether the objecting Rule 23(b)(3) Settlement Class Member intends to appear at the Final Fairness Hearing; and (c) a written statement detailing the specific basis for each objection, including any legal and factual support that the objecting Rule 23(b)(3) Settlement Class Member wishes to bring to the Court's attention and any evidence the objecting Rule 23(b)(3) Settlement Class Member wishes to introduce in support of the objection.

### 5.4.4 No Payments to Objectors or Objectors' Counsel

The Parties, Class Counsel, and Defendants' Counsel shall not make any payments to any person or counsel who files an objection in exchange for the withdrawal, dismissal or release of the objection, except with approval of the Court. This provision applies throughout the Litigation, including during the pendency of any appeal, and also operates to bar such payments in exchange for the withdrawal or dismissal of the appeal, unless such payment is approved by the Court or the applicable appellate court.

### 5.5 Settlement Fund

Within fourteen (14) days after the Effective Date, Defendants shall deposit the Settlement Fund into the Escrow Account. The Settlement Fund will be the amount awarded by the Court as the total consideration to the Rule 23(b)(3) Settlement Class, inclusive of any payment of attorneys' fees, costs, and any other expenses described below, in the amount of and no more than $21,500,000, in the aggregate. The Escrow Account will be managed by the Settlement Administrator.

**5.6**    **Settlement Fund Tax Status**

**5.6.1**    The Parties agree to treat the Settlement Fund as being at all times a "qualified settlement fund" within the meaning of Treas. Reg. § 1.468B-1.  In addition, the Settlement Administrator shall timely make such elections as necessary or advisable to carry out the provisions of this Subsection, including the "relation back election" (as defined in Treas. Reg. § 1.468B-1) back to the earliest permitted date. Such elections shall be made in compliance with the procedures and requirements contained in such regulations.  The Parties agree that the Settlement Fund shall not earn income. It shall be the responsibility of the Settlement Administrator to timely and properly prepare and deliver the necessary tax returns, if any, and thereafter to cause the appropriate filing to occur.

**5.6.2**    For the purpose of Treasury Regulation § 1.468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "administrator" shall be the Settlement Administrator.  The Settlement Administrator shall timely and properly file all informational and other tax returns necessary or advisable with respect to the Settlement Fund (including, without limitation, the returns described in Treas. Reg. § 1.468B-2(k)).  Such returns (as well as the election described in Subsection 5.4.1 above) shall be consistent with this Subsection.

The Settlement Administrator shall indemnify and hold the Released Parties harmless for Taxes and Tax Expenses (including, without limitation, Taxes payable by reason of any such indemnification), if any.  Further, Taxes and Tax Expenses shall be timely paid by the Settlement Administrator out of the Settlement Fund without prior order from the Court, and the Settlement Administrator shall be obligated (notwithstanding anything herein to the contrary) to withhold from distribution any funds necessary to pay such amounts, including the establishment of adequate reserves for any Taxes and Tax Expenses; the Released Parties are not responsible therefore nor shall they have any liability with respect thereto. The Parties

hereto agree to cooperate with the Settlement Administrator, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this Section.

### 5.7 Rule 23(b)(3) Settlement Attorneys' Fees, Costs, and Other Expenses

At least twenty-one (21) days before the Court's deadline for submission of objections, Class Counsel shall make an application to the Court for an award of attorneys' fees, costs, and other expenses in consideration of the benefits obtained through settlement provisions specific to the Rule 23(b)(3) Settlement, in an amount up to thirty-three percent (33%) of the Settlement Fund, to be paid from the Settlement Fund.  The award shall include all fees, costs, and other expenses for all attorneys (and their employees, consultants, experts, and other agents) who performed work in connection with the Litigation of the claims settled on behalf of the Rule 23(b)(3) Settlement Class Members.  Regardless of the number of attorneys sharing in the Court's award of attorneys' fees, costs, and other expenses, the Defendants shall not be required to pay any such award that exceeds, in the aggregate, thirty-three percent (33%) of the amount of the Settlement Fund in consideration of the benefits obtained through settlement provisions specific to the Rule 23(b)(3) Settlement.  Under no circumstances shall Defendants be required to pay or contribute more than $21,500,000 to the Settlement Fund to pay such fees and costs.

This agreement with respect to attorneys' fees, costs, and other expenses was not negotiated until after the amount of the Settlement Fund to the Rule 23(b)(3) Settlement Class had been negotiated and agreed upon during the mediation.

### 5.8 Service Award to the Named Plaintiffs

In advance of the Court's deadline for submission of objections, Plaintiffs Christopher Peterson and Eduardo Cantizzano shall make an application to the Court for the Court's approval of Service Awards in the amount of $10,000 each to be paid from the Settlement Fund. Defendants will not oppose these applications.

The Parties' negotiation of, and agreement to, the foregoing Service Award did not occur until after the substantive terms of the Settlement Agreement had been negotiated and agreed upon during the mediation.

### 5.9 **Payment Schedule**

The Settlement Administrator shall disburse the amount of an award of attorneys' fees, costs, and other expenses and Service Awards made under Sections 5.7 and 5.8 in the amounts ordered by the Court within twenty-one (21) days after the Effective Date, but only after its receipt of payment instructions from Class Counsel and receipt of W9 forms completed by Class Counsel and the Named Plaintiffs.

The amount remaining in the Escrow Account after the payments detailed above to Class Counsel and the Service Awards pursuant to Section 5 of this Settlement Agreement shall be distributed to the Rule 23(b)(3) Settlement Class by the Escrow Agent as follows: The initial distribution to the Rule 23(b)(3) Settlement Class Members will be made in an amount determined by dividing the amount remaining in the Escrow Account by the number of members of the Rule 23(b)(3) Settlement Class. Such distribution shall be made within fourteen (14) days of Defendant depositing the Settlement Fund into the Escrow Account. Any checks remaining uncashed after ninety (90) days from mailing and any checks returned undelivered after a second mailing attempt will remain in the Escrow Account. After the first round of checks, costs of notice and settlement administration for both the Rule 23(b)(2) and Rule 23(b)(3) Notice Plans as defined in Sections 4.2 and 5.2 will be reimbursed to Defendants to the extent possible with any uncashed or undeliverable checks. Any amounts remaining in the Escrow Account after such reimbursement, if any, shall be redistributed pro rata to Rule 23(b)(3) Settlement Class Members who cashed their initial check, so long as the amount of such reimbursement would equal or exceed $25.00. Any costs associated with the second distribution shall be taken out before the pro rata check amount is determined. Any amounts

remaining after the second distribution shall be paid to charitable *cy pres* recipient or recipients submitted jointly to the Court by the Parties within two months of the second distribution and approved by the Court as a *cy pres* award for the purpose of supporting the protection of consumers relating to the claims alleged in the Litigation; provided, however, that such grants must stipulate that the grant amounts may not be used in furtherance of litigation.

**5.10** **Rule 23(b)(3) Settlement Class Release**

**5.10.1 Release of All Claims**

- **5.10.1.a** Each member of the Rule 23(b)(3) Settlement Class who has not excluded him or herself and his or her respective spouses, heirs, executors, administrators, representatives, agents, attorneys, partners, successors, predecessors, assigns, and all those acting or purporting to act on their behalf acknowledge full satisfaction of, and shall be conclusively deemed to have fully, finally, and forever settled, released and discharged, subject to the limitation in 5.10.1.b, all of the Released Parties, of and from all claims arising before the Effective Date whether known or unknown, matured or unmatured, foreseen or unforeseen, suspected or unsuspected, accrued or unaccrued which the Rule 23(b)(3) Settlement Class Members ever had or now has, including but not limited to, all claims resulting from, arising out of, or in any way connected to the Litigation or its underlying subject matter.

- **5.10.1.b** Notwithstanding the foregoing, the Rule 23(b)(3) Class Members do not release any Released Party who is a LNRS customer, reseller or retransmitter for its own conduct or omission that is not based on and derivative of Covered Conduct by LNRS and/or LNRDM.

The Rule 23(b)(3) Settlement Class members shall be bound by the Settlement Agreement and their claims shall be dismissed with prejudice and released against the Released Parties, even if they never received actual notice of the settlement prior to the hearing for final approval of the settlement, provided notice approved pursuant to Fed. R. Civ. P. 23(c) and 23(e)(1)(B) was made.

### 5.10.2 State-Specific Waivers

The Rule 23(b)(3) Settlement Class Members acknowledge that they are aware that they may hereafter discover facts in addition to or different from those that they or Class Counsel now know or believe to be true with respect to the subject matter of this Litigation and the Rule 23(b)(3) Settlement Class Released Claims, but it is their intention to, and they do upon the Effective Date of this Settlement Agreement, fully, finally, and forever settle and release any and all Rule 23(b)(3) Settlement Class Released Claims, without regard to the subsequent discovery or existence of such different additional facts. Rule 23(b)(3) Settlement Class Members waive any and all rights and benefits afforded by California Civil Code § 1542, which provides as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

Rule 23(b)(3) Settlement Class Members further waive any and all rights and benefits afforded by South Dakota Code § 20-7-11, which provides as follows:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.

Rule 23(b)(3) Settlement Class Members and Class Counsel understand and acknowledge the significance of this waiver of California Civil Code Section 1542, South Dakota Code Section 20-7-11, and/or any other applicable federal or state law relating to limitations on releases.

### 5.10.3  Binding Release

Upon the Effective Date, no default by any person in the performance of any covenant or obligation under this Settlement Agreement or any order entered in connection with such shall affect the dismissal of the Litigation, the *res judicata* effect of the Final Judgment and Order, the foregoing releases, or any other provision of the Final Judgment and Order; provided, however, that all other legal and equitable remedies for violation of a court order or breach of this Settlement Agreement shall remain available to all Parties.

## 6.  ENTRY OF FINAL JUDGMENT AND ORDER

The Parties shall jointly seek entry by the Court of a Final Judgment and Order that includes provisions:

a) Certifying for settlement the Rule 23(b)(2) and Rule 23(b)(3) Settlement Classes, granting final approval of this Settlement, including both the Rule 23(b)(2) Settlement and the Rule 23(b)(3) Settlement, and directing its implementation pursuant to its terms and conditions;

b) ruling on Class Counsel's applications for attorneys' fees, costs, and other expenses in connection with benefits realized for the Rule 23(b)(2) and Rule 23(b)(3) Settlements;

c) enjoining Defendants according to the specific terms applicable to them in Section 4.3.1;

d) discharging and releasing the Released Parties, and each of them, from the Rule 23(b)(2) Settlement Class Released Claims and Rule 23(b)(3) Settlement Class Released Claims as provided in Sections 4.6 and 5.10, respectively;

e) permanently barring and enjoining all Rule 23(b)(2) Settlement Class Members from instituting, maintaining, or prosecuting, either directly or

indirectly, any claim for statutory damages as to Rule 23(b)(2) Settlement Class Released Claims;

f)    permanently barring and enjoining all Rule 23(b)(2) Settlement Class Members from seeking to use the class action or mass action procedural device to assert Rule 23(b)(2) Settlement Class Released Claims against any Released Party arising on or before the Effective Date relating to on Covered Conduct;

g)    permanently barring and enjoining all Rule 23(b)(3) Settlement Class Members from instituting, maintaining, or prosecuting, either directly or indirectly, any lawsuit that asserts Rule 23(b)(3) Released Claims;

h)    directing that the Litigation be dismissed with prejudice and without costs;

i)    stating pursuant to Fed. R. Civ. P. 54(b) that there is no just reason for delay and directing that the Final Judgment and Order is a final, appealable order; and

j)    reserving to the Court continuing and exclusive jurisdiction over the Parties with respect to the Settlement Agreement and the Final Judgment and Order as provided in Section 8.4.

## 7.    TERMINATION

Defendants shall have the right to terminate this Settlement Agreement, declare it null and void, and have no further obligations under this Settlement Agreement to any other party or to the Rule 23(b)(2) or Rule 23(b)(3) Settlement Class Members, if any of the following conditions subsequent occurs:

a)    the Court does not grant and maintain preliminary approval of the proposed Settlement for both the Rule 23(b)(2) and Rule 23(b)(3)

Settlement Classes; provided, however, that Defendants shall not have a right to terminate the Settlement Agreement under this paragraph if the denial of preliminary approval is based upon a term, the burden of the modification of which would fall solely on the Classes, and the Classes are willing to make such modification and to seek preliminary approval anew;

b) Plaintiffs exercise their right to terminate the Rule 23(b)(3) Settlement;

c) any court requires a notice program in addition to or in any form other than as specifically set forth in Sections 4.2.3, 4.2.8, and 5.2.4 and the attached Exhibits B, C, D, and E;

d) any Court requires Defendants, or any of them, to comply with obligations or requirements that are materially different from the Injunctive Relief;

e) any Court orders the Defendants to pay, in the aggregate, attorneys' fees, costs, and other expenses in connection with the Litigation, in excess of $2,850,000 in connection with the settlement provisions specific to the Rule 23(b)(2) Settlement Class;

f) any Court orders the Defendants to pay, in the aggregate and inclusive of attorneys' fees, costs, and other expenses, in connection with the Litigation, in excess of $21,500,000 in connection with settlement provisions specific to the Rule 23(b)(3) Settlement Class;

g) two percent (2%) or more of the members of the Rule 23(b)(3) Settlement Class opt out of the proposed settlement;

h) the Court fails to enter a Final Judgment and Order;

i)      the Court fails to enter the Injunctive Relief Order in materially the same form as attached as Exhibit A to this Settlement Agreement;

j)      the Settlement is not upheld on appeal, including review by the United States Supreme Court;

k)      the Ongoing Operations provision in Section 4.6.4 is not approved or otherwise not upheld on appeal, including review by the United States Supreme Court;

l)      A Named Plaintiff materially breaches the terms herein; or

m)      the Effective Date does not occur for any reason, including but not limited to the entry of an order by any court that would require either material modification or termination of the Settlement Agreement.

In addition, Class Counsel, acting on behalf of the Settlement Classes, shall have the right to terminate this Settlement Agreement, declare it null and void, and have no further obligations under this Settlement Agreement to any Defendant, if any the following condition subsequent occurs:

a)      the Court does not grant and maintain preliminary approval of the proposed Settlement for both the Rule 23(b)(2) and Rule 23(b)(3) Settlement Classes; provided, however, that Class Counsel, acting on behalf of the Settlement Classes, shall not have a right to terminate the Settlement Agreement under this paragraph if the denial of preliminary approval is based upon a term, the burden of the modification of which would fall solely on the Defendants, and the Defendants are willing to make such modification and to seek preliminary approval anew;

b)      any Court requires Named Plaintiffs, Rule 23(b)(2) Settlement Class, Rule 23(b)(3) Settlement Class, or Class Counsel, or any of them, to

comply with obligations or requirements that are materially different from the Injunctive Relief;

c) the Court fails to enter a Final Judgment and Order;

d) the Court fails to enter the Injunctive Relief Order in form as attached as Exhibit A to this Settlement Agreement;

e) the Settlement is not upheld on appeal, including review by the United States Supreme Court;

f) A Named Defendant materially breaches the terms herein;

g) the Effective Date does not occur for any reason, including but not limited to the entry of an order by any court that would require either material modification or termination of the Settlement Agreement; or

h) as to the Rule 23(b)(3) Settlement Class in the event that the total number of Rule 23(b)(3) Settlement Class Members exceeds 30,000 unless the Defendant then agrees to proportionately increase the amount of the Rule 23(b)(3) Settlement Class Settlement Fund.

In the event that the above right to cancel or terminate is exercised, then Defendants shall have no further obligations under this Settlement Agreement to the Rule 23(b)(3) Settlement Class Members and shall have the right to terminate the entire Settlement Agreement, declare it null and void, and additionally shall have no further obligations under this Settlement Agreement to the Named Plaintiffs or to the Rule 23(b)(2) Settlement Class Members.

The failure of the Court or any appellate court to approve in full the request by Class Counsel for attorneys' fees, costs, and other expenses specific to the Rule 23(b)(2) Settlement Class shall not be grounds for the Named Plaintiffs, the Rule 23(b)(2) Settlement Class, or Class Counsel to cancel or terminate this Settlement Agreement. The failure of the Court or any

appellate court to approve in full the request of any Named Plaintiff for his or her Service Award under provisions specific to the Rule 23(b)(2) Settlement Class shall not be grounds for the Named Plaintiffs, the Rule 23(b)(2) Settlement Class, or Class Counsel to cancel or terminate this Settlement Agreement.

The failure of the Court or any appellate court to approve in full the request by Class Counsel for attorneys' fees, costs, and other expenses specific to the Rule 23(b)(3) Settlement Class shall not be grounds for the Named Plaintiffs, the Rule 23(b)(3) Settlement Class, or Class Counsel to cancel or terminate this Settlement Agreement. The failure of the Court or any appellate court to approve in full the request of any Named Plaintiff for his or her Service Award under provisions specific to the Rule 23(b)(3) Settlement Class shall not be grounds for the Named Plaintiffs, the Rule 23(b)(3) Settlement Class, or Class Counsel to cancel or terminate this Settlement Agreement.

If the Settlement Agreement is not finally approved, is not upheld on appeal, or is otherwise terminated for any reason before the Effective Date, then the Rule 23(b)(2) and Rule 23(b)(3) Settlement Classes shall be decertified; the Settlement Agreement and all negotiations, proceedings, and documents prepared, and statements made in connection therewith, shall be without prejudice to any Party and shall not be deemed or construed to be an admission or confession by any Party of any fact, matter, or proposition of law; all Parties shall stand in the same procedural position as if the Settlement Agreement had not been negotiated, made, or filed with the Court; and Defendants may petition the Court to return the Transferred Cases to their respective originating courts, to which Plaintiffs will not object, and the Parties agree that the Transferred Cases will return to the status quo ante as of September 15, 2021.

## 8. MISCELLANEOUS PROVISIONS

### 8.1 Best Efforts to Obtain Court Approval

Named Plaintiffs and Defendants, and the Parties' counsel, agree to use their best efforts

to obtain Court approval of this Settlement Agreement, subject, however, to each Party's rights to terminate the Settlement Agreement, as provided herein.

**8.2**     <u>**No Admission**</u>

This Settlement Agreement, whether or not it shall become final, and any and all negotiations, communications, and discussions associated with it, shall not be:

a)     offered or received by or against any Party as evidence of, or be construed as or deemed to be evidence of, any presumption, concession, or admission by a Party of the truth of any fact alleged by Named Plaintiffs or defense asserted by Defendants, of the validity of any Claim that has been or could have been asserted in the Litigation, or the deficiency of any defense that has been or could have been asserted in the Litigation, or of any liability, negligence, fault, or wrongdoing on the part of Named Plaintiffs or Defendants;

b)     offered or received by or against Named Plaintiffs or Defendants as a presumption, concession, admission, or evidence of any violation or lack of violation of the FCRA or FCRA State Equivalents, or any state or federal statute, law, rule, or regulation or of any liability or wrongdoing by Defendants, or of the truth of any of the Claims or Defenses, and evidence thereof shall not be directly or indirectly, in any way (whether in the Litigation or in any other action or proceeding), except for purposes of enforcing this Settlement Agreement and the Final Judgment and Order including, without limitation, asserting as a defense the release and waivers provided herein;

c)     offered or received by or against Named Plaintiffs or Defendants as evidence of a presumption, concession, or admission with respect to a

decision by any court regarding the certification of a class, or for purposes of proving any liability, negligence, fault, or wrongdoing, or in any way referred to for any other reason as against Defendants, in any other civil, criminal, or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of this Settlement Agreement; provided, however, that if this Settlement Agreement is approved by the Court, then Named Plaintiffs or Defendants may refer to it to enforce their rights hereunder; or

d) construed as an admission or concession by Named Plaintiffs, the Rule 23(b)(2) or Rule 23(b)(3) Settlement Classes, or Defendants that the consideration to be given hereunder represents the relief that could or would have been obtained through trial in the Litigation.

These prohibitions on the use of this Settlement Agreement shall extend to, but are not limited to, any individual lawsuit preserved from release in Section 4.6.1 above.

**8.3** **Process for Resolution of Disputes Regarding Compliance with Settlement Agreement**

If any Rule 23(b)(2) or Rule 23(b)(3) Settlement Class member has a claim or dispute regarding Defendants' compliance with the Settlement Agreement, including but not limited to the Injunctive Relief, then such Settlement Class member first must submit, *pro se* or through counsel, his or her dispute directly to Defendants before taking any other action. Upon receipt of such a dispute, Defendants will advise Class Counsel of the dispute. Defendants will investigate the dispute and respond to the Settlement Class member within thirty (30) days, with a copy of its response to Class Counsel. Defendants' response must state the results of Defendants' investigation of the allegation of non-compliance with the Settlement Agreement and any action taken or to be taken to address the Settlement Class member's dispute; or, if additional information is required for Defendants to complete their

investigation, Defendants' response must identify the specific additional information that is required. Upon the submission of all the additional information required (as set forth in Defendants' response), Defendants will have twenty-one (21) days to complete their investigation of the Settlement Class member's dispute regarding the allegation of non-compliance with the Settlement Agreement and to provide a response containing the results of its investigation and any action taken or to be taken to address the dispute. Notwithstanding this provision, if Defendants are unable to comply with this deadline, Defendants may move the Court for a reasonable extension of time sufficient to permit completion of the investigation upon submission of an application to the Court showing good cause for the extension.

If, after the dispute resolution process described above has been completed, the Settlement Class member remains unsatisfied, the class member may submit his or her dispute regarding the allegation of non-compliance with the Settlement Agreement to the Court under the caption for this Litigation. The Settlement Class member's submissions to the Court must include copies of all correspondence between the Settlement Class member and Defendants regarding the dispute prior to the submission. The Court shall have exclusive and sole jurisdiction to resolve the dispute.

This section is not intended to govern or apply to allegations of a violation of state or federal law, such as the FCRA, except as might otherwise relate to Defendants' compliance with this Settlement Agreement. Either Defendants or Class Counsel may file an appropriate motion to enforce this Settlement Agreement in the event of breach of the agreement by the other. At its discretion, the Court may award attorneys' fees to the substantially prevailing party if the Court is required to reach a decision as to whether or not a party is in violation of the Injunction and/or breached the Settlement Agreement.

### 8.4    Court's Jurisdiction and Choice of Law

The United States District Court for the Eastern District of Virginia, Richmond Division, shall retain jurisdiction with respect to implementation and enforcement of the terms of the Settlement Agreement. The Court also shall retain exclusive jurisdiction over any subsequent claim against any Defendant subject to the dispute process described in Section 8.3 or whether any subsequent suit is released by the Settlement Agreement, including the threshold issue of whether the plaintiff in such suit is a member of the Rule 23(b)(2) Settlement Class or Rule 23(b)(3) Settlement Class in this Litigation and the impact of the terms of this Settlement Agreement on the plaintiff's claims and suit. This Settlement Agreement will be governed by and construed under Virginia law.

**8.5** **Settlement Notices**

Except for the Rule 23(b)(2) and Rule 23(b)(3) Notice Plans, as provided for in Sections 4.2 and 5.2 above, all other notices or formal communications under this Settlement Agreement shall be in writing and shall be given (i) by hand delivery; (ii) by registered or certified mail, return receipt requested, postage pre-paid; or (iii) by overnight courier to counsel for the Party to whom notice is directed at the following addresses:

For the Named Plaintiffs and Rule 23(b)(2) and Rule 23(b)(3) Settlement Classes:

Leonard Anthony Bennett
Consumer Litigation Associates, P.C.
763 J Clyde Morris Boulevard
Suite 1A
Newport News, VA 23601

Kristi C. Kelly
Kelly Guzzo PLC
3925 Chain Bridge Road, Suite 202
Fairfax, VA 22030

E. Michelle Drake
Berger Montague PC
1229 Tyler Street NE, Suite 205
Minneapolis, MN 55413

James A. Francis
Francis Mailman Soumilas P.C.

1600 Market Street
Philadelphia, PA 19103

Keith Keogh
Keogh Law Ltd.
55 W. Monroe Street
Chicago, IL 60603

For Defendants:

Ronald I. Raether, Jr.
Troutman Pepper Hamilton Sanders LLP
5 Park Plaza, Suite 1400
Irvine, CA 92614

James F. McCabe
Alston & Bird LLP
560 Mission Street, Suite 2100
San Francisco, CA 94105

Counsel may designate a change of the person to receive notice or a change of address, from time to time, by giving notice to all Parties in the manner described in this Section.

### 8.6     <u>Administrative Costs</u>

Except as provided in Sections 4.2 and 5.2 regarding the Rule 23(b)(2) and Rule 23(b)(3) Notice Plans, Sections 4.5.2 and 5.8 regarding Service Awards to Named Plaintiffs, and Sections 4.5 and 5.7 above regarding attorneys' fees, costs, and other expenses as to both the Rule 23(b)(2) and Rule 23(b)(3) Settlement Classes, each of the Named Plaintiffs and the Defendants shall be solely responsible for his, her, or its own costs and expenses.

### 8.7     <u>Taxes</u>

Named Plaintiffs and Class Counsel shall be responsible for paying any and all federal, state, and local taxes due on any payments made to them pursuant to the Settlement Agreement.

The Settlement Administrator shall be responsible for handling any and all required tax forms or returns required to be submitted to the Internal Revenue Service for any payments made to Rule 23(b)(3) Settlement Class Members under the terms of this Agreement including, but not limited to, Form 1099-MISC.

**8.8    Defendants' Communication with Customers, Business Contacts, and Members of the Public**

Defendants reserve the right to communicate with their customers, business contacts, and members of the public in the ordinary course of business, including Settlement Class Members after the Effective Date. Any communications with a Settlement Class Member shall not be inconsistent with the notice and terms of this Settlement Agreement.

**8.9    Class Counsel's Representation of Other Consumers**

Class Counsel have represented that they currently do not represent and do not intend to solicit any new actions asserting claims against Defendants on the theories advanced in Plaintiffs' complaints on behalf of class members. Class Counsel further agree that for three (3) years from the effective date they will not accept referral fees for or (subject to approval of this term by the Court pursuant to Va. Rule of Professional Conduct 5.6(b)) solicit or bring on a class action or on a mass basis such Rule 23(b)(2) Settlement Class Released Claims or Rule 23(b)(3) Settlement Class Released Claims against Defendants in federal or state court. Notwithstanding these representations, all Parties and Counsel understand that Defendants have not sought to unethically limit representation. Further, no limitation or restriction is intended here as to Rule 23(b)(2) Settlement Class Member damage claims that are not released.

**8.10    No Public Statements by Class Counsel Outside of Formal Notice Program**

Neither Party nor their counsel shall make any press release related to this Agreement or the Litigation without the consent of the other parties. The Parties agree they will not make any statements (oral or written), directly or indirectly, to the media or general public about each other related to this Settlement or about the Released Parties' business practices or policies as they relate to the Settled Actions that are false, misleading, or cast an opposing party in a negative light, regardless of their truth or falsity. This provision will govern for 120 days after the Effective Date.

**8.11    Confidentiality of Discovery Materials and Information**

The Parties, their counsel, and any experts in this Litigation, agree that they remain subject to any and all protective orders, mediation confidentiality agreements and other orders and agreements that govern the confidentiality of information exchanged in the Litigation.

**8.12    Complete Agreement**

This Settlement Agreement is the entire, complete agreement of each and every term agreed to by and among Named Plaintiffs, the Rule 23(b)(2) and Rule 23(b)(3) Settlement Classes, Defendants, and their counsel.  In entering into this Settlement Agreement, no Party has made or relied on any warranty or representation not specifically set forth herein.  This Settlement Agreement shall not be modified except by a writing executed by all the Parties.

**8.13    Headings for Convenience Only**

The headings in this Settlement Agreement are for the convenience of the reader only and shall not affect the meaning or interpretation of this Settlement Agreement.

**8.14    Severability**

In the event that any provision hereof becomes or is declared by a court of competent jurisdiction to be illegal, unenforceable, or void, this Agreement shall continue in full force and effect without said provision to the extent Defendants do not exercise their right to terminate under Section 7.

**8.15    No Party Is the Drafter**

Notwithstanding the choice of law provision in Section 8.4, none of the Parties to this Settlement Agreement shall be considered to be the primary drafter of this Settlement Agreement or any provision hereof for the purpose of any rule of interpretation or construction that might cause any provision to be construed against the drafter.

**8.16    Binding Effect**

This Settlement Agreement shall be binding according to its terms upon, and inure to the benefit of, the Named Plaintiffs, the Rule 23(b)(2) or Rule 23(b)(3) Settlement Classes, the Defendants, the Released Parties, and their respective successors and assigns.

### 8.17    Authorization to Enter Settlement Agreement

The individuals signing this Settlement Agreement on behalf of the Defendants represent that they are fully authorized by the Defendants to enter into, and to execute, this Settlement Agreement on their behalf.  Class Counsel represent that they are fully authorized to conduct settlement negotiations with counsel for Defendants on behalf of Named Plaintiffs, and to enter into, and to execute, this Settlement Agreement on behalf of the Rule 23(b)(2) and Rule 23(b)(3) Settlement Classes, subject to Court approval pursuant to Fed. R. Civ. P. 23(e). Each Named Plaintiff enters into and executes this Settlement Agreement on behalf of himself or herself, and as a representative of and on behalf of the Rule 23(b)(2) and Rule 23(b)(3) Settlement Classes, subject to Court approval pursuant to Fed. R. Civ. P. 23(e).

### 8.18    Execution in Counterparts

Named Plaintiffs, Class Counsel, Defendants, and Defendants' counsel may execute this Settlement Agreement in counterparts, and the execution of counterparts shall have the same effect as if all Parties had signed the same instrument.  Electronic, including DocuSign, and scanned signatures shall be considered as valid signatures as of the date signed.  This Settlement Agreement shall not be deemed executed until signed by all Named Plaintiffs, by all Class Counsel, and by counsel for and representatives of Defendants.

[*Signatures on following page*]

Named Plaintiffs:

_____
Theresa Hill

_____
Yolanda Jones

_____
Michael G. Clark

_____
Christopher Peterson

_____
Cyntisha Stewart

_____
Terry Brown

_____
Eduardo Cantizzano

_____
Lisa Hill-Green

Named Plaintiffs:

_____
Theresa Hill

_____
Yolanda Jones

_____
Michael G. Clark

_____
Christopher Peterson

_____
Cyntisha Stewart

_____
Terry Brown

_____
Eduardo Cantizzano

_____
Lisa Hill-Green

Named Plaintiffs:

_____

Theresa Hill


_____

Yolanda Jones

_____

Michael G. Clark


_____

Christopher Peterson


_____

Cyntisha Stewart


_____

Terry Brown


_____

Eduardo Cantizzano


_____

Lisa Hill-Green

Named Plaintiffs:

_____
Theresa Hill

_____
Yolanda Jones

_____
Michael G. Clark

Christopher Peterson     1/20/2022
A26E6BBED82A432...      _____

_____
Cyntisha Stewart

_____
Terry Brown

_____
Eduardo Cantizzano

_____
Lisa Hill-Green

Named Plaintiffs:

_____
Theresa Hill


_____
Yolanda Jones


_____
Michael G. Clark


_____
Christopher Peterson

_____
Cyntisha Stewart


_____
Terry Brown


_____
Eduardo Cantizzano


_____
Lisa Hill-Green

DocuSign Envelope ID: E7512DA3-8A20-43D7-BA50-EBE40F10B0B3

Named Plaintiffs:

_____
Theresa Hill

_____
Yolanda Jones

_____
Michael G. Clark

_____
Christopher Peterson

_____
Cyntisha Stewart

_____
Terry Brown

_____
Eduardo Cantizzano

_____
Lisa Hill-Green

Named Plaintiffs:

_____
Theresa Hill


_____
Yolanda Jones


_____
Michael G. Clark


_____
Christopher Peterson


_____
Cyntisha Stewart


_____
Terry Brown


_____
Eduardo Cantizzano


_____
Lisa Hill-Green

Named Plaintiffs:

_____
Theresa Hill


_____
Yolanda Jones


_____
Michael G. Clark


_____
Christopher Peterson


_____
Cyntisha Stewart


_____
Terry Brown


_____
Eduardo Cantizzano

_____
Lisa Hill-Green

**Counsel for Named Plaintiffs and**

**Settlement Classes:**

_____
Leonard Anthony Bennett
Consumer Litigation Associates, P.C.
763 J Clyde Morris Boulevard
Suite IA
Newport News, VA 23601

_____
James A. Francis
Francis Mailman Soumilas P.C.
1600 Market Street
Philadelphia, PA 19103

_____
Kristi C. Kelly
Kelly Guzzo PLC
3925 Chain Bridge Road, Suite 202
Fairfax, VA 22030

_____
E. Michelle Drake
Berger Montague PC
1229 Tyler Street NE, Suite 205
Minneapolis, MN 55413

_____
Keith Keogh
Keogh Law Ltd.
55 W. Monroe Street
Chicago, IL 60603

**Counsel for Named Plaintiffs and**

**Settlement Classes:**

_____
Leonard Anthony Bennett
Consumer Litigation Associates, P.C.
763 J Clyde Morris Boulevard
Suite IA
Newport News, VA 23601

_____
James A. Francis
Francis Mailman Soumilas P.C.
1600 Market Street
Philadelphia, PA 19103

_____
Kristi C. Kelly
Kelly Guzzo PLC
3925 Chain Bridge Road, Suite 202
Fairfax, VA 22030

_____
E. Michelle Drake
Berger Montague PC
1229 Tyler Street NE, Suite 205
Minneapolis, MN 55413

_____
Keith Keogh
Keogh Law Ltd.
55 W. Monroe Street
Chicago, IL 60603

**Defendants**

Rick Trainor
1C08678FC7BF47D
_____
LexisNexis Risk Solutions Inc.

Name: ___Rick E. Trainor_____

Title: ___Executive Vice President___

Rick Trainor
1C08678FC7BF47D
_____
LexisNexis Risk Data Management LLC

Name: ___Rick E. Trainor_____

Title: ___Executive Vice President___

**Counsel for Defendants LexisNexis Risk Solutions Inc., LexisNexis Risk Data Management LLC:**

_____

Ronald I. Raether, Jr.
Troutman Pepper Hamilton Sanders LLP
5 Park Plaza, Suite 1400
Irvine, CA 92614

_____

James F. McCabe
Alston & Bird LLP
560 Mission Street, Suite 2100
San Francisco, CA 94105

**EXHIBIT A**

**[Proposed Injunctive Relief Order]**

**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**RICHMOND DIVISION**

CYNTISHA STEWART, *et al.*      :     CASE NO.: 3:20-cv-00903-JAG

          Plaintiffs,      :

v.                         :

LEXISNEXIS RISK DATA RETRIEVAL
SERVICES, LLC a/k/a LexisNexis Risk  :
Data Management, *et al.*

                           :

          Defendants.

---

### INJUNCTIVE RELIEF ORDER

---

On [_____], 2022, the Court entered its Order granting the Motion for Final Approval of Class Action Settlement and Entry of Final Judgment and Order (Docket No._). Prior to and on that date, the Court received argument from both Parties in support of this proposed Injunctive Relief Order. After consideration of the argument and factual detail provided and upon the Court's own determination, pursuant to that Order and Section 4.3 of the Settlement Agreement and Release, dated [_____], 2022 (the "Settlement Agreement"), the Court enters this Injunctive Relief Order.

For purposes of this Injunctive Relief Order, the Court adopts and incorporates the definitions and meanings of the defined terms set forth in the Settlement Agreement (the "Defined Terms"). The Defined Terms referenced in this Injunctive Relief Order are as stated below. The terms of this Injunctive Relief Order reflect the Injunctive Relief provisions in the Settlement Agreement.

# I.   DEFINITIONS

1. "Litigation" means this civil action captioned, *Stewart, et al. v. LexisNexis Risk Solutions Inc., et al.*, No. 3:20-cv-903 in the United States District Court for the Eastern District of Virginia, and all other Settled Actions.

2. "Named Plaintiffs" means Cyntisha Stewart, Terry Brown, Eduardo Cantizzano, Lisa Hill-Green, Theresa Hill, Michael G. Clark, Christopher Peterson and Yolanda Jones or any of them.

3. "LNRDM" means Defendant LexisNexis Risk Data Management LLC, and any other predecessor entities engaged in the same Covered Conduct as LNRDM, including but not limited to, LexisNexis Risk & Information Analytics Group, Inc. and LexisNexis Risk Data Retrieval Services LLC.

4. "LNRS" means Defendant LexisNexis Risk Solutions Inc. and any other predecessor entities engaged in the same Covered Conduct as LNRS, including but not limited to, LexisNexis Risk Solutions Bureau LLC.

5. "Defendants" means LNRS and LNRDM.

6. "Party" and "Parties" mean the Named Plaintiffs, the Rule 23(b)(2) Settlement Class, the Rule 23(b)(3) Settlement Class and the Defendants.

7. "Class Counsel" means those attorneys approved and appointed by the Court to represent the Rule 23(b)(2) and Rule 23(b)(3) Settlement Classes.

8. "Collection Performance" means the assessment LNRDM will undertake to employ commercially reasonable procedures to achieve maximum possible accuracy of LNRDM's retrieval of Subsequent Case Update Events from Sources with a Visit Interval of sixty (60) days or less.  Collection Performance assessment includes: (1) selecting from each relevant Source a statistically significant number of Open Public Records bearing action dates in the prior seven years; (2) retrieving each selected

Open Public Record from the Source to determine whether a Subsequent Case Update Event is publicly available; and (3) analyzing the responses retrieved and identifying means to improve retrieval of Subsequent Case Update Events where necessary.

9. "Consumer File Disclosure" means the document LNRS provides to a consumer in response to a consumer's request pursuant to 15 U.S.C. § 1681g for information in his or her file.

10. "Consumer Report" means the report as defined in 15 U.S.C. § 1681a(d) and provided by a consumer reporting agency as defined in 15 U.S.C. § 1681a(f).

11. "Court" means the United States District Court for the Eastern District of Virginia where the Litigation is pending.

12. "Covered Conduct" means (a) the reporting of Judgments, Liens or Landlord Tenant records and any related violations of the FCRA or FCRA State Equivalents, (b) LNRS' disclosure of Motor Vehicle Records on Consumer File Disclosures and any related violation of the FCRA or FCRA State Equivalents and (c) LNRDM's provision of data relating to Judgment, Lien and Landlord Tenant records and any related violations of the FCRA or FCRA State Equivalents.

13. "Customer-Facing Documentation" means documentation that LNRS may provide to current and potential LNRS customers to assist in explaining Landlord Tenant records within LNRS consumer report products, including but not limited to, marketing, sales and promotional materials and technical user guides.

14. "Effective Date" means the date on which this Court's entry of the Final Judgment and Order and this Court's orders regarding attorneys' fees have all become final because the following has occurred: (1.) there are no objections to the Final Judgment and Order,  or (2.) if there are any objections, (i.) the expiration of three

(3) business days after the time to file a motion to alter or amend the Final Judgment and Order under Federal Rule of Civil Procedure 59(e) has passed without any such motion having been filed; (ii) the expiration of three (3) business days after the time in which to appeal the Final Judgment and Order under Federal Rule of Appellate Procedure 4(a)(1) has passed without any appeal having been filed, or unless the day falls on a weekend or a Court holiday, in which case the date shall be deemed to be the next business day; and (iii) if such motion to alter or amend is filed, or if an appeal is taken, three business days after a final determination of any such motion or appeal that permits the consummation of the Settlement. For purposes of this definition, the term "appeal" includes all writ proceedings.

15. "FCRA" means the federal Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.*

16. "FCRA State Equivalents" means any statute or regulation of any State, the District of Columbia, or Puerto Rico, that has the purpose or effect of regulating the collection, procurement, use, or disclosure of the same or similar information that meets the definition of "consumer report" under the FCRA.

17. "Final Judgment" or "Final Judgment and Order" means the final judgment and order of dismissal entered by the Court in this Litigation granting final approval of this Settlement Agreement (including certifying both the Rule 23(b)(2) and the Rule 23(b)(3) Settlement Classes, finding the benefits provided to and releases and other consideration provided by such Classes to be fair, reasonable and adequate, approving Class Counsel's request for attorneys' fees, costs, and other expenses and Named Plaintiffs' requests for Service Awards).

18. "Injunctive Relief" means the injunctive relief programs to which the Defendants have agreed in the Rule 23(b)(2) Settlement which benefit the Rule 23(b)(2) Settlement Class, and as Ordered herein as further described in Section II.

19. "Injunctive Relief Order" means this Order.

20. "Judgment" means a record typically characterized by an award of money as ordered by the judge, a record of a Judgment in one court transcribed to another court, or a lien recorded on the basis of a Judgment. Subsequent case update events to "Judgment" records include satisfactions (payments in full), vacaturs (reversal of the judgment as if it did not occur) and releases of judgment liens. Judgment as defined herein does not include Landlord Tenant records which are separately defined in Section I(21).

21. "Landlord Tenant" means a record involving disputes between landlords and tenants. "Landlord Tenant" records include new suits (initial case filings), non-monetary adjudications ordering the tenant to leave the property (evictions), and awards of restitution (landlord tenant judgments). Subsequent case update events to "Landlord Tenant" records include satisfactions, vacaturs and dismissals.

22. "Lien" means a record typically reflecting the non-payment of state or federal taxes. Subsequent case update events to "Lien" records include releases (payments in full) and filed in errors (reversal of the lien as if it did not occur).

23. "LNRDM's Consumer Reporting Agency Customers" means LNRS and any customer of LNRDM who is contractually permitted to use data supplied by LNRDM regarding Public Records for permissible purposes as defined under the FCRA.

24. "LNRDM's Oklahoma Database" means those databases maintained by LNRDM (regardless of physical location) in which LNRDM stores and transmits data about Public Records to LNRDM's Consumer Reporting Agency Customers.

25. "Motor Vehicle Record" or "Motor Vehicle Records" mean traffic infraction records that may be reported in the "Motor Vehicle Records" section of Consumer File Disclosures.

26. "Open Public Record" means a Judgment, Lien, or Landlord Tenant record that does not have an associated publicly available Subsequent Case Update Event in LNRDM's Oklahoma Database.

27. "Public Record" means a Judgment, Lien or Landlord Tenant record that was obtained from a Source.

28. "Released Parties" means:

    i. LNRS,

    ii. LNRDM, and

    iii. Each of their past and present employees, parents and subsidiaries and affiliate corporations or other business entities, members, officers, directors, employees, agents, contractors, personal representatives, insurers, attorneys and assigns, as well as LNRS's customers, resellers and retransmitters. For purposes of clarity, "Released Parties" does not include entities that purchased data from LNRDM unless such entity is presently related by corporate ownership to either Defendant.

        Notwithstanding any other provision of the Settlement Agreement, no LNRS customer, reseller or retransmitter is released for its own conduct or omission that is not based on and derivative of Covered Conduct by LNRS and/or LNRDM.

29. "Rule 23(b)(2) Class Settlement" means the settlement and terms included herein by which the Rule 23(b)(2) Settlement Class settles and releases the Rule 23(b)(2) Settlement Class Released Claims.

30. "Rule 23(b)(2) Settlement Class" or "Rule 23(b)(2) Settlement Class Members" mean all persons residing in the United States of America who at any time from July 24, 2013 through the date of Preliminary Approval had: (1) a Lien, Judgment or Landlord Tenant record made publicly available by a government source or a Lien, Judgment or Landlord Tenant related court record included in a Consumer Report

furnished by LNRS or (2) a Motor Vehicle Record included in a Consumer File Disclosure by LNRS.

31. "Rule 23(b)(2) Settlement Subclass" means members of the Rule 23(b)(2) Settlement Class who only had a Motor Vehicle Record included in a Consumer File Disclosure by LNRS.  Unless expressly stated otherwise, whenever this Agreement refers to the Rule 23(b)(2) Settlement Class, the Rule 23(b)(2) Settlement Subclass is also included.

32. "Rule 23(b)(2) Settlement Class Released Claims" are the claims settled in the Rule 23(b)(2) Settlement by each member of the Rule 23(b)(2) Settlement Class and his or her respective spouses, heirs, executors, administrators, representatives, agents, attorneys, partners, successors, predecessors, assigns, and all those acting or purporting to act on their behalf and include (a) the right to bring any claims that were or could have been alleged on behalf of a purported class or otherwise asserted on an aggregate basis in the Settled Actions against any and all of the Released Parties under the FCRA or FCRA State Equivalents relating to the Covered Conduct, as well as (b) any claims for statutory damages for violations of the FCRA or FCRA State Equivalents, which each member of the Rule 23(b)(2) Settlement Class will acknowledge full satisfaction of, and shall be conclusively deemed to have fully, finally, and forever settled, released and discharged, subject to the limitation herein below.  Notwithstanding the foregoing, the Rule 23(b)(2) Settlement Class Members do not release any Released Party who is a LNRS customer, reseller or retransmitter for its own conduct or omission that is not based on and derivative of Covered Conduct by Defendants and do not in the Rule 23(b)(2) Settlement release individual claims other than as to statutory damages.

33. "Rule 23(b)(3) Settlement" means the settlement and terms included herein by which the Rule 23(b)(3) Settlement Class settles and releases the Rule 23(b)(3) Settlement Class Released Claims.

34. "Rule 23(b)(3) Settlement Class" or "Rule 23(b)(3) Settlement Class Members" mean all individuals in the United States who disputed a lien or judgment record with LNRS (either directly or indirectly via a reseller) from July 24, 2016 through December 31, 2021. Excluded are counsel of record (and their respective law firms) for any of the Parties, employees of Defendants, and any judge presiding over this Litigation and their staff, and all members of their immediate family.

35. "Rule 23(b)(3) Settlement Class Released Claims" are the claims settled in the Rule 23(b)(3) Settlement by each member of the Rule 23(b)(3) Settlement Class and his or her respective spouses, heirs, executors, administrators, representatives, agents, attorneys, partners, successors, predecessors, assigns, and all those acting or purporting to act on their behalf that were or could have been alleged in the Settled Actions against any and all of the Released Parties, whether asserted on an individual or class basis, arising before the Effective Date whether known or unknown, matured or unmatured, foreseen or unforeseen, suspected or unsuspected, accrued or unaccrued which the Rule 23(b)(3) Settlement Class Members ever had or now has, including but not limited to, all claims resulting from, arising out of, or in any way connected to the Litigation, its underlying subject matter or the events that qualified the individual for membership in the Rule 23(b)(3) Settlement Class of which each member of the Rule 23(b)(3) Settlement Class will acknowledge full satisfaction, and shall be conclusively deemed to have fully, finally, and forever settled, released and discharged, subject to the limitation herein below. Notwithstanding the foregoing, the Rule 23(b)(3) Settlement Class Members do not

release any Released Party who is a LNRS customer, reseller or retransmitter for its own conduct or omission that is not based on and derivative of Covered Conduct by Defendants, including all claims alleged in *In Re: TransUnion Rental Screening Solutions, Inc. FCRA Litigation*, No. 1:20-md-02933-JPB.

36. "Settled Actions" means the four putative class actions resolved by this Settlement Agreement: *Hill v. LexisNexis Risk Solutions Inc.*, 18-cv-560 (W.D. Mo.); *Jones v. LexisNexis Risk Solutions Inc.*, No. 20-cv-06263 (S.D. Ohio); *Clark, et al. v. LexisNexis Risk Solutions Inc.*, No. 20-cv-01920 (D. Minn.); *Stewart, et al. v. LexisNexis Risk Data Retrieval Services, LLC* a/k/a *LexisNexis Risk Data Management, et al.*, No. 3:20-cv-903 (E.D. Va.).

37. "Settlement" means the exchange of consideration among the Rule 23(b)(2) Settlement Class, the Rule 23(b)(3) Settlement Class, Defendants and Class Counsel reflected in and contemplated by this Settlement Agreement and constituting the Rule 23(b)(2) Settlement and the Rule 23(b)(3) Settlement.

38. "Settlement Agreement" means the Settlement Agreement and Release, including its Exhibits.

39. "Source" means a particular courthouse, recorder's office or other government agency responsible for the publication of Public Records or providing access to Public Records.

40. "Subsequent Case Update Events," when referred to separately, means the subsequent case update events for Public Records as defined in Section I(20)–(22).

41. "Sunset Date" means the earlier of seven years from the Effective Date or June 30, 2028.

42. "Vendor" or "Vendors" refers to the persons or entities that retrieve Public Records from Sources on behalf of LNRDM.

43. "Visit" means each date where LNRDM or its Vendor retrieves a Public Record from a Source.

44. "Visit Interval" means the average number of days between Visits to a Source calculated with respect to an assessment timeframe.

## II. INJUNCTIVE RELIEF

The Court hereby orders that Defendants comply as follows:

a. Defendant LNRDM will report to its Consumer Reporting Agency Customers its Visit Intervals, as updated on a monthly basis, for each Source. On an annual basis while the Injunction is in effect, LNRDM shall disclose to Class Counsel the number of Sources that have a Visit Interval of 60 days or less and the number and identity of Sources that have a Visit Interval greater than 60 days. This information disclosed to Class Counsel will be confidential and subject to a protective order that limits the use of the information, and all information derived therefrom, solely for purposes of assessing the Injunctive Relief herein.

b. Defendant LNRS will not sell or otherwise furnish in Consumer Reports Public Records obtained from LNRDM unless LNRDM follows the procedures for record collection set out in this agreement, the most recent Visit Interval for such Source is sixty (60) days or less, and LNRDM follows reasonable procedures to evaluate Collection Performance at each Source at least once a year. LNRS shall have the right to request relief from this requirement with respect to Visit Intervals if, with product evolution, collection frequency becomes irrelevant to Consumer Report currency (i.e., a measure of latency that describes the time elapsed between Visits).

c. Defendants and Class Counsel will develop a sample size for each Source of its Open Public Record data for the prior seven years of filings to permit conclusions

as to agreed levels of confidence and error rate for update collection benchmarking and comparative analysis purposes.

d.  On an annual going forward basis, LNRDM shall assess Collection Performance at each Source with a Visit Interval of sixty (60) days or less using the sample size derived in (c) for the prior seven years of filings with the intent to continually improve on its update collection practices.   The Court recognizes Plaintiffs' acknowledgement that collection of 100% of the Subsequent Case Update Events for Public Records within any defined period of time at any Source in most cases will be neither feasible nor commercially reasonable.   LNRDM will conduct a yearly confidential internal assessment to evaluate the efficacy of procedures to meet Collection Performance standards.   The confidential internal assessment will be conducted through the Defendants' General Counsel's office, and any documents or other work product generated by that confidential internal assessment will be protected by all applicable privileges or protections, including but not limited to the attorney-client privilege and the self-evaluative privilege, and shall not be discoverable.   Defendants will evaluate the internal assessment and address any material findings identified in the assessment with senior management.

e.  The Court approves the selection of Jeffrey Zeskind (the "Reviewer") as the independent, third-party to perform a one-time review ("the Review") of the methodology used to conduct the Collection Performance in (d), including the methodology to establish the sample size described in (c), and to substantively report to Class Counsel whether or not Defendants are meeting the terms of this Agreement and the methodology is commercially reasonable. The Review shall be performed within nine (9) months of the completion of (a)–(d) and shall be conducted at Defendants' sole expense.   The Reviewer shall complete the Review

within six (6) months after the process described in Section (f). Notwithstanding that time limitation, the Reviewer may be afforded a reasonable extension to complete the Review to the extent reasonably necessary.

f.  Prior to the Review, the Reviewer and Class Counsel shall be provided, subject to an agreement to protect proprietary and confidential information, a detailed presentation of LNRDM's agreed Visit Interval and Collection Performance standards. Following this presentation, the Reviewer will be provided with the methodologies used to determine Visit Intervals and to conduct the Collection Performance in (d), including the methodology to establish the sample size described in (c), and shall review the validity of LNRDM's conclusions as to each. If the Reviewer cannot confirm that LNRDM is meeting the terms of this Injunctive Relief Order, or the methodology is not commercially reasonable, the Reviewer will provide feedback to LNRDM and shall so advise Class Counsel that LNRDM is either not meeting the terms of this Injunctive Relief Order or the methodology is not commercially reasonable. Once the Reviewer concludes LNRDM is meeting the terms of this Injunctive Relief Order and the methodology is commercially reasonable, the Reviewer shall provide a substantive written report to the Court, filed under seal, and to Defendants and Class Counsel certifying LNRDM is meeting its obligations as set forth in the Injunctive Relief Order.

g.  Defendants shall take necessary reasonable action to promptly remediate to the extent commercially reasonable any discrepancies reported by the Reviewer. In the event the Parties are unable to agree on remedial actions, the process below outlined in Sections V and VII shall be followed.

h.  LNRS shall not include in Consumer File Disclosures any Motor Vehicle Records that antedate the report by more than seven years.

    i.   LNRS will re-label the "suspension" and "reinstatement" date field names for Motor Vehicle Records that LNRDM retrieves from courthouses.

    j.   LNRS will identify the source of the Motor Vehicle Records in its Consumer File Disclosures.

    k.   LNRS will revise its Customer-Facing Documentation concerning the reporting of Landlord Tenant records to clarify the distinction between "new filings," "evictions," and "monetary judgments."

    l.   Class Counsel will provide to Defendants any information they believe is relevant to Public Records maintained by Defendants and Defendants will review the Public Records and, exercising reasonable discretion, use such information if appropriate and necessary.

## III.    TIMETABLE FOR IMPLEMENTATION OF INJUNCTIVE RELIEF

Defendants will make a reasonable and good faith effort to implement the Injunctive Relief within twelve (12) months of the Effective Date. Notwithstanding this provision, if Defendants are unable to comply with this deadline, Defendants may move the Court for a reasonable extension of time sufficient to permit completion of the task upon submission of an application to the Court showing good cause for the extension.

## IV.    SUNSET DATE

The obligations of Sections II(a)–(l) of this Injunctive Relief Order will expire the earlier of seven years from the Effective Date or June 30, 2028 ("Sunset Date").

## V.    DISPUTE RESOLUTION PROCESS

If any Rule 23(b)(2) or Rule 23(b)(3) Settlement Class member has a claim or dispute regarding Defendants' compliance with this Order or the Settlement Agreement, including but not limited to the Injunctive Relief, then such Settlement Class member first must submit, *pro se* or through counsel, his or her dispute directly to Defendants before taking any other action.

Upon receipt of such a dispute, Defendants will advise Class Counsel of the dispute. Defendants will investigate the dispute and respond to the Settlement Class member within thirty (30) days, with a copy of its response to Class Counsel. Defendants' response must state the results of Defendants' investigation of the allegation of non-compliance with the Settlement Agreement and any action taken or to be taken to address the Settlement Class member's dispute; or, if additional information is required for Defendants to complete their investigation, Defendants' response must identify the specific additional information that is required. Upon the submission of all the additional information required (as set forth in Defendants' response), Defendants will have twenty-one (21) days to complete their investigation of the Settlement Class member's dispute regarding the allegation of non-compliance with the Settlement Agreement and to provide a response containing the results of its investigation and any action taken or to be taken to address the dispute. Notwithstanding this provision, if Defendants are unable to comply with this deadline, Defendants may move the Court for a reasonable extension of time sufficient to permit completion of the investigation upon submission of an application to the Court showing good cause for the extension.

If, after the dispute resolution process described above has been completed, the Settlement Class member may submit his or her dispute regarding the allegation of non-compliance with the Settlement Agreement to the Court under the caption for this Litigation. The Settlement Class member's submissions to the Court must include copies of all correspondence between the Settlement Class member and Defendants regarding the dispute prior to the submission. The Court shall have exclusive and sole jurisdiction to resolve the dispute.

## VI. LIMITATIONS ON INJUNCTIVE RELIEF

Any action by Defendants determined in good faith to be reasonably necessary to

comply with any federal, state, or local law, enactment, regulation, or judicial ruling shall not constitute a violation of this Order. In the event that any obligation of Defendants pursuant to this Order would be deemed unlawful with any future federal, state, or local law, enactment, regulation, or judicial ruling, then Defendants will file a motion for miscellaneous relief, seeking to be released from performing such obligation. Class Counsel shall file any brief in opposition within twenty (20) days after the service of Defendants' motion for miscellaneous relief (which may be extended by the Court for good cause). Should Class Counsel not file any brief in opposition within the twenty (20) day period, the Court shall presume that Class Counsel does not oppose the relief requested in Defendants' motion for miscellaneous relief. Defendants shall file any reply brief in support of their motion for miscellaneous relief within seven (7) days after the filing of any brief in opposition.

This Order shall not in any way impose any obligation, duty or responsibility on the Defendants or create a right on behalf of the Rule 23(b)(2) Settlement Class beyond what is described in this Order.

## VII.    COURT'S JURISDICTION

The Court reserves continuing and exclusive jurisdiction over the parties with respect to all matters relating to this Injunctive Relief Order, including its administration, interpretation, effectuation, and enforcement of its provisions. None of the parties, including any Rule 23(b)(2) Settlement Class Member, shall be entitled to the recovery of attorney's fees, costs or other expenses other than as expressly provided herein in connection with any efforts to monitor compliance with this Injunctive Relief Order. Either Defendants or Class Counsel may file an appropriate motion to enforce this Settlement Agreement in the event of breach of the agreement by the other. At its discretion, the Court may award attorneys' fees to the substantially prevailing party if the Court is required to reach a decision as to whether or not a party is in violation of the Injunctive Relief and/or breached the Settlement Agreement.

## VIII.    NOTICES

All notices or formal communications under this Order, including any claims or disputes pursuant to Section V, shall be in writing and shall be given (i) by hand delivery; (ii) by registered or certified mail, return receipt requested, postage pre-paid; or (iii) by overnight courier to counsel for the Party to whom notice is directed at the following addresses:

For the Named Plaintiffs and Rule 23(b)(2) and Rule 23(b)(3) Settlement Classes:

> Leonard Anthony Bennett
> Consumer Litigation Associates, P.C.
> 763 J Clyde Morris Boulevard
> Suite 1A
> Newport News, VA 23601
>
> Kristi C. Kelly
> Kelly Guzzo PLC
> 3925 Chain Bridge Road, Suite 202
> Fairfax, VA 22030
>
> E. Michelle Drake
> Berger Montague PC
> 1229 Tyler Street NE, Suite 205
> Minneapolis, MN 55413
>
> James A. Francis
> Francis Mailman Soumilas P.C.
> 1600 Market Street
> Philadelphia, PA 19103
>
> Keith Keogh
> Keogh Law Ltd.
> 55 W. Monroe Street
> Chicago, IL 60603

For Defendants:

> Ronald I. Raether, Jr.
> Troutman Pepper Hamilton Sanders LLP
> 5 Park Plaza, Suite 1400
> Irvine, CA 92614
>
> James F. McCabe
> Alston & Bird LLP
> 560 Mission Street, Suite 2100
> San Francisco, CA 94105

Counsel may designate a change of the person to receive notice or a change of address, from time to time, by giving notice to the Court and all Parties in the manner described in this Section.

**IT IS SO ORDERED.**

DATED: [ _____ ], 2022

_____
HONORABLE JOHN A. GIBNEY, JR.
UNITED STATES DISTRICT JUDGE

**EXHIBIT B**

**[Rule 23(b)(2) Publication Notice—subject to revision by Notice Administrator to meet publication word limits, etc.]**

**Legal Notice**

**If You had a Lien, Judgment, Landlord Tenant, or Motor Vehicle Record Entered Against You a Proposed Class Action Settlement May Affect Your Rights**

**A Settlement has been reached in a class lawsuit involving the retrieval and sale of information related to judgments, liens and landlord tenant records (public records) by Defendants, LexisNexis Risk Solutions Inc. (LNRS) and LexisNexis Risk Data Management Inc. (and their predecessor companies). If you have had a judgement, lien or landlord tenant record entered against you, you are probably included in the Settlement.**

## What Is the Case About?
The lawsuit claims the Defendants failed to timely retrieve and report disposition updates (such as satisfactions or releases) to judgment, lien and landlord tenant records and also reported inaccurate and older motor vehicle records in violation of the Fair Credit Reporting Act ("FCRA"). Defendants deny any wrongdoing. Both sides have agreed to the Settlement to resolve the case and provide benefits to consumers.

## Who Is Involved?
The Class includes all persons residing in the United States who at any time from July 24, 2013 through [**the date of preliminary approval**] had: (1) a lien, judgment or landlord tenant record made publicly available by a government source; (2) a lien, judgment or landlord tenant related court record included in a consumer report furnished by LNRS; or (3) a motor vehicle record included in a Consumer File Disclosure by LNRS.

## What Does the Settlement Provide?
The Defendants have agreed to change certain business practices regarding their retrieval and reporting of tax liens, judgments and landlord tenant records as well as the reporting of motor vehicle records. No money will be paid to Class Members as part of this Settlement. A separate proposed settlement provides payment for Class Members who disputed public records reported about them.

## Your Options
If the Court approves the proposed Settlement, you will be bound by the Court's decisions – you cannot exclude yourself from this class. You will retain your right to right to file an individual lawsuit for actual damages or punitive damages with respect to claims arising before the effective date of the settlement. However, you will not be able to sue, or continue to sue, the released parties for statutory damages based on the FCRA or any state laws similar to the FCRA arising before the effective date of the settlement. You will also be giving up your right to pursue any claims pursuant to the FCRA or state laws similar to the FCRA on a class action or mass action basis that were or could have been brought in the litigation. If you do not like the proposed Settlement, you must object by [**insert date**] as discussed further at lienandjudgmentsettlement.com.

The Court will hold a hearing on [**insert date**] to consider any objections, whether to approve the Settlement, and to award attorney's fees and expenses up to $2,850,000 and service awards to the Named Plaintiffs of either $10,000 or $15,000 each. You can appear at the hearing, but you don't have to. You can hire own attorney, at your own expense, to appear or speak for you at the hearing. You must let the Court know by [**insert date**], if you intend to do so.

**For more information:  [insert phone number and lienandjudgmentsettlement.com]**

**EXHIBIT C**

**[Rule 23(b)(2) Internet Notice for Settlement Website—will also be translated and posted in Spanish]**

***Stewart, et al. v. LexisNexis Risk Data Retrieval Services, LLC a/k/a LexisNexis Risk Data Management, et al.*, United States District Court for the Eastern District of Virginia, Case No. 3:20-cv-903-JAG**

**If You had a Lien, Judgment, Landlord Tenant, or Motor Vehicle Record Entered Against You a Proposed Class Action Settlement May Affect Your Rights**

*A federal court authorized this notice. This is not a solicitation from a lawyer. You are not being sued.*

- There is a proposed Settlement in a class action lawsuit against LexisNexis Risk Solutions Inc. and LexisNexis Risk Data Management Inc. (and their predecessor companies) (Defendants) involving the retrieval and reporting of disposition updates (such as satisfactions or releases) to judgment, lien and landlord tenant records (public records) as well as the reporting of certain motor vehicle records. Defendants maintain they have not done anything wrong.

- You are included in the proposed Settlement if at any time from July 24, 2013 through the date of preliminary approval had (1) a lien, judgment or landlord tenant record made publicly available by a government source; (2) a lien, judgment or landlord tenant related court record included in a consumer report furnished by LexisNexis Risk Solutions Inc. (LNRS); or (3) a motor vehicle record included in a Consumer File Disclosure by LNRS.

- The Settlement does not provide for the payment of any money to Class Members. LexisNexis Risk Solutions Inc. and LexisNexis Risk Data Management Inc. have agreed to change their business methods in exchange for a limited release of Class Member claims. A separate proposed settlement provides monetary relief to Class Members who disputed public records reported about them.

- Your legal rights are affected by the proposed Settlement even if you do nothing.

- Your rights and options — and the deadlines to exercise them — are explained in this notice. Please read this entire notice carefully.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS PROPOSED SETTLEMENT | | |
|---|---|---|
| **Object to the Settlement** | Write to the Court about why you do not like the proposed Settlement (see Question 14). | Your objection must be postmarked on or before _____ ___, 2022 |
| **Go to a Hearing** | Write to ask to speak in Court about the fairness of the proposed Settlement (see Questions 15-17) | Your request to appear at the hearing must be postmarked on or before _____ ___, 2022 |
| **Do Nothing** | You do not have to do anything to benefit from the proposed Settlement. If the Settlement is finally approved, you will | None |

| | not be able to sue the Defendants for the remedies resolved by this Settlement (*see* Questions 8-10). | |
|---|---|---|

# WHAT THIS NOTICE CONTAINS

Page

BASIC INFORMATION ................................................................................ 4

    1.    Does this Notice apply to me? ......................................................... 4

    2.    What is this lawsuit about? ............................................................. 4

    3.    Why is this a class action? ............................................................. 4

    4.    Why is there a proposed Settlement? .............................................. 5

WHO IS IN THE PROPOSED SETTLEMENT? ......................................... 5

    5.    How do I know if I am part of the proposed Settlement? ................ 5

    6.    Are there exceptions to being included? ......................................... 5

    7.    What if I am not sure whether I am included in the Class? ............. 5

THE PROPOSED SETTLEMENT BENEFITS ............................................ 5

    8.    What benefits does the proposed Settlement provide? .................... 5

    9.    When will the proposed Settlement go into effect? ......................... 6

    10.    How does the proposed Settlement affect my rights? ...................... 6

    11.    Can I choose not to be in the proposed Settlement? ....................... 7

THE LAWYERS REPRESENTING YOU ................................................... 7

    12.    Do I have a lawyer in this case? ..................................................... 7

    13.    How will the lawyers be paid? What will the Class Representatives receive? ......................................................................................... 8

OBJECTING TO THE PROPOSED SETTLEMENT ................................. 8

    14.    How do I tell the Court if I do not agree with the proposed Settlement? ........ 8

THE COURT'S FINAL APPROVAL HEARING ....................................... 9

    15.    When and where will the Court decide whether to finally approve the proposed Settlement? ................................................................. 9

    16.    Do I have to come to the hearing? .................................................. 9

    17.    May I speak at the hearing? ........................................................... 9

IF YOU DO NOTHING ............................................................................. 10

    18.    What happens if I do nothing at all? ............................................. 10

GETTING MORE INFORMATION ........................................................... 10

    19.    How do I get more information? ................................................... 10

# BASIC INFORMATION

**1.     Does this Notice apply to me?**

You are a member of the Rule 23(b)(2) Settlement Class in this case if at any time from July 24, 2013 through the [**date of preliminary approval**] you had (1) a lien, judgment or landlord tenant record made publicly available by a government source; (2) or a lien, judgment or landlord tenant related court record included in a consumer report furnished by LexisNexis Risk Solutions Inc. (LNRS); or (3) a motor vehicle record included in a Consumer File Disclosure by LNRS.

A Court authorized this notice to inform you about the proposed Settlement and your rights. Before any final judgment is entered, the Court will have a hearing to decide whether to approve the Settlement.  This notice is only a summary of the proposed Settlement.  More details about the proposed Settlement, the date when appeals are no longer allowed and the Settlement is final, deadlines for certain actions, and your options are available in a longer document called the Settlement Agreement.   You can get a copy of the Settlement Agreement by visiting lienandjudgmentsettlement.com.

The lawsuit is known as *Stewart, et al. v. LexisNexis Risk Data Retrieval Services, LLC a/k/a LexisNexis Risk Data Management, et al*., No. 3:20-cv-903-JAG.  Judge John A. Gibney, Jr. of the United States District Court for the Eastern District of Virginia is overseeing the case.  The people who sued are called "Plaintiffs;" the companies that they sued are called "Defendants." The Defendants are LNRS and LexisNexis Risk Data Management Inc. (LNRDM) (and their predecessor companies).

**2.     What is this lawsuit about?**

The lawsuit claims that the Defendants failed to timely retrieve and report disposition updates to judgment, tax lien and landlord tenant records and also included inaccurate and outdated motor vehicle records in reports provided to consumers.  Plaintiffs claim that Defendants' alleged practices violated the federal Fair Credit Reporting Act ("FCRA").

Plaintiffs also claim, in a part of the case in which about 23,000 consumers are involved, that Defendants did not properly respond to disputes concerning public record information in their reports and file disclosures.

The Court did not decide whether either side was right or wrong.  Instead, both sides agreed to the Settlement to resolve the case and provide benefits to consumers.

**3.     Why is this a class action?**

Class actions try to bring similar claims in one case and in one court.  In a class action, the plaintiffs who bring the case are called "Class Representatives" or "Named Plaintiffs."  They have their names listed in the title of the case.  They sue on behalf of people who have similar claims — called the Class or Class Members — which in this case may include you.   The Class Representatives filed this case as a proposed class action.  When the parties reached this proposed Settlement, the Court had not decided whether the case could be a class action.

**4.** **Why is there a proposed Settlement?**

The Court has not decided which side is right or wrong in this case. Instead, both sides agreed to a settlement to avoid the costs and risks of a lengthy trial and appeals process.

To settle the matter, the Plaintiffs and Defendants participated in a process called mediation. This is a formal way parties get together to see if they can resolve disputes with the help of a court-approved professional, called a mediator. From December 2020 to August 2021, two experienced mediators conducted lengthy sessions with the parties. A federal Magistrate Judge also assisted in the negotiations. The negotiations were difficult and contentious. The Class Representatives and the lawyers representing the Class think the proposed Settlement is best for all Class Members.

### WHO IS IN THE PROPOSED SETTLEMENT?

**5.** **How do I know if I am part of the proposed Settlement?**

The Court has decided that everyone who fits the following description is a Member of the Rule 23(b)(2) Settlement Class:

> All persons residing in the United States of America who at any time from July 24, 2013 through the date of preliminary approval had (1) a lien, judgment or landlord tenant record made publicly available by a government source; (2) a lien, judgment or landlord tenant related court record included in a consumer report furnished by LNRS; or (3) a motor vehicle record included in a Consumer File Disclosure by LNRS.

As referenced above, the Named Plaintiffs and Defendants have also reached a class settlement related to a subclass of persons who disputed a lien or judgment record with LNRS directly and/or disputed a lien or judgment record with LNRS indirectly via a reseller. This settlement is referred to the "(b)(3) Settlement." If you are a member of the (b)(3) Settlement, you should receive a notice in the mail. Additional information about the (b)(3) Settlement can be found at lienandjudgmentdisputes.com.

**6.** **Are there exceptions to being included?**

Plaintiffs' and Defendants' attorneys are excluded from the Class. The presiding judge in the action and his staff, and all members of their immediate families, are also excluded from the Class.

**7.** **What if I am not sure whether I am included in the Class?**

If you are still not sure whether you are included in the Class, then you can call toll-free [**insert telephone number**] or visit lienandjudgmentsettlement.com for more information.

### THE PROPOSED SETTLEMENT BENEFITS

**8.** **What benefits does the proposed Settlement provide?**

The benefits for Rule 23(b)(2) Settlement Class Members consist of injunctive relief. An

injunction occurs when a court orders a person or company to do or not to do something — in this case changes in Defendants' business practices. The Settlement requires the Defendants, at their expense, to design, implement, and maintain specific, substantial procedures that address the lawsuit's concerns about the retrieval and reporting of liens, judgments and landlord-tenant records as well as the reporting of motor vehicle records. All Class Members will receive the benefit from these changes in business practices.

Because these procedures are being accomplished through a Court injunction, Judge Gibney will retain ongoing supervision and enforcement of these changes. The specific terms of these changes are included in the Settlement Agreement, a copy of which is available at lienandjudgmentsettlement.com.

There will be no payments to these Class Members as part of this Rule 23(b)(2) Settlement. There is a separate proposed settlement that provides for the payment of approximately $625.00 to a separately defined group, the Rule 23(b)(3) class members. If you are in that separately defined class and affected by that proposed settlement, you will be sent a separate notice.

Defendants have agreed to pay all costs associated with publishing this notice, implementing the procedures described in the Court's injunction, administering the Settlement, and paying Plaintiffs' lawyers for their attorneys' fees and Named Plaintiffs for their service awards (up to $2,850,000).

Class Members do not have to pay or buy anything to benefit from the changes in business practices provided by the Settlement Agreement.

## 9. When will the proposed Settlement go into effect?

The Court will hold a fairness hearing on [**insert**], to decide whether to approve the proposed Settlement, which, in addition to the terms described here, contains some terms affecting only those people who disputed public records with Defendants. Even if the Court approves the proposed Settlement, there could be appeals to the Court's decision. The time for an appeal varies and could take more than a year.

The date when all appeals are completed, and the proposed Settlement becomes final, is called the Effective Date. You can visit the Settlement website at lienandjudgmentsettlement.com after [**insert**] to check on the progress of the Court-approval process.

The change in business practices will remain in effect for seven (7) years from the Effective Date or until June 30, 2028, whichever is earlier. During that time, the Court will continue to oversee the injunctive relief and will have the power to enforce the terms of the Settlement Agreement.

## 10. How does the proposed Settlement affect my rights?

If the proposed Settlement is finally approved by the Court, then you will be giving up all legal or equitable claims against the released parties for statutory damages based on the FCRA or any FCRA state equivalents arising before the effective date of the settlement. This is called "releasing" your claims. This means you cannot seek, or continue to seek, statutory damages based on any of the released parties' alleged violations of the FCRA or any FCRA state equivalents, including: 1) the reporting of judgments, liens or landlord tenant records, 2) LNRS' disclosure of

motor vehicle records on consumer file disclosures, or 3) LNRDM's provision of data relating to judgment, tax lien and landlord tenant related records. You will be giving up all such claims, whether or not you know about them. You will also be giving up your right to pursue any claims pursuant to the FCRA or FCRA state equivalents on a class action or mass action basis that were or could have been brought in the litigation. But you will not be releasing your right to file an individual lawsuit for actual damages or punitive damages with respect to claims arising before the effective date of the settlement. Defendants will have the right to deny they are liable for damages.

The precise terms of the release are explained in the Settlement Agreement, which you can view on the Settlement website, lienandjudgmentsettlement.com.

The Court's decisions in this case will apply to you even if you object to the Settlement or have any other claim, lawsuit, or proceeding pending against any of the Defendants relating to the same claims. If you have any questions about the release, then you should visit the Settlement website for more information or consult with a lawyer. See Question 12 below for more information about seeking legal advice about the Settlement.

**11.     Can I choose not to be in the proposed Settlement?**

No. The proposed Settlement requires the Defendants to implement new procedures to ensure they change their business practices to benefit all Rule 23(b)(2) Settlement Class Members equally. As explained in Question 8, this type of benefit is injunctive. Therefore, under this type of class action, you cannot exclude yourself from the Class or this proposed Settlement.

However, as explained in Question 10, you still have the right to file an individual lawsuit against any of the Defendants for actual damages or punitive damages and have your case and the Defendants' defenses heard in court.

### THE LAWYERS REPRESENTING YOU

**12.     Do I have a lawyer in this case?**

Yes. The Court approved the following lawyers as "Class Counsel" to represent you and other Class Members:

- Leonard Bennett, of Consumer Litigation Associates, P.C., in Newport News, Virginia;

- Kristi Kelly, of Kelly Guzzo PLC, in Fairfax, Virginia;

- E. Michelle Drake, of Berger Montague PC, in Minneapolis, Minnesota;

- James Francis, of Francis Mailman Soumilas P.C., in Philadelphia, Pennsylvania; and

- Keith Keogh, of Keogh Law Ltd., in Chicago, Illinois.

You will not be charged for these lawyers. You may hire your own attorney, if you so choose, but you will be responsible for paying your attorney's fees and expenses.

**13.     How will the lawyers be paid? What will the Class Representatives receive?**

Class Counsel will ask the Court to approve attorneys' fees and expenses in an amount not to exceed $2,850,000, for the time and effort they have spent on this case.  Certain of the Named Plaintiffs will ask the Court to approve payments in the amount of $15,000 and $10,000 as service awards.  Class Counsel will seek additional attorneys' fees for work performed on behalf of the (b)(3) Settlement Class.

Defendants will pay the approved amount of attorneys' fees and expenses, and no Class Member will owe or pay anything for the attorneys' fees and expenses of Class Counsel.

## OBJECTING TO THE PROPOSED SETTLEMENT

**14.     How do I tell the Court if I do not agree with the proposed Settlement?**

If you are a Class Member, then you can object to the proposed Settlement if you do not like any part of it.  You can give reasons you think the Court should not approve it.  The Court will consider your views before deciding whether to approve the Settlement.

To object, you must mail your objection letter to "[**insert name and address**]."  Your letter must be postmarked no later than [**insert date**].

Your objection letter must include all of the following:

- The name of the case: *Stewart, et al. v. LexisNexis Risk Data Retrieval Services, LLC a/k/a LexisNexis Risk Data Management, et al.*, No. 3:20-cv-903-JAG (E.D. Va.);

- Your name, address, and telephone number; and

- A written statement detailing the specific basis for each objection.

If you are submitting an objection through an attorney, in addition to the above information, your objection must include:

- identity, mailing address, email address, fax number, phone number for your attorney.

- a statement of whether you intend to appear at the Final Fairness Hearing; and

- a written statement detailing the specific basis for each objection, including any legal and factual support that you wish to bring to the Court's attention and any evidence you wish to introduce in support of the objection.

If you intend to have a lawyer present, then your lawyer must enter a written notice of appearance of counsel with the Court.

For more information about the final approval hearing, see Questions 15-17 below.

If you do not follow the process outlined above, you will not be allowed to object, appear at the

final approval hearing, or appeal the final approval of the proposed Settlement, the dismissal of the case, or the Court's award of attorneys' fees and expenses to Class Counsel.

## THE COURT'S FINAL APPROVAL HEARING

**15. When and where will the Court decide whether to finally approve the proposed Settlement?**

The Court will hold a final approval hearing to decide whether to approve the proposed Settlement. You may attend and you may ask to speak, but you do not have to because Class Counsel will appear at the hearing on your and the Class' behalf.

The hearing will be on [**insert date**], at [**insert time**], before Judge Gibney, in the United States District Court for the Eastern District of Virginia, Richmond Division, in Courtroom [**insert**].

At this hearing, the Court will consider whether the proposed Settlement is fair, reasonable, and adequate. The Court will consider all timely and proper objections. The Court will listen to people who have asked for permission to speak at the hearing (as explained in Question 14).

At this hearing, the Court will consider whether the Settlement is fair, reasonable, and adequate for all affected persons. If there are objections, the Court will consider them and will listen to people who have asked to speak at the hearing.

The Court may also decide how much to award Class Counsel and the Class Representatives. After the hearing, the Court will decide whether to finally approve the proposed Settlement. There may be appeals after that. We do not know how long these decisions will take.

The Court may change the date of the final approval hearing without further notice to the Class or may decide to conduct the hearing using remote means. You should check the website, lienandjudgmentsettlement.com, to check on the hearing date, the court-approval process, and the Effective Date.

**16. Do I have to come to the hearing?**

No. Class Counsel will answer any questions the Court may have. However, you are welcome to come at your own expense. You may also pay your own lawyer to attend, but it is not necessary.

If you send an objection, then you do not have to come to Court to talk about it. As long as you mailed your written objection on time and complied with the other requirements for a proper objection, the Court will consider it.

**17. May I speak at the hearing?**

You or your lawyer may ask the Court for permission to speak at the final approval hearing. To do so, you must tell the Court in your objection letter that you or your lawyer would like to speak at the hearing. You must also follow the process outlined in Question 14.

You cannot speak at the hearing if you do not follow this procedure.

**IF YOU DO NOTHING**

**18.     What happens if I do nothing at all?**

You are not required to do anything to get the benefits of the Settlement.  If the Court approves the proposed Settlement, then you will be bound by the Court's final judgment and the release of claims explained in the Settlement Agreement.

**GETTING MORE INFORMATION**

**19.     How do I get more information?**

This notice is only a summary of the proposed Settlement.  More details about the proposed Settlement, the date when appeals are no longer allowed and when the Settlement is final, deadlines for certain actions, and your options are available in a longer document called the Settlement Agreement.

You can see the entire Settlement Agreement by visiting lienandjudgmentsettlement.com.  The website also provides answers to commonly asked questions, plus other information to help you determine whether you are a Class Member.  In addition, some of the key documents in the case will be posted on the website.

**Do not write or call the judge or any court personnel concerning this lawsuit or notice.**

_____
Honorable John A. Gibney, Jr.
United States District Judge Eastern District of
        Virginia

Date: _____ ___, 2022

# EXHIBIT D

## [Rule 23(b)(3)Mail Notice]

**If You Disputed a Lien or Judgment Record with LexisNexis Risk Solutions Inc., a Proposed Class Action Settlement May Affect Your Rights**

A Settlement has been reached in a class action lawsuit involving certain liens and judgment records provided by LexisNexis Risk Solutions Inc. ("LNRS") and LexisNexis Risk Data Management Inc. (Defendants). You could receive benefits from a $21,500,000 Settlement.

**What's this Case About?** Plaintiffs claim Defendants failed to timely retrieve and report updates to lien and judgment records, such as lien releases or satisfactions of judgments. Plaintiffs claim Defendants violated the Fair Credit Reporting Act; Defendants deny any claim of wrongdoing. Both sides agreed to the Settlement.

**Who's Included?** The Settlement includes two proposed classes – a (b)(2) Settlement Class and (b)(3) Settlement Class. Based on LNRS records, you have been identified as a (b)(3) Settlement Class Member because (1) you disputed a lien or judgment record with LNRS directly and/or (2) you disputed a lien or judgment record with LNRS indirectly via a reseller. If you are a member of the (b)(3) Settlement Class, you are also a member of the (b)(2) Settlement Class, which includes persons who had lien, judgment or landlord-tenant records in the time period covered by the lawsuit, but who did not dispute any such records with LNRS or one of its resellers. Additional information about the (b)(2) Settlement can be found at lienandjudgmentsettlement.com.

**What Does the Settlement Provide?** The Settlement establishes a $21,500,000 Settlement Fund for payments to (b)(3) Settlement Class Members and for attorneys' fees and costs. The Parties estimate class members will each receive approximately $625.00, but the precise amount of the payment will depend on the number of individuals that remain in the Class and the Court's decision with respect to class representative awards, attorneys' fees and costs. The (b)(2) Settlement Class Members are not eligible to receive any money, but the (b)(2) Settlement establishes substantial and comprehensive changes to Defendants' business practices that will benefit Class Members.

**How Do I Get a Payment?** You do not have to do anything to request a payment. If the Court approves the Settlement you will automatically receive a payment. If your address changes, please email [**insert email address**] to provide us your updated address.

**Your Other Rights.** If you do nothing, your rights will be affected. If you do not want to be legally bound by the Settlement, you must exclude yourself from the (b)(3) Settlement. But you cannot exclude yourself from the (b)(2) Settlement. The deadline to exclude yourself is [**insert date**]. If you do not exclude yourself, you will not be able to sue the released parties for any claim arising before the effective date of the settlement. If you stay in the Settlement, you may object to either or both the (b)(3) Settlement and (b)(2) Settlement by [**insert date**]. If you exclude yourself from the (b)(3) Settlement, you can still object to the (b)(2) Settlement. The Court will hold a hearing on [**insert date**] to consider whether to approve the Settlement and

a request for attorneys' fees up to 33% of the Settlement Fund and service awards to certain of the Named Plaintiffs in an amount of $10,000 each. Class Counsel will seek additional attorneys' fees for work performed on behalf of the (b)(2) Settlement Class. You can appear at the hearing, but you don't have to. You can hire your own attorney, at your own expense, to appear or speak for you at the hearing. You must let the Court know by **[insert date]** if you intend to do so.

For more information: **[insert phone number]**

lienandjudgmentdisputes.com

*Court-Ordered Legal Notice*

SETTLEMENT ADMINISTRATOR
PO BOX 0000
MINNEAPOLIS, MN 00000-0000

PRESORTED
FIRST-CLASS MAIL
U.S. POSTAGE
PAID
Rust Consulting, Inc.

**Important Notice About Credit Report Settlement**

*Para una notificacion en Espanol, llamar o visitar nuestro sitio web*

NAME
ADDRESS
CITY STATE ZIP CODE

**EXHIBIT E**

**[Long form (b)(3) notice]**

***Stewart, et al. v. LexisNexis Risk Data Retrieval Services, LLC a/k/a LexisNexis Risk Data Management, et al.***, **United States District Court for the Eastern District of Virginia, Case No. 3:20-cv-903-JAG**

**If You Disputed a Lien or Judgment Record with LexisNexis Risk Solutions Inc., a Proposed Class Action Settlement May Affect Your Rights**

*A federal court authorized this notice. This is not a solicitation from a lawyer. You are not being sued.*

- There is a proposed Settlement in a class action lawsuit against LexisNexis Risk Solutions Inc. (LNRS) and LexisNexis Risk Data Management Inc. (LNRDM) (and their predecessor companies (Defendants) involving the retrieval and reporting of disposition updates (such as satisfactions or releases) to judgment, lien and landlord tenant records as well as the reporting of certain motor vehicle records. Defendants maintain they have not done anything wrong.

- The Settlement includes two proposed classes.

- One class – known as the "(b)(2) Settlement" includes all persons who from July 24, 2013 through the date of preliminary approval had (1) a lien, judgment or landlord tenant record made publicly available by a government source (2) a lien, judgment or landlord tenant related court record included in a consumer report furnished by LNRS; or (3) a motor vehicle record included in a Consumer File Disclosure by LNRS. Additional information about your rights and options–and the deadlines to exercise them–as related to the (b)(2) Settlement can be found at lienandjudgmentsettlement.com.

- The second class – known as the "(b)(3) Settlement" – is a subset of the (b)(2) Settlement and includes all persons who from July 24, 2016 through December 31, 2021 disputed a lien or judgment record with LNRS directly and/or disputed a lien or judgment record with LNRS indirectly via a reseller.

- If you participate in the (b)(3) Settlement, you could receive benefits from a $21,500,000 settlement.

- Your legal rights are affected by the proposed Settlement even if you do nothing.

- Your rights and options relating to the (b)(3) Settlement — and the deadlines to exercise them — are explained in this notice. Please read this entire notice carefully.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS PROPOSED SETTLEMENT | |
|---|---|
| **Do Nothing** | You do not have to do anything to benefit from the proposed (b)(3) Settlement. If the (b)(3) Settlement is finally approved, you will receive a check in the mail. You do not need to submit a claim form or otherwise take any action. You will also give up your right to object to the (b)(3) Settlement and you will not be able to sue the released parties for any claim arising before the effective date of the settlement. The Parties estimate class members will each receive approximately $625.00, but the precise amount of the |

| | |
|---|---|
| | award will depend on the number of individuals that remain in the Class and the Court's decision with respect to class representative awards, attorneys' fees and costs. |
| **Exclude Yourself** | As described below, you are a member of two Settlement Classes. You can exclude yourself only from the (b)(3) Settlement.  To do so, you must submit an opt-out form.  You will not receive any money.  Your request to exclude yourself from the (b)(3) Settlement must be postmarked by [**insert date**].  Opt-out forms must be submitted individually.  If you wish to receive money, then do not mail in the form.<br><br>If you exclude yourself, from the (b)(3) Settlement, you will not receive the payment described above.  However, you will keep certain rights to file a separate lawsuit against the Defendants.  If you choose this option, it is important you promptly speak to an attorney because of the time-sensitive nature of claims under the Fair Credit Reporting Act.<br><br>You are also a member of the (b)(2) Settlement Class.  You cannot exclude yourself from the (b)(2) Settlement. |
| **Object to the Settlement** | Write to the Court about why you do not like the proposed (b)(2) Settlement or the proposed (b)(3) Settlement. Your objection must be postmarked on or before _____ ___, 2022. |
| **Go to a Hearing** | Write to ask to speak in Court about the fairness of the proposed Settlement. Your request to appear at the hearing must be postmarked on or before _____ ___, 2022. |

## WHAT THIS NOTICE CONTAINS

BASIC INFORMATION .................................................................................................... 1

    1.     Does this Notice apply to me? ...................................................... 1

    2.     What is this lawsuit about? ............................................................ 1

    3.     Why is this a class action? ............................................................ 1

    4.     Why is there a proposed Settlement? ........................................... 2

WHO IS IN THE PROPOSED SETTLEMENT? ........................................................... 2

    5.     How do I know if I am part of the proposed Settlement? ............. 2

    6.     Are there exceptions to being included? ....................................... 2

    7.     What if I am not sure whether I am included in the Class? ........... 2

THE PROPOSED SETTLEMENT BENEFITS ............................................................... 3

    8.     What benefits does the proposed Settlement provide? ................. 3

    9.     When will the proposed Settlement go into effect? ...................... 3

    10.    If I am a member of the (b)(3) Settlement Class, when will I get my settlement check? ........................................................................ 4

    11.    How does the proposed Settlement affect my rights? ................... 4

    12.    Can I choose not to be in the proposed Settlement? ..................... 5

    14.    If I exclude myself from the (b)(3) Settlement, can I get any monetary benefit from the settlement? ........................................ 6

THE LAWYERS REPRESENTING YOU ....................................................................... 6

    15.    Do I have a lawyer in this case? ................................................... 6

    16.    How will the lawyers be paid? What will the Class Representatives receive? ........................................................................................ 7

OBJECTING TO THE PROPOSED SETTLEMENT ..................................................... 7

    17.    How do I tell the Court if I do not agree with the proposed Settlement? ......... 7

    18.    What is the difference between objecting and opting-out? ............ 8

THE COURT'S FINAL APPROVAL HEARING ............................................................ 8

    19.    When and where will the Court decide whether to finally approve the proposed Settlement? ........................................................... 8

    20.    Do I have to come to the hearing? ................................................ 8

    21.    May I speak at the hearing? .......................................................... 9

IF YOU DO NOTHING .................................................................................................. 9

    22.    What happens if I do nothing at all? ............................................. 9

GETTING MORE INFORMATION ................................................................................ 9

    23.    How do I get more information? ................................................... 9

# BASIC INFORMATION

## 1.      Does this Notice apply to me?

You are a member of the (b)(3) Settlement Cass in this case if at any time from July 24, 2016 through December 31, 2021 (1) you disputed a lien or judgment record with LNRS directly and/or (2) you disputed a lien or judgment record with LNRS indirectly via a reseller.

A Court authorized this notice to inform you about the proposed Settlement and your rights. Before any final judgment is entered, the Court will have a hearing to decide whether to approve the Settlement. This notice is only a summary of the proposed Settlement. More details about the proposed Settlement, the date when appeals are no longer allowed and the Settlement is final, deadlines for certain actions, and your options are available in a longer document called the Settlement Agreement. You can get a copy of the Settlement Agreement by visiting lienandjudgmentdisputes.com.

Members of the (b)(3) Settlement Class are also members of the (b)(2) Settlement Class, which includes persons who at any time from July 24, 2013 through the date of preliminary approval had (1) a lien, judgment or landlord tenant record made publicly available by a government source; (2) or a lien, judgment or landlord tenant related court record included in a consumer report furnished by LNRS; or (3) a motor vehicle record included in a Consumer File Disclosure by LNRS. There is a separate proposed settlement on behalf of the (b)(2) Settlement Class which will also apply to you. Information about your rights and options– and the deadlines to exercise them–as related to the (b)(2) Settlement Class can be found at lienandjudgmentsettlement.com.

The lawsuit is known as *Stewart, et al. v. LexisNexis Risk Data Retrieval Services, LLC a/k/a LexisNexis Risk Data Management, et al*., No. 3:20-cv-903-JAG. Judge John A. Gibney, Jr. of the United States District Court for the Eastern District of Virginia is overseeing the case. The people who sued are called "Plaintiffs;" the companies that they sued are called "Defendants." The Defendants are LNRS and LNRDM (and their predecessor companies).

## 2.      What is this lawsuit about?

The lawsuit claims that the Defendants failed to timely retrieve and report updates to judgment, tax lien and landlord tenant records – such as lien releases, satisfactions of judgments and dismissal of landlord tenant cases – and also reported inaccurate and outdated motor vehicle records. Plaintiffs claim that Defendants' alleged practices violated the federal Fair Credit Reporting Act ("FCRA"). Defendants deny any claim of wrongdoing.

Plaintiffs also claim, in a part of the case in which the (b)(3) Settlement Class is involved, that Defendants did not properly respond to disputes concerning public record information in their reports and file disclosures.

The Court did not decide whether either side was right or wrong. Instead, both sides agreed to the Settlement to resolve the case and provide benefits to consumers.

## 3.      Why is this a class action?

Class actions try to bring similar claims in one case and in one court. In a class action, the plaintiffs who bring the case are called "Class Representatives" or "Named Plaintiffs." They have their names listed in the title of the case. They sue on behalf of people who have similar

claims — called the Class or Class Members — which in this case may include you. The Class Representatives filed this case as a proposed class action. When the parties reached this proposed Settlement, the Court had not decided whether the case could be a class action.

**4.      Why is there a proposed Settlement?**

The Court has not decided which side is right or wrong in this case. Instead, both sides agreed to a settlement to avoid the costs and risks of a lengthy trial and appeals process.

To settle the matter, the Plaintiffs and Defendants participated in a process called mediation. This is a formal way parties get together to see if they can resolve disputes with the help of a court-approved professional, called a mediator. From December 2020 to August 2021, two experienced mediators conducted lengthy sessions with the parties. A federal Magistrate Judge also assisted in the negotiations. The negotiations were difficult and contentious. The Class Representatives and the lawyers representing the Class think the proposed Settlement is best for all Class Members.

## WHO IS IN THE PROPOSED SETTLEMENT?

**5.      How do I know if I am part of the proposed Settlement?**

The Court has decided that everyone who fits the following description is a Member of the Rule 23(b)(3) Settlement Class:

> All individuals in the United States who disputed a lien or judgment record with LNRS (either directly or indirectly via a reseller) from July 24, 2016 through December 31, 2021.

If you are a member of the Rule 23(b)(3) Settlement Class, you are also a member of the Rule 23(b)(2) Settlement class, which includes:

> All persons residing in the United States of America who at any time from July 24, 2013 through the date of preliminary approval had either (1) a lien, judgment or landlord tenant record made publicly available by a government source or a lien, (2) a judgment or landlord tenant related court record included in a consumer report furnished by LNRS; or (3) a motor vehicle record included in a Consumer File Disclosure by LNRS.

**6.      Are there exceptions to being included?**

Plaintiffs' and Defendants' attorneys are excluded from the Settlement. The presiding judge in the action and his staff, and all members of their immediate families, are also excluded from the Settlement.

**7.      What if I am not sure whether I am included in the Class?**

If you are still not sure whether you are included in the Class, then you can call toll-free [**insert telephone number**] or visit lienandjudgmentdisputes.com for more information.

## THE PROPOSED SETTLEMENT BENEFITS

**8.      What benefits does the proposed Settlement provide?**

**(b)(2) Settlement**

The benefits for Rule 23(b)(2) Settlement Class Members consist of injunctive relief.  An injunction occurs when a court orders a person or company to do or not to do something — in this case changes in Defendants' business practices.  The Settlement requires the Defendants, at their expense, to design, implement, and maintain specific, substantial procedures that address the lawsuit's concerns about the retrieval and reporting of liens, judgments and landlord tenant records as well as the reporting of motor vehicle records.  All Class Members will receive the benefit from these changes in business practices. The specific terms of these changes are included in the Settlement Agreement, a copy of which is available at lienandjudgmentsettlement.com.

The (b)(2) Settlement does not provide for payments to (b)(2) Settlement Class Members.

**(b)(3) Settlement**

In addition to the (b)(2) Settlement described above, Defendants have also agreed to pay $21,500,000 (the "(b)(3) Settlement Fund") for the benefit of the (b)(3) Settlement Class.  Payments will be made by check to each class member.  The amount of each check is subject to a *pro rata* deduction from the Settlement Fund for attorneys' fees and costs approved by the Court.  The Parties estimate class members will each receive approximately $625.00, but the precise amount of the payment will depend on the number of individuals that remain in the Class and the Court's decision with respect to class representative awards, attorneys' fees and costs.

If you are a member of the (b)(3) Settlement Class, you are entitled to receive a payment from the (b)(3) Settlement Fund described above, as long as you do not opt-out from the (b)(3) Settlement.  You do not need to do anything to receive a cash payment for the (b)(3) Settlement. If the settlement is finally approved, and you do not exclude yourself from the (b)(3) Settlement Class, you will automatically receive a payment.  The check will be mailed to the address appearing in LNRS' records.  If your address has changed or is changing, you may contact the Settlement Administrator at [**insert**].

**9.      When will the proposed Settlement go into effect?**

The Court will hold a fairness hearing on [**insert**], to decide whether to approve the proposed Settlement.  Even if the Court approves the proposed Settlement, there could be appeals to the Court's decision. The time for an appeal varies and could take more than a year.

The date when all appeals are completed, and the proposed Settlement becomes final, is called the Effective Date.  You can visit the Settlement website at lienandjudgmentdisputes.com after [**insert**] to check on the progress of the Court-approval process.

The change in business practices for the (b)(2) Settlement Class will remain in effect for seven (7) years from the Effective Date or until June 30, 2028, whichever is earlier.  During that time, the Court will continue to oversee the injunctive relief and will have the power to enforce the terms of the Settlement Agreement.

**10.   If I am a member of the (b)(3) Settlement Class, when will I get my settlement check?**

The Court will hold a fairness hearing on [**insert**] to decide whether to approve the proposed Settlement.  Even if the Court approves the proposed Settlement, there could be appeals from the Court's decision. The time for an appeal varies and could take more than a year.

The date when all appeals are completed, and the proposed Settlement becomes final, is called the Effective Date.  You can visit the Settlement website at lienandjudgmentdisputes.com after [**insert**] to check on the progress of the Court-approval process.

**11.   How does the proposed Settlement affect my rights?**

Please read this section carefully. It summarizes how your rights will be affected by two different settlements. Each settlement affects different rights in different ways. Each settlement also provides you with different options.

**(b)(2) Settlement**

If the proposed Settlement is finally approved by the Court, then you will be giving up all legal or equitable claims against the released parties for statutory damages based on the FCRA or any FCRA state equivalents arising before the effective date of the settlement.  This is called "releasing" your claims.  This means you cannot seek, or continue to seek, statutory damages based on any of the released parties' alleged violations of the FCRA or of state laws similar to the FCRA, including: 1) the reporting of judgments, liens or landlord tenant records, 2) LNRS' disclosure of motor vehicle records on consumer file disclosures, or 3) LNRDM's provision of data relating to judgment, tax lien and landlord tenant related records. You will be giving up all such claims, whether or not you know about them.

You will also be giving up your right to pursue any claims pursuant to the FCRA or state laws similar to the FCRA on a class action or mass action basis that were or could have been brought in the litigation.  But you will not be releasing your right to file an individual lawsuit for actual damages or punitive damages with respect to claims arising before the effective date of the settlement.

However, you will still have the right to file an individual lawsuit against any of the Defendants for actual damages or punitive damages that you claim resulted from any of the Defendants' alleged conduct.  Defendants will have the right to deny they are liable for damages.

The precise terms of the (b)(2) Settlement release are explained in the Settlement Agreement, which you can view on the (b)(2) Settlement website, lienandjudgmentsettlement.com.

You may not opt-out of the (b)(2) Settlement. The Court's decisions in this case will apply to you even if you object to the Settlement or have any other claim, lawsuit, or proceeding pending against any of the Defendants relating to the same claims.  If you have any questions about the release, then you should visit the Settlement website for more information or consult with a lawyer.

**(b)(3) Settlement**

If you do not exclude yourself from the (b)(3) Settlement Class, you will give up rights *in*

*addition* to those described above. You will also receive the monetary benefit of the settlement.

If you do not exclude yourself from the (b)(3) Settlement you will receive a settlement payment. You will *not* be able to sue the released parties for any claim arising before the effective date of the settlement. All of the Court's orders will apply to you and legally bind you. You will agree to a "Release of Claims," stated below, which describes exactly the legal claims that you will give up. The (b)(3) "Release" contained in the Settlement Agreement states:

> Each member of the Rule 23(b)(3) Settlement Class who has not excluded him or herself and his or her respective spouses, heirs, executors, administrators, representatives, agents, attorneys, partners, successors, predecessors, assigns, and all those acting or purporting to act on their behalf acknowledge full satisfaction of, and shall be conclusively deemed to have fully, finally, and forever settled, released and discharged, subject to the limitation [below], of all the Released Parties, of and from all claims arising before the Effective Date whether known or unknown, matured or unmatured, foreseen or unforeseen, suspected or unsuspected, accrued or unaccrued which the Rule 23(b)(3) Settlement Class Members ever had or now has, including but not limited to, all claims resulting from, arising out of, or in any way connected to the Litigation or its underlying subject matter.

> Notwithstanding the foregoing, the Rule 23(b)(3) Class Members do not release any Released Party who is a LNRS customer, reseller or retransmitter for its own conduct or omission that is not based on and derivative of Covered Conduct by LNRS and/or LNRDM.

You can opt-out from the (b)(3) Settlement Class as described in Question 12. However, as stated above, if you decide to exclude yourself from the (b)(3) Settlement Class, you will still remain a member of the (b)(2) Settlement Class.

## 12.     Can I choose not to be in the proposed Settlement?

**(b)(2) Settlement**

No, you may not exclude yourself from the (b)(2) Settlement. The proposed Settlement requires the Defendants to implement new procedures to ensure they change their business practices to benefit all Rule 23(b)(2) Settlement Class Members equally. As explained in Question 8, this type of benefit is injunctive. Therefore, under this type of class action, you cannot exclude yourself from the Class or this proposed Settlement.

However, as explained in Question 11, you still have the right to file an individual lawsuit against any of the Defendants for actual damages or punitive damages and have your case and the Defendants' defenses heard in court.

**(b)(3) Settlement**

Yes, you may exclude yourself from the (b)(3) Settlement Class. If you do not want to remain a member of the (b)(3) Settlement Class, but you want to maintain your right to sue or continue to sue the Defendants for actual damages on your own, you must take steps to exclude yourself from the (b)(3) Settlement Class. This is sometimes referred to as "opting out" of the Settlement Class. Opting out gives you the right to bring your own lawsuit but does not guarantee that your own lawsuit will be successful.

You may "opt out" or exclude yourself from the (b)(3) Settlement as explained below.

To exclude yourself from the (b)(3) Settlement, you must send a written request for exclusion to the Settlement Administrator, addressed to [**insert name and address**]. To be valid, the proposed opt-out request must contain your name, original signature, current postal address, and current telephone number, and a statement that you want to be excluded from the (b)(3) Settlement Class.

You cannot exclude yourself by telephone or by e-mail. You also cannot exclude yourself by mailing a request to any location other than that specified below or by mailing a request after the deadline. You also cannot exclude yourself as part of a group, aggregate, or class involving more than one consumer.

If you exclude yourself, you should promptly consult your own attorney about your rights as the time to file an individual lawsuit is limited.

REQUESTS FOR EXCLUSION THAT ARE NOT POSTMARKED ON OR BEFORE [**INSERT DATE**] WILL NOT BE HONORED.

### 13. If I do not exclude myself from the (b)(3) Settlement, can I sue the Defendants for the same thing later?

No. Unless you exclude yourself from the (b)(3) Settlement, you will not be able to sue the released parties for any released claim arising before the effective date of the settlement. If you have a pending lawsuit, speak to your lawyer in that lawsuit immediately. You may need to exclude yourself from this settlement to continue your own lawsuit. Remember, your exclusion request must be postmarked by [**insert date**].

### 14. If I exclude myself from the (b)(3) Settlement, can I get any monetary benefit from the settlement?

No.

## THE LAWYERS REPRESENTING YOU

### 15. Do I have a lawyer in this case?

Yes. The Court approved the following lawyers as "Class Counsel" to represent you and other (b)(2) and (b)(3) Settlement Class Members:

- Leonard Bennett, of Consumer Litigation Associates, P.C., in Newport News, Virginia;

- Kristi Kelly, of Kelly Guzzo PLC, in Fairfax, Virginia;

- E. Michelle Drake, of Berger Montague PC, in Minneapolis, Minnesota;

- James Francis, of Francis Mailman Soumilas P.C., in Philadelphia, Pennsylvania; and

- Keith Keogh, of Keogh Law Ltd., in Chicago, Illinois.

You will not be charged for these lawyers. You may hire your own attorney, if you so choose, but you will be responsible for paying your attorney's fees and expenses.

**16.     How will the lawyers be paid? What will the Class Representatives receive?**

Class Counsel will ask the Court to approve attorneys' fees and expenses in an amount not exceed $2,850,000, for the time and effort they have spent for the (b)(2) Settlement Class. Certain Named Plaintiffs will ask the Court to approve payments in the amount of $15,000 and $10,000 as service awards.

Class Counsel will ask the Court to approve attorneys' fees and expenses in an amount not to exceed 33% of the $21,500,000 settlement fund and certain of the Named Plaintiffs will ask the Court to approve payments in the amount of $10,000 as service awards to be deducted from the $21,500,000 settlement fund.

Defendants will pay the approved amount of attorneys' fees and expenses, and no Class Member will owe or pay anything for the attorneys' fees and expenses of Class Counsel.

**OBJECTING TO THE PROPOSED SETTLEMENT**

**17.     How do I tell the Court if I do not agree with the proposed Settlement?**

You can object to either or both the (b)(2) Settlement or the (b)(3) Settlement if you think any part of the settlement is not fair, reasonable, or adequate.  You can give reasons why you think the Court should not approve it.  The Court will consider your views before deciding whether to grant final approval.

To object, you must mail your objection letter to "[**insert name and address**]."  Your letter must be postmarked no later than [**insert date**].

Your objection letter must include all of the following:

- The name of the case: *Stewart, et al. v. LexisNexis Risk Data Retrieval Services, LLC a/k/a LexisNexis Risk Data Management, et al.*, No. 3:20-cv-903-JAG (E.D. Va.);

- Your name, address, and telephone number; and

- A written statement detailing the specific basis for each objection.

If you are submitting an objection through an attorney, in addition to the above information, your objection must include:

- identity, mailing address, email address, fax number, phone number for your attorney;

- a statement of whether you intend to appear at the Final Fairness Hearing; and

- a written statement detailing the specific basis for each objection, including any legal and factual support that you wish to bring to the Court's attention and any evidence you wish to introduce in support of the objection.

For more information about the final approval hearing, see Questions 19-21 below.

If you do not follow the process outlined above, you will not be allowed to object, appear at the final approval hearing, or appeal the final approval of the proposed Settlement, the dismissal of the case, or the Court's award of attorneys' fees and expenses to Class Counsel.

**18.    What is the difference between objecting and opting-out?**

Objecting is simply telling the Court that you do not like something about the settlement. Opting out, or excluding yourself, means that you will not be included in the settlement.

You can object to the (b)(2) Settlement but you cannot opt-out of (exclude yourself from) the (b)(2) settlement.

You can object **or** opt out of the (b)(3) Settlement Class but you cannot do both. If you exclude yourself, you have no basis to object to the (b)(3) Settlement because it will no longer affect you.  However, even if you exclude yourself from the (b)(3) Settlement, you can still object to the (b)(2) Settlement.

## THE COURT'S FINAL APPROVAL HEARING

**19.    When and where will the Court decide whether to finally approve the proposed Settlement?**

The Court will hold a final approval hearing to decide whether to approve the proposed Settlement. You may attend and you may ask to speak, but you do not have to because Class Counsel will appear at the hearing on your and the Class' behalf.

The hearing will be on [**insert date**], at [**insert time**], before Judge Gibney, in the United States District Court for the Eastern District of Virginia, Richmond Division, in Courtroom [**insert**].

At this hearing, the Court will consider whether the proposed Settlement is fair, reasonable, and adequate.  The Court will consider all timely and proper objections.  The Court will listen to people who have asked for permission to speak at the hearing (as explained in Question 21).

At this hearing, the Court will consider whether the Settlement is fair, reasonable, and adequate for all affected persons. If there are objections, the Court will consider them and will listen to people who have asked to speak at the hearing.

The Court may also decide how much to award Class Counsel and the Class Representatives. After the hearing, the Court will decide whether to finally approve the proposed Settlement. There may be appeals after that.  We do not know how long these decisions will take.

The Court may change the date of the final approval hearing without further notice to the Class or may decide to conduct the hearing using remote means. You should check the website, lienandjudgmentdisputes.com, to check on the hearing date, the court-approval process, and the Effective Date.

**20.    Do I have to come to the hearing?**

No.  Class Counsel will answer any questions the Court may have. However, you are welcome to come at your own expense.  You may also pay your own lawyer to attend, but it is not necessary.

If you send an objection, then you do not have to come to Court to talk about it. As long as you mailed your written objection on time and complied with the other requirements for a proper objection, the Court will consider it.

**21.    May I speak at the hearing?**

You or your lawyer may ask the Court for permission to speak at the final approval hearing. To do so, you must tell the Court in your objection letter that you or your lawyer would like to speak at the hearing. You must also follow the process outlined in Question 17.

You cannot speak at the hearing if you do not follow this procedure.

## IF YOU DO NOTHING

**22.    What happens if I do nothing at all?**

You are not required to do anything to get the benefits of the Settlement.  If the Court approves the proposed Settlement, then you will be bound by the Court's final judgment and the release of claims explained in the Settlement Agreement.

## GETTING MORE INFORMATION

**23.    How do I get more information?**

This notice is only a summary of the proposed Settlement.  More details about the proposed Settlement, the date when appeals are no longer allowed and when the Settlement is final, deadlines for certain actions, and your options are available in a longer document called the Settlement Agreement.

You can see the entire Settlement Agreement by visiting lienandjudgmentdisputes.com.  The website also provides answers to commonly asked questions, plus other information to help you determine whether you are a Class Member.  In addition, some of the key documents in the case will be posted on the website.

**Do not write or call the judge or any court personnel concerning this lawsuit or notice.**

**EXHIBIT F**


**[CAFA Notice]**

**Via Overnight Delivery**

The United States Attorney General and All
State Attorneys General Identified on the
Attached Service List

> Re:  Notice Pursuant to the Class Action Fairness Act of 2005 in connection with
> *Stewart, et al. v. LexisNexis Risk Data Retrieval Services, LLC a/k/a LexisNexis
> Risk Data Management, et al.* (E.D. Va.)

Dear Sir or Madam:

On behalf of LexisNexis Risk Solutions Inc. and LexisNexis Risk Data Management LLC (collectively, "Defendants"), and in accordance with the requirements of the Class Action Fairness Act of 2005, see 28 U.S.C. § 1715(b), this letter provides notice of a proposed settlement of the putative class action captioned, *Stewart, et al. v. LexisNexis Risk Data Retrieval Services, LLC a/k/a LexisNexis Risk Data Management, et al.* (E.D. Va.).

Section 1715 requires Defendants participating in a proposed class action settlement to serve upon appropriate federal and state officials a notice containing information responsive to eight items enumerated in the statute. Defendants' responses to each of these items are below. Also enclosed is a CD containing documents relating to the settlement, as required by Section 1715. If you have any difficulty accessing any of the documents on the enclosed CD, please contact the undersigned.

**Item 1:**      *A copy of the complaint, any materials filed with the complaint, and any amended complaints. 28 U.S.C. § 1715(b)(1).*

The *Stewart* Plaintiffs filed a Class Action Complaint on or about November 23, 2020, a copy of which is included on the enclosed CD. Plaintiffs did not attach any materials to the Class Action Complaint and have not filed any amendment to the Class Action Complaint. Copies of the complaints filed in the Transferred Cases, and any exhibits thereto, are also included on the enclosed CD.

**Item 2:**      *Notice of any scheduled judicial hearing in the class action. 28 U.S.C. § 1715 (b)(2).*

On [_____], 2022, the Court scheduled a hearing on the Joint Motion for Preliminary Approval of Settlement for [   ], 2022, at [     ] a.m.

**Items 3 and 4:** *Any proposed or final notification to the class members. 28 U.S.C. § 1715(b)(3); any proposed or final class action settlement. 28 U.S.C. § 1715(b) (4).*

The parties have executed a Settlement Agreement and Release, which constitutes the proposed class action settlement. A copy of the agreement is enclosed with this letter as Exhibit A. On [_____], 2022, the parties filed the Joint Motion for Preliminary Approval of Proposed

Settlement (the "Joint Motion"). The Joint Motion explains the history of the litigation and summarizes the terms of the settlement. A copy of the Joint Motion is enclosed as Exhibit B. The Exhibits to the Joint Motion include notice plans for two classes. The Joint Motion and all of its Exhibits are included on the enclosed CD.

The Parties' motion seeks approval of two settlement classes as part of a single settlement agreement. Separate notice plans are proposed for the two classes. The notice plan for the Rule 23(b)(2) Settlement Class provides for notice to class members through a combination of a class settlement website, a toll-free telephone number, publication notice, and digital ad campaigns. The proposed publication notice is attached to this letter as Exhibit C. The notice plan for the Rule 23(b)(3) Settlement Class provides for individual, mailed notice and a class settlement website. The proposed direct mail notice is attached to this letter as Exhibit D.

**Item 5:**     *Any settlement or other agreement contemporaneously made between class counsel and counsel for the defendant. 28 U.S.C. § 1715(b)(5).*

        None.

**Item 6:**     *Any final judgment or notice of dismissal. 28 U.S.C. § 1715(b)(6).*

No final judgment or notice of dismissal has yet been entered.

**Item 7:**     *Either the names of class members who reside in each State and estimated proportionate share of such members to the entire settlement; or, if not feasible, a reasonable estimate of the number of class members residing in each State and estimated proportionate share of such members to the entire settlement. 28 U.S.C. § 1715 (a)(7)(A)-(B).*

It is not feasible at this time to provide the names of all Rule 23(b)(2) class members who reside in each state. The parties estimate that there are as many as [**insert name**] Rule 23(b)(2) Settlement Class members, and that their distribution across states likely mirrors the distribution of the total U.S. population among states. With respect to the Rule 23(b)(3) class members, there are approximately 23,000 Rule 23(b)(3) Settlement Class members. Attached is the list of Rule 23(b)(3) class members and their corresponding state of residence.

**Item 8:**     *Any written judicial opinions relating to subparagraphs (3) through (6) under § 1715. 28 U.S.C. § 1715 (b)(8).*

The Court has not entered an order or opinion relating to the Joint Motion or any of the matters referenced in Items 3 through 6 above.

                    *       *       *

The table below provides an index of the materials that we have included on the enclosed CD.

| | **Description** |
|---|---|

| 1. | Class Action Complaints filed in *Stewart* and the Transferred Cases |
|----|---|
| 2. | Exhibit A – Settlement Agreement and Release |
| 3. | Exhibit B – Joint Motion for Preliminary Approval of Proposed Settlement |
| 4. | Exhibit C – Notice Plan for the Rule 23(b)(2) Settlement and proposed Forms of Notice to the Rule 23(b)(2) Settlement Class |
| 5. | Exhibit D – Notice Plan for the Rule 23(b)(3) Settlement and proposed Forms of Notice to the Rule 23(b)(3) Settlement Class |

Sincerely,


[Name]
[Title]
[Insert Settlement Administrator]
Providing Notification as Stewart Settlement
Administrator On Behalf of Defendants LexisNexis
Risk Solutions Inc. and LexisNexis Risk Data
Management Inc.

Enclosures (CD)


cc:    Leonard A. Bennett, Esq.
       James A. Francis, Esq.
       Kristi C. Kelly, Esq.
       E. Michelle Drake, Esq.
       Ronald I. Raether, Jr., Esq.
       James F. McCabe, Esq.