**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division**

|  |  |
|---|---|
| CYNTISHA STEWART, TERRY BROWN, EDUARDO CANTIZZANO, LISA HILL-GREEN, THERESA HILL, YOLANDA JONES, MICHAEL CLARK, and CHRISTOPHER PETERSON,<br><br>     *Plaintiffs*,<br><br>    v.<br><br>LEXISNEXIS RISK DATA RETRIEVAL SERVICES, LLC a/k/a LexisNexis Risk Data Management and LEXISNEXIS RISK SOLUTIONS, INC.,<br><br>     *Defendants*. | Civil Action No.: 3:20-cv-00903-JAG |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
MOTION FOR SERVICE AWARDS AND ATTORNEYS' FEES IN
CONNECTION WITH RULE 23(b)(2) SETTLEMENT**

Under Federal Rule of Civil Procedure 23(h) and this Court's February 25, 2022 Preliminary Approval Order (ECF No. 70), this motion seeks: (1) an award of $15,000 for Theresa Hill, and $10,000 each for Cyntisha Stewart, Terry Brown, Lisa Hill-Green, Yolanda Jones, and Michael Clark, the Rule 23(b)(2) Plaintiffs, for their service as class representatives; and (2) attorneys' fees and costs in the amount negotiated with and to be paid by Defendants, $2,785,000.[1] As detailed below, these amounts are fair and reasonable in light of the substantial relief obtained for class members and to compensate Class Counsel for the risks taken and resources invested in this case.

---

[1] Defendants agreed that the total amount they would stipulate as reasonable and pay is $2,850,000. The fees and costs amount is net of the $65,000 of service awards.

1

## I.    OVERVIEW

Plaintiffs and Class Counsel litigated more than five federal cases over three years and now have obtained preliminary approval of two major class settlements, one a Rule 23(b)(2) settlement affecting meaningful change in public records reporting for millions of Americans going forward; the other a Rule 23(b)(3) settlement that will provide considerable monetary relief to consumers that have been harmed by Defendants' public-record reporting. Separately from the common fund settlement obtained for approximately 23,000 consumers, Class Counsel have achieved landmark injunctive relief for a much wider class of consumers through the Rule 23(b)(2) settlement ("Rule 23(b)(2) Settlement"). Through this settlement, LexisNexis Risk Data Management LLC, ("LNRDM") and LexisNexis Risk Solutions, Inc. ("LNRS")[2] have agreed to a comprehensive overhaul and improvements in their public-records procedures, building out further protections from the results already achieved in prior Public Records Litigation.[3] Together, Defendants are the largest acquirers and sellers of public-records information in the United States, both directly and indirectly through other companies. The injunctive relief encompassed within the Rule 23(b)(2) Settlement will impact a large majority of consumer reports containing public records—credit, employment, tenant screening—all reports.

As has already been detailed, the Rule 23(b)(2) Settlement's injunctive relief is significant. (*See* ECF No. 57 at 8–13.) The relief achieved for the class provides: greater transparency in the reporting of public record information and the updates to such reporting, a bar to reporting public record information unless rigorous quality assurance standards are implemented regarding the

---

[2] The Settlement Agreement also binds certain of Defendants' corporate predecessors that engaged in Covered Conduct. (*See* S.A. §§ 2.7–8.)

[3] *See Clark v. Trans Union LLC*, No. 3:15-cv-00391-MHL, ECF No. 273 (E.D. Va. Aug. 29, 2018) (order granting final approval); *Clark v. Experian Info. Sols., Inc*., No. 3:16-cv-00032-MHL, ECF No. 150 (E.D. Va. Feb. 1, 2019) (same); *Thomas v. Equifax Info. Servs. LLC*, No. 3:18-cv-00684-MHL, ECF No. 55 (E.D. Va. Sep. 13, 2019) (same) (collectively, the "Public Records Litigation").

reporting of such information, ongoing monitoring of public-record information sources, independent review of Defendants' monitoring of public-record reporting to ensure such monitoring is commercially reasonable; and changes to how motor vehicle records and landlord records are reported so that such information may be more clearly understood. The Settlement Class includes everyone in the United States who had a Defendant-furnished civil judgment, tax lien or other landlord tenant public record reported in their report(s) and/or contained in their consumer file. While the Class contains many millions of consumers, importantly, Class Counsel negotiated a narrow and minimal release owed by Class Members. The Rule 23(b)(2) Settlement Class Members do not release any individual claims for actual damages, punitive damages, or the fee-shifting afforded by the FCRA, allowing Class Members to still vindicate any actual harm on an individual basis.

These results warrant the award of attorneys' fees and costs Class Counsel request. Defendants have recognized this in entering into the Class Settlement and agreeing to pay an award of fees. (*See* ECF No. 57-1 at § 4.5.1.) Importantly, by virtue of the separate settlements contained in the Settlement Agreement, Defendants recognize the separate and meaningful efforts made by class counsel to achieve both nationwide injunctive relief and cash for the 23(b)(3) class. (*See id.* §§ 4.5.1, 5.7.1.) The Settlement Agreement is the result of extensive, arm's-length negotiations. The negotiated amount for fees and costs for the Rule 23(b)(2) Settlement totals $ 2,785,000 ($2,850,000, less the service awards to the class representatives totaling $65,0000). After deducting the $65,000 for the services awards, and after reimbursement of $ 115,047.23 in costs,[4] the remainder for fees is $ 2,669,952.77. The lodestar of class counsel for time spent to achieve the injunctive relief in the Rule 23(b)(2) Settlement, generated through many hundreds of hours of

---

[4] This represents fifty percent of Class Counsel's $ 230,094.45 in costs.

work on these consolidated cases from their inception through the date that the Settlement Agreement was entered (thus excluding additional hours not yet incurred in connection with the final approval hearing and post-approval work), is $ 2,926,496.30, with half - $ 1,463,248.15 – attributed to this Rule 23(b)(2) Settlement. Thus, the requested injunctive relief fee results in a modest 1.82 multiplier.[5] Further, Class Counsel recognizes and the Court expects substantial additional work to be performed and fees incurred through the length of the intended Injunction. Such work and fees will be incurred without any ceiling.

The fees that Class Counsel seek for the Rule 23(b)(2) Settlement are squarely supported by the lodestar method of calculating attorneys' fees in class action cases recognized under Fourth Circuit law. Class Counsel's request for a service award to the named Plaintiffs for their service to the Class is also supported by Fourth Circuit precedent and the facts of this case.

## II.     HISTORY OF THE LITIGATION[6]

Both the Rule 23(b)(2) Settlement and the Rule 23(b)(3) Settlement were reached as the result of combined efforts of different teams of attorneys and different plaintiffs in multiple cases before multiple courts. Before reaching an agreement to work (and negotiate) together, there were separate and non-coordinating teams in different configurations.

The genesis of these cases was the multiple public records FCRA cases brought in Virginia and elsewhere against the "Big 3" CRAs, which were successfully litigated and settled. After those cases were resolved by a team of law firms significantly represented here, each went their separate way and individually prosecuted actions against Defendants in other venues with plaintiffs who

---

[5] $ 2,669,952.77 divided by the attributed lodestar of $ 1,463,248.15.

[6] This enumerated section is the nearly the same within both the Rule 23(b)(2) Memorandum and the Rule 23(b)(3) Memorandum.

were harmed by Defendants' reliance on LNRDM data containing civil judgment and tax lien records that were not updated to show a later favorable disposition.

The first case filed against Defendants was *Hill v. LexisNexis Risk Solutions, Inc.*, which was filed on July 24, 2018 in the United States District Court for the Western District of Missouri by the law firms of Keogh Law, Ltd. and Stecklein & Rapp Chartered. Then, unbeknownst to one another, a team led by Berger Montague P.C. filed *Chad Bacon et al. v. LexisNexis Risk Solutions, Inc.*, No. 1:20-cv-01924 (N.D. Ga.) in 2019.[7] Berger Montague PC later co-counseled the *Jones* case with Consumer Litigation Associates, P.C. and the *Clark* case with Francis Mailman Soumilas, P.C. Francis Mailman Soumilas was simultaneously busy prosecuting a class case against one of Defendants' primary customers/resellers in *Harvey*. Finally, *Stewart* was brought by the team of Consumer Litigation Associates, P.C. and Kelly Guzzo, PLC.

Each of these law firms has previously worked with each other in litigation or professionally. Each firm is led by attorneys who themselves have "lead counsel" self-confidence founded on repeated success in consumer class litigation. But when Class Counsel was faced with Defendants' attempts to divide and conquer by pitting Class Counsel against each other, the need for a joint strategy was realized.

Class Counsel's willingness to cooperate with each other was driven by each firm's respective membership and leadership within the National Association of Consumer Advocates ("NACA"). NACA developed and published the respected *Standards and Guidelines for Litigating and Settling Consumer Class Actions*, which sets guidelines for consumer advocates to follow.[8]

---

[7] *Bacon* was not formally included in these settlements as it appeared that Mr. Bacon was not a class member for the settled claims.

[8] "The Guidelines have proven helpful to lawyers and courts alike. Through the years, a significant number of courts have referred to the guidelines. (citations omitted) . . . . Most importantly, perhaps, they achieved their primary goal of setting the standard for litigating and settling consumer class actions. Many of the guidelines have been embraced and adopted by courts and their principles were reflected in the 2004 changes to Federal Rule of Civil Procedure 23."

Those guidelines recognize that, "Settling class actions when other similar cases are pending raises unique issues such as coordination of settlement discussion, reverse auctions, different relief based on laws of different states, the substantive scope of the class, and pending or potential individual lawsuits." 299 F.R.D. 160. The Guidelines recommend that even when "[t]he personal interests of particular class counsel in receiving attorneys' fees could discourage [] cooperation", zealous and adequate "class counsel in overlapping actions should communicate with each other and work together to ensure that class members obtain the maximum settlement benefit." *Id.* Accordingly, each Class Counsel firm here did just as they should have—communicated and negotiated a solution with each competing team to work together to maximize the result for class members.

A more detailed history of each of the primary settled cases follows.

**A.    *Hill v. LexisNexis Risk Solutions, Inc.*, No. 18-cv-560 (W.D. Mo.).**

The first case against Defendants was *Hill v. LexisNexis Risk Solutions, Inc*., which sought classwide monetary damages for every consumer about whom Defendants had furnished a civil judgment or tax lien record without including a later favorable disposition (*e.g.* satisfaction, vacatur or appeal). (*See* Declaration of Keith J. Keogh attached as Exhibit A ("Keogh Decl."); Declaration of A.J Stecklein attached as Exhibit B ("Stecklein Decl.").)

*Hill* was hard fought for over three years. LNRS consistently and vigorously opposed class certification, including because it believed that the class was not ascertainable. (Ex. A, Keogh Decl. ¶ 10.) The plaintiff propounded significant discovery, including four sets of interrogatories and seven sets of document requests about all aspects of the case, including LNRS's databases, civil judgment data collection and retention practices, use of vendors in that process, reporting to other consumer reporting agencies, and LNRS's relationship with LNRDM. (*Id.* ¶ 11.) Defendants

---

National Association of Consumer Advocates, *Standards and Guidelines for Litigating and Settling Consumer Class Actions*, at 1 (3d ed. 2014), *available at* 299 F.R.D. 160 (2014).

responded with a substantial document production, which the plaintiff reviewed. There also were multiple discovery disputes and at least six meet and confer conferences. (*Id.* ¶ 12; Min. Entries Disc. Dispute Hr'gs, *Hill*, EFC Nos. 48, 54, 78, 112.) The discovery issues were so extensive that the court appointed a Special Master to resolve them. (Ex. A, Keogh Decl. ¶ 13; Order, *Hill*, ECF No. 93.) Along with these efforts, the plaintiff also engaged in extensive third-party discovery, issuing subpoenas to seven nonparties. (Ex. A, Keogh Decl. ¶ 14.) The plaintiff also deposed LNRS's corporate representative and two LNRDM employees. (*Id.* ¶ 15.)

Expert discovery was just as complex. LNRS disclosed five experts, all of whom the plaintiff deposed. Plaintiff also engaged three experts. (*Id.* ¶¶ 16–17.) After completing discovery, the parties fully briefed class certification, which the court stayed pending mediation. (*Id.* ¶ 18; Ex. B, Stecklein Decl. ¶ 4; Class Certification Briefs, *Hill*, ECF Nos. 149, 170.)

**B.** *Jones v. LexisNexis Risk Solutions, Inc.*, **No. 20-cv-06263 (S.D. Ohio).**

Prior to filing *Jones*, counsel conducted extensive investigations in order to compile information necessary for pleading the complaint. (Ex. C, Declaration of Leonard A. Bennett ("Bennett Decl.") ¶ 31; Ex. D, Declaration of Kristi C. Kelly "Kelly Decl." ¶ 19.) Counsel's investigations involved having multiple conversations with clients, reviewing various credit reports and other documents, and researching the appropriate entities to sue. (Ex. C, Bennett Decl. ¶ 31.) Counsel also had a number of discussions regarding the preferred venue for filing the action. (*Id.* ¶ 32.) Counsel then filed suit in the Western District of Pennsylvania. *Jones v. LexisNexis Risk Solutions, Inc.*, No. 2:20-cv-01180 (W.D. Pa. Aug. 7, 2020) ("*Jones I*"). After a number of discussions with defense counsel, the parties agreed to substitute one of the defendants and transfer venue to Ohio. *Jones I*, ECF Nos. 17 and 20. On December 7, 2020, the case was transferred to the Southern District of Ohio. *Jones v. LexisNexis Risk Solutions, Inc.*, 2:20-cv-06263, ECF No. 23 (S.D. Ohio Dec. 7, 2020) ("*Jones II*").

In the Southern District of Ohio, Counsel participated in both Rule 26(f) and 16(b) conferences and continued discussions regarding case progression with opposing counsel. (*Jones II*, ECF Nos. 33 and 37; Ex. C, Bennett Decl. ¶ 33.) Simultaneously, counsel pursued possible settlement with the defendants and also discussed internally whether to pursue merging this case with other LexisNexis litigation. (Ex. C, Bennett Decl. ¶¶ 35–36; Kelly Decl. ¶ 19.) Counsel participated in private mediation before Judge Welsh (ret.) in March 2021. (Ex. C, Bennett Decl. ¶34.) Ultimately, these conversations were consolidated with the global settlement discussions concerning this litigation. (*Id.* ¶ 37.)

**C.     *Clark v. LexisNexis Risk Solutions, Inc.*, No. 20-cv-01920 (D. Minn.).**

*Clark* was filed on September 8, 2020. *Clark v. LexisNexis Risk Solutions, Inc.*, No. 20-cv-01920 (D. Minn. Sep. 8, 2020). To build plaintiff's case, counsel engaged in significant pre-suit investigation, motions practice, and settlement discussions. (Ex. E, Declaration of James A. Francis ("Francis Decl.") ¶ 22, Ex. 5.) Motions practice included defending against defendant's motion to dismiss. *Clark*, ECF No. 38 (Jan. 29, 2020). Counsel also leveraged its expertise regarding defendant's policies, procedures, and practices that it had gained through extensive discovery conducted in a related individual case against the same defendant, *Bacon v. LexisNexis Risk Solutions, Inc.* (Ex. F, Declaration of E. Michelle Drake ("Drake Decl.") ¶ 5.) This information was pivotal to plaintiff's litigation progress and settlement. (*Id.*) After participating in Rule 26 and 16(b) conferences, counsel then engaged in multiple rounds of mediation with defendants. *Clark*, ECF Nos. 29, 31, 52.

**D.     *Harvey v. CBC Innovis, Inc.*, No. 18-cv-03946-RPK-JRC (E.D.N.Y).**

Counsel filed *Harvey* against Defendants on July 10, 2018. *Harvey v. CBC Innovis, Inc.*, No. 18-cv-03946 (E.D.N.Y. July 10, 2018). Counsel engaged in extensive meet-and-confer efforts and motions practice in order to obtain key information in the case. (Ex. E, Francis Decl. ¶ 33.)

Counsel reviewed data that Defendant CBC Innovis had produced regarding nearly 10,000 civil judgments, retaining the services of a technical expert to compare CBC Innovis' data against public record data from the State of New York. (*Id.* ¶¶ 34, 35.) Counsel also cross-referenced this data against data produced by Defendant LexisNexis. (*Id.* ¶ 42.)

Counsel also obtained over 50 gigabytes of civil judgement data from the State of New York, which required the services of a technical expert to properly organize this data for review. (*Id.* ¶¶ 35–41.) Further, counsel conducted numerous depositions and engaged in other third-party discovery. (*Id.* ¶ 44.) While continuing to litigate this matter, counsel also pursued settlement with Defendants, including through participation in a settlement conference with Magistrate Judge Scanlon on February 23, 2021. (*Id.* ¶ 45.)

**E.      *Stewart v. LexisNexis Risk Data Retrieval Servs. LLC*, No. 3:20-cv-903 (E.D. Va.).**

*Stewart*, the parent case here, focused more broadly on claims that were primarily resolved in the Rule 23(b)(2) Settlement. Counsel filed *Stewart* on November 23, 2020, bringing claims under §§ 1681c(a), 1681e(b), 1681g(a) of the FCRA on behalf of both Virginia and nationwide classes. (ECF No. 1). After the Court granted several motions for enlargement, Defendants filed a partial motion to dismiss the class action on May 7, 2021. (ECF No. 24.) Upon joint motion of the parties, this Court then stayed deadlines so that the parties could more fully focus on settlement efforts. (ECF No. 28.) Since then, the parties have engaged in multiple mediation sessions, first pertaining to only this matter, and then addressing an omnibus settlement involving all of the above-named actions. (Ex. C, Bennett Decl. ¶ 38.) Through these extensive settlement discussions, as well as internal discussions among the Class Counsel firms, the parties reached a settlement agreement and Class Counsel moved this Court to preliminarily approve the agreement and conditionally certify the classes on January 21, 2022. (ECF No. 56.) On January 31, 2022, this Court granted Plaintiffs' motion to consolidate this matter with the *Hill* and *Jones* matters. (ECF

No. 62.) On February 25, 2022, after a hearing on the matter, this Court granted Plaintiff's motion to preliminarily approve the class settlement, conditionally certify the classes, and appoint Class Counsel. (ECF No. 70.)

## III.    ARGUMENT

### A.    The Court Should Award the Agreed-Upon Service Awards to the Class Representatives.

Courts generally recognize that "[i]ncentive or service awards reward representative plaintiffs' work in support of the class, as well as their promotion of the public interest." *Deem v. Ames True Temper, Inc.*, No. 6:10–cv–01339, 2013 WL 2285972, at *6 (S.D. W. Va. May 23, 2013) (citing *Jones v. Dominion Resources Servs., Inc.*, 601 F. Supp. 2d 756, 767 (S.D. W. Va. 2009)). Plaintiffs request, and the Defendants do not oppose, an incentive awards of $15,000 for Theresa Hill[9] and $10,000 each to Cyntisha Stewart, Terry Brown, Lisa Hill-Green, Yolanda Jones, and Michael Clark.[10]

In this case, the Plaintiffs agreed to serve as the Named Plaintiffs in this lawsuit after Class Counsel explained to them the responsibilities required. Cognizant of those responsibilities, Plaintiffs began this lawsuit with the intent to vigorously pursue it, for themselves and the benefit of the Class Members they represent. Additionally, Ms. Hill was the longest serving class representative, and was deposed during her extensive participation in this litigation since 2018. The Class Representatives understand the theories of this lawsuit, kept abreast of the case's status, reviewed documents provided to them by their Counsel, and discussed with their Counsel aspects of the case, discovery issues, and settlement negotiations. Given the injunctive nature of the

---

[9] Defendants deposed Ms. Hill, she answered discovery, and she has participated extensively in her litigation since 2018.

[10] Not every Plaintiff in the consolidated cases is moved as a class representative and not every Plaintiff seeks a Service Award.

settlement, these service awards will not detract from the relief provided to Rule 23(b)(2) Class Members.

Service awards have been regularly approved by judges in the Eastern District of Virginia in cases such as this one where the class representative took a role in prosecuting the claims on behalf of the class. *Ryals, Jr. et al. v. HireRight Solutions, Inc.*, No. 3:09cv625 (E.D. Va. Dec. 22, 2011) (approving a service award to each class representative in the amount of $10,000); *Hayes v. Delbert Servs. Corp.*, No. 3:14-cv-258 (E.D. Va.); *Manuel v. Wells Fargo Nat'l Ass'n*, No. 3:14-cv-238, 2016 WL 1070819, at *6 (E.D. Va. Mar. 15, 2016); *Beverly v. Wal-Mart Stores, Inc.*, No. 3:07-cv-469 (E.D. Va.); *Williams v. Lexis Nexis Risk Mgmt.*, No. 3:06cv241 (E.D. Va.); *Cappetta v. GC Servs. LP*, No. 3:08-cv-288 (E.D. Va.); *Makson v. Portfolio Recovery Assoc., Inc.*, No. 3:07-cv-982 (E.D. Va. Feb. 9, 2009); *Daily v. NCO*, No. 3:09-cv-31 (E.D. Va.); *Conley v. First Tenn.*, No. 1:10-cv-1247 (E.D. Va.); *Lengrand v. Wellpoint*, No. 3:11-cv-333 (E.D. Va.); *Henderson v. Verifications, Inc.*, No. 3:11-cv-514 (E.D. Va.); *Pitt v. K-Mart Corp.*, No. 3:11-cv-697 (E.D. Va.); *James v. Experian Info. Sols.*, No. 3:12-cv-902 (E.D. Va.); *Manuel v. Wittstadt*, No. 3:12-cv-450 (E.D. Va.); *Shami v. Middle E. Broadcast Network*, No. 1:13-cv-467 (E.D. Va.); *Goodrow v. Freidman & MacFadyen*, No. 3:11-cv-20 (E.D. Va.); *Berry v. LexisNexis Risk & Info. Analytics Grp., Inc.*, No. 3:11-cv-274 (E.D. Va.); *Marcum v. Dolgencorp*, No. 3:12-cv-108 (E.D. Va.); *Kelly v. Nationstar*, No. 3:13-cv-311 (E.D. Va.); *Wyatt v. SunTrust Bank*, No. 3:13-cv-662 (E.D. Va.). As do other judicial districts. *See, e.g.*, *Staton v. Boeing Co.*, 327 F.3d 938, 976–77 (9th Cir. 2003); *In re Bancorp Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002); *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998).

In fact, the requested service awards are well below the national average—an empirical study published in 2006 suggests that the average award per class representative is about $16,000.

4 *Newberg on Class Actions* § 11:38 (4th ed.). Because Plaintiffs' participation and willingness to stand up for the class was instrumental to their recovery, an award of $10,000 is reasonable. Plaintiffs agreed to serve the Class by: (1) subordinating their own self-interest and resist any pressure to sell their role as Class Representative for a larger individual settlement; (2) devoting time and work to the case; and (3) allowing a national class settlement and notice necessary to satisfy Rule 23, though Defendants reported inaccurate judgment information for each of them. Accordingly, the service awards are well-deserved.

**B.     The Court Should also award Class Counsel's reasonably incurred expenses of litigation.**

Class Counsel here request expense awards of $ 115,047.23 in connection with the Rule 23(b)(2) fee, which represents half of the total expenses paid and incurred in these consolidated cases. Courts regularly award litigation expenses in addition to attorneys' fees in class-action cases. *Kabore v. Anchor Staffing*, Inc., No. L-10-3204, 2012 WL 5077636, at *10 (D. Md. Oct.17, 2012) ("It is well-established that plaintiffs who are entitled to recover attorneys' fees are also entitled to recover reasonable litigation-related expenses as part of their overall award."). The Fourth Circuit has explained that such costs and expenses may include "those reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client, in the course of providing legal services." *Spell v. McDaniel*, 852 F.2d 762, 771 (4th Cir. 1988) (internal quotations omitted). Fourth Circuit courts have awarded costs such as "necessary travel, depositions and transcripts, computer research, postage, court costs, and photocopying." *Singleton v. Domino' Pizza, LLC*, No. DKC 11-1823, 2013 WL 5506027, at *17 (D. Md. Oct. 2, 2013).

**C.     The Requested Attorneys' Fees Should Be Approved.**

The Settlement provides for stipulated attorneys' fees of $2,669,952.77. As described below, these fees are appropriate and should be awarded.

1. **Defendants—not the Class—will pay a Reasonable Attorneys Fee, and they have Stipulated that a fee of $2,850,000 (or $2,785,000 net of Service Awards) was Reasonable.**

To begin, the attorneys' fee award here warrants reduced scrutiny because it was not discussed—much less negotiated—until after an agreement was reached on all other material terms of the Settlement. That is, Defendants agreed that $2,785,000 was a fair Rule 23(b)(2) award for fees and costs independent of negotiations that had already taken place pertaining to the injunctive relief that will be afforded to the Class. The Class does not pay any of the fee award—directly or indirectly. And, unlike other cases, like *Berry*, there is no damages release or settlement. *Berry v. LexisNexis Risk & Info. Analytics Grp., Inc.*, 3:11-cv-754, 2014 WL 4403524 (E.D. Va. Sept. 5, 2014), *aff'd sub nom. Berry v. Schulman*, 807 F.3d 600 (4th Cir. 2015).

Any reduction in the requested fee, therefore, would not benefit consumers; it would benefit only Defendants. This Court is familiar with the comparable class settlement approved by Judge Spencer in *Berry*. In that Rule 23(b)(2) settlement, Judge Spencer considered a settlement in which:

> Plaintiffs' counsel will seek an award for attorneys' fees and expenses for their representation of the Rule 23(b)(2) Settlement Class in obtaining relief. The request is based in large part on the value of the relief to consumers and the dynamic shift that it represents in the industry and the fact that the injunction affords far better substantive rights than the Court or a jury could compel following a complete victory on all of Plaintiff's claims. The Settlement Agreement approves an award for attorneys' fees, costs, and other expenses in an amount up to $5.5 million in the aggregate. The amount will be paid entirely by LexisNexis. The Defendants have agreed to pay this amount and the Plaintiffs' counsel have agreed not to seek a higher amount.

2014 WL 4403524, at *6.

The Court benefits not only from Judge Spencer's careful review but also the Fourth Circuit's affirmance. Not only was a multiplier appropriate, but the Fourth Circuit also offered an additional basis to approve a Rule 23(b)(2) fee award in circumstances similar to this case:

> Other features of this case further diminish any concern about the fee award and, accordingly, any need for heightened scrutiny by the district court. Because class counsel's fee is to be paid entirely by Lexis, it does not reduce the (b)(2) Class's recovery. *Cf. Cook v. Niedert*, 142 F.3d 1004, 1011 (7th Cir. 1998) (when attorneys' fee reduces amount of common fund, court must carefully scrutinize fee application). Nor, of course, will it require the expenditure of taxpayer funds, which might warrant additional scrutiny. *Cf. Perdue v. Kenny* A., 559 U.S. 542, 559 (2010) (limiting the use of multipliers in lodestar-based fee awards against the government under fee-shifting statutes). Finally, the parties did not even begin to negotiate class counsel's fee until after the substantive terms of the Agreement were finalized, making it far less likely that counsel could have traded off the interests of class members to advance their own ends.

*Berry*, 807 F.3d at 618 n.10.

As in *Berry*, the Court here must consider that the proposed award was not negotiated at the expense of the Class's recovery. Regardless of whatever fee Class Counsel receives, the Class will receive the same benefit of the substantial changes to how Defendants will report public records. Thus, there can be no inference of collusion or Class Counsel advancing their interests ahead of the Class. In fact, the opposite is true. Class Counsel spent multiple mediations over months negotiating these substantive changes to prevent the violations that happened to Plaintiffs. And, if there was any collusion, the injunctive relief would not be nearly as sweeping as was negotiated. In fact, the only parties that would benefit by a reduced fee award to Class Counsel are Defendants, the entities that caused the harm to Plaintiffs and the Class.

### 2. No Class Members Have Objected.

While a short period remains for filing of an objection, to date not one has been offered, though the proposed award of fees, costs and service awards of $2,800,000 was contained within the class notice and website program. No Class Member has objected. And no governmental agency or office has even informally questioned, objected, or complained after each state Attorney General as well as the Consumer Financial Protection Bureau were noticed. Given the size of the

class—millions of consumers—all of this is indicative of a fair settlement and fee. Again, the Fourth Circuit has directly so held:

> Finally, the fact that only one of the approximately 200 million members of the (b)(2) Class objects to the award of attorneys' fees is relevant to our decision. Notice of the proposed settlement in this case reached 75.1 percent of the (b)(2) Class members, but only Objector Schulman raised any concerns; indeed, the other Objectors specifically declined to join this portion of the challenge. That almost complete lack of objection to the fee request provides additional support for the district court's decision to approve it. *See In re Rite Aid Corp. Sec. Litig*., 396 F.3d 294, 305 (3d Cir.2005) (noting that only two of 300,000 class members objecting to fee request is a "rare phenomenon" and evidence that the district court did not abuse its discretion in awarding fees); *see also Flinn*, 528 F.2d at 1174 (finding class action settlement reasonable where "[o]nly five members of the class filed any dissent from the settlement").

*Berry*, 807 F.3d at 618–19. There is no reason to depart from this rationale here.

### 3. Class Counsel's allocated lodestar supports an award of the stipulated fee of $2,669,952.77.

In support of this Motion, each Class Counsel firm has prepared and filed a declaration providing a detail of time incurred and hourly rates ordinarily charged for each attorney and paralegal who has worked in one of the consolidated cases. The total fee incurred, between both settlements is in excess of 5169.04 hours. The total lodestar between both cases is in excess of $2,926,496.30. The summary is as follows:

| Firm | Hours | Total Loadstar |
|---|---|---|
| Berger Montague | 470.3 | $   313,688.50 |
| Consumer Litigation Associates, P.C. | 564.7 | $    360,142.00 |
| Francis Mailman Soumilas, P.C.[11] | 1617.6 | $   909,594.80 |
| Kelly Guzzo, PLC | 444 | $   222,366.00 |
| Keogh Law, LTD | 1368.1 | $   855,960.00 |

---

[11] Includes time for co-counsel Kevin Mallon in *Harvey* matter

| Stecklein & Rapp Chartered | 704.34 | $   264,745.00 |
|---|---|---|
| **Grand Total** | **5169.04** | **$ 2,926,496.30** |

**The breakdown by law firm is as follows**:

**BM**

| Timekeeper | Position | Atty. Yrs. of Exp. | Hourly Rate | Hours Worked | Lodestar |
|---|---|---|---|---|---|
| John G. Albanese | Shareholder | 10 | $640 | 169.7 | $108,608.00 |
| E. Michelle Drake | Executive Shareholder | 21 | $920 | 157.6 | $144,992.00 |
| Jean Hibray | Paralegal | | $370 | 77 | $  28,490.00 |
| Alexandra Antoniou | Senior Counsel | 15 | $590 | 31 | $  18,290.00 |
| Mai Xiong | Paralegal | | $310 | 12.9 | $    3,999.00 |
| Ariana Kiener | Associate | 2 | $490 | 8 | $    3,920.00 |
| Julie Gionnette | Legal Assistant | | $240 | 7.5 | $    1,800.00 |
| Sarah R. Schalman-Bergen | Shareholder | 15 | $645 | 3.7 | $    2,386.50 |
| Jennie Lynch | Legal Project Analyst | | $260 | 1.6 | $   416.00 |
| Camille Fundora Rodriguez | Shareholder | 11 | $670 | 1 | $   670.00 |
| Rachel Gebo | Legal Project Team Manager | | $390 | 0.3 | $   117.00 |

**CLA**

| Timekeeper | Position | Atty. Yrs. of Exp. | Hourly Rate | Hours Worked | Lodestar |
|---|---|---|---|---|---|
| Leonard A. Bennett | Attorney/Owner | 24 | $750.00 | 375 | $281,250.00 |
| Craig C. Marchiando | Senior Attorney | 18 | $625.00 | 31.3 | $19,562.00 |
| Kevin Dillon | Associate Attorney | 3.5 | $400.00 | 82.6 | $ 33,040.00 |
| Drew Sarrett | Attorney | 10 | $550 | 6.8 | $ 3,740.00 |
| Amy Austin | Attorney | 29 | $650 | 17 | $ 11,050.00 |
| Donna Winters | Senior Paralegal | | $225.00 | 23 | $  5,175.00 |
| Vicki Crissman | Senior Paralegal | | $225.00 | 21 | $ 4,725.00 |
| Ashleigh Hudson | Paralegal | | $200.00 | 8 | $1,600.00 |

**FMS**

| Timekeeper | Position | Atty. Yrs. of Exp. | Hourly Rate | Hours Worked | Lodestar |
|---|---|---|---|---|---|
| James A. Francis | Attorney | 27 | $605.00 | 661.1 | $483,574.70 |
| John Soumilas | Attorney | 23 | $495.00 | 196.7 | $164,153.85 |
| David Searles | Attorney | 47 | $725.00 | 4.3 | $3,804.00 |
| Geoffrey Baskerville | Attorney | 30 | $495.00 | 0.5 | $287.50 |
| Lauren KW Brennan | Attorney | 9 | $225.00 | 12.5 | $3,669.45 |
| Jodan M. Sartell | Attorney | 10 | $225.00 | 490.8 | $147,734.25 |
| Alexis Lehman | Attorney | 12 | $265.00 | 7.4 | $2,257.00 |
| Francis Mailman Soumilas Paralegal | Paralegal | | $180.00 | 133.5 | $34,864.05 |

| Kevin C. Mallon | Owner | 22 | $625.00 | 110.8 | $69,250.00 |
|---|---|---|---|---|---|

**KG**

| Timekeeper | Position | Atty. Yrs. of Exp. | Hourly Rate | Hours Worked | Lodestar |
|---|---|---|---|---|---|
| Kristi Kelly | Attorney | 16 | $550 | 237.6 | $130,680.00 |
| Andrew Guzzo | Attorney | 11 | $550 | 31.4 | $ 17,270.00 |
| Pat McNichol | Attorney | 9 | $525 | 17.3 | $  9,083.00 |
| Casey Nash | Attorney | 10 | $525 | 99.5 | $ 52,238.00 |
| Natalie Cahoon | Paralegal | | $225 | 58.2 | $ 13,095.00 |

**Keogh**

| Timekeeper | Position | Atty. Yrs. of Exp. | Hourly Rate | Hours Worked | Lodestar |
|---|---|---|---|---|---|
| Keith J. Keogh | Partner | 23 | $700 | 720.2 | $504,140.00 |
| Williams Sweetnam | Of Counsel | 28 | $600 | 440.5 | $264,300.00 |
| Amy Wells | Associate | 18 | $550 | 142.5 | $ 78,375.00 |
| Matt Seckel | Paralegal | 11 | $150 | 41.3 | $  6,195.00 |
| Rachel Wollenschlager | Paralegal | | $125 | 23.6 | $  2,950.00 |

**Stecklein**

| Timekeeper | Position | Atty. Yrs. of Exp. | Hourly Rate | Hours Worked | Lodestar |
|---|---|---|---|---|---|
| A.J. Stecklein | Partner | 28 | $500.00 | 128.8 | $ 64,400.00 |
| Michael H. Rapp | Partner | 10 | $400.00 | 145.94 | $ 58,376.00 |

| Matthew S. Robertson | Associate | 6 | $350.00 | 372.2 | $130,270.00 |
| Samuel E. Miller | Associate | 1 | $275.00 | 12 | $ 3,300.00 |
| Anne Lamoy | Paralegal | | $185.00 | 45.4 | $ 8,399.00 |

Class Counsel allocates fifty percent of this total to each of the two settlements. Accordingly, they ask for the award of $2,669,952.77 in stipulated fees for the Rule 23(b)(2) Settlement based on an attributed lodestar in excess of $ 1,463,248.15.

> **a)**     **Class Counsel Have Properly Allocated Attorneys' Fees and Costs between the Separate Rule 23(b)(2) and Rule 23(b)(3) Settlements.**

Class Counsel has moved for approval of the attorneys' fees to be paid by Defendants in the Rule 23(b)(2) Settlement. Each firm has provided their fees and expenses incurred in these cases to date. Some of the time incurred clearly regarded only to this Rule 23(b)(2) Settlement, such as the mediation related to that aspect of the case and related fees. Other time could not be as easily attributed. For example, time spent litigating whether Defendants were governed by the FCRA benefited both groups and classes. And a significant part of Class Counsel's lodestar focused on basic liability questions. Accordingly, for the undifferentiated time, Class Counsel has divided it evenly—50/50—between the Rule 23(b)(2) and Rule 23(b)(3) Settlements. Such rough attribution has been approved in multiple FCRA cases, including by this Court. *See, e.g.*, *Berry*, 2014 WL 4403524, at *1 (approving separate fees for Rule 23(b)(2) and Rule 23(b)(3) settlements); *Witt v. Corelogic Saferent, LLC*, Civ. No. 3:15-cv-86, ECF 374, 375 (E.D. Va. Mar. 22, 2018) (separate orders approving separate fees for Rule 23(b)(2) and Rule 23(b)(3) settlements); *White v. Experian Info. Sols., Inc.*, No. 8:05-cv-01070, 2018 WL 1989514, at *20 (C.D. Cal. Apr. 6, 2018), *aff'd in part, rev'd in part and remanded sub nom. Radcliffe v. Hernandez*, 794 F. App'x 605 (9th Cir. 2019) (same).

      **b)**    **Class Counsel's Lodestar Reflects the Time, Labor, and Skill Reasonably Required to Prosecute this Complex Action**

While a detailed analysis of work performed against percentage fee sought can sometimes be appropriate, here the Court's visibility to the work performed and outcome accomplished makes this an easier decision. The stipulated attorneys' fees here are reasonable. The Fourth Circuit has approved the lodestar method for use in a Rule 23(b)(2) settlement, including where it accompanies separate Rule 23(b)(3) common fund settlements and fee. *Berry*, 807 F.3d at 618. Class Counsel request, and Defendants do not oppose, a payment of $2.85 million for fees and expenses incurred in litigating the injunctive relief. (ECF No. 57-1 at § 4.5.1.) Deducting Service Awards of $65,000 and Class Counsel's litigation costs of $ 115,047.23, (*see infra* Section C,) Class Counsel request a fee of $ 2,669,952.77. This fee, like all attorneys' fees and service awards in this case, was negotiated only *after* the substantive terms of relief to the class had been agreed, affording the protections of the adversary system to the fee-setting process. Both the hours expended and the rate of Class Counsel are reasonable and support their loadstar.

It is important to note that the meaningful injunctive relief was only made possible through the necessary groundwork laid in the underlying class actions. *Hill* was pivotal in uncovering key information regarding Defendants' business practices and the nature of public record reporting. (*See* Ex. C, Bennett Decl. ¶ 37.) This information in turn empowered Class Counsel to more effectively negotiate in subsequent mediation sessions. Likewise, the multiple rounds of mediation conducted in *Hill* and *Stewart* helped make progress to reaching an acceptable global settlement for consumers nationwide.

As counsel recognized it was in the best interest of the class to join forces, the six firms comprising Class Counsel here coordinated their work to avoid duplication of effort. It was through

the joint efforts of the firms involved as Class Counsel that consumers were able to obtain the impressive results of the settlement. (*Id.* ¶¶ 34, 36.)

       **c)**       **Class Counsel's hourly rates are reasonable.**

Class Counsel are nationally recognized class-action practitioners, with particular expertise in FCRA litigation. Class Counsel have pursued consumer's rights in multiple FCRA class action cases in this District certified both for settlement purposes and on contest, and which were approved over objections on appeal. *See, e.g.*, *Berry*, 807 F.3d at 617–19; *White v. Experian Info. Sols., Inc.*, No. 05-01070, 2014 WL 1716154, at *13, 19, 22 (C.D. Cal. May 1, 2014), *aff'd sub nom. Radcliffe v. Experian Info. Sols., Inc.*, 818 F.3d 537, 548 (9th Cir. 2016) (appointing firm and its team as interim class counsel over objections from a competing national law firm because their team's "credentials and experience [we]re significantly stronger in class action and FCRA litigation."); *Souter v. Equifax Info. Servs., LLC*, 3:10-cv-107, 2011 WL 1226025 (E.D. Va. Mar. 30, 2011) ("[T]he Court finds that Soutter's counsel is qualified, experienced, and able to conduct this litigation. Counsel is experienced in class action work, as well as consumer protection issues, and has been approved by this Court and others as class counsel in numerous cases."). Many attorneys of record here were appointed to represent the classes in the Public Records Litigation.[12] Moreover, two of law firms were class counsel in *Berry*. There is no group of lawyers with a deeper knowledge level and more relevant background and experience to represent the interests of Plaintiffs and the Classes.

For example, in approving Kelly Guzzo and Consumer Litigation Associates as class counsel, Judge Novak described Class Counsel as "the all-star team of consumer litigation."

---

[12] *See Clark v. Trans Union LLC*, No. 3:15-cv-00391-MHL, ECF No. 273 (E.D. Va. Aug. 29, 2018) (order granting final approval of nationwide settlement of similar FCRA public records reporting claims litigated by Class Counsel here); *Clark v. Experian Info. Sols., Inc.*, No. 3:16-cv-00032-MHL, ECF No. 150 (E.D. Va. Feb. 1, 2019) (same); *Thomas v. Equifax Info. Servs. LLC*, No. 3:18-cv-00684-MHL, ECF No. 55 (E.D. Va. Sep. 13, 2019) (same).

*Turner v. Zestfinance, Inc.*, 3:19-cv-293 (E.D. Va.). Other judges in this Court also have repeatedly recognized Kelly Guzzo's and Consumer Litigation Associates' quality and skill in consumer class-action litigation, and in FCRA litigation in particular. *See, e.g.*, *Clark v. Trans Union, LLC*, 3:15-cv-391, 2017 WL 814252, at *13 (E.D. Va. 2017) (collecting cases and stating "This Court has repeatedly found that [proposed Class Counsel] is qualified to conduct such litigation. . . . This Court echoes the sentiments previously stated about [proposed Class Counsel] because they pertain here with equal vigor." (citations omitted)); *Galloway v. Williams, Jr.*, No. 3:19-cv-470, 2020 WL 7482191, at *8 (E.D. Va. Dec. 18, 2020) (finding "Class Counsel and their firms have extensive backgrounds in complex and class action litigation and consumer protection litigation" (citing, *e.g.*, *Hayes, et al. v. Delbert Servs. Corp.*, 3:14-cv-00258-JAG, ECF No. 193 ¶ 4, 14 (Jan. 20, 2017)); *Dreher v. Experian Info. Sols., Inc.*, 3:11-cv-00624-JAG, 2014 WL 2800766, at *2 (E.D. Va. June 19, 2014) ("Dreher's counsel is well-experienced in the arena of FCRA class action litigation."); *Manuel v. Wells Fargo Bank, Nat'l Ass'n*, No. 3:14-cv-238, 2016 WL 1070819, at *3 (E.D. Va. Mar. 15, 2016) (stating that "this Court would have difficulty overstating Class Counsel's experience[.]")); (*see also* Ex. C, Bennett Decl.; Ex. D Kelly Decl.)

Berger Montague P.C. specializes in class action litigation and is one of the preeminent class action law firms in the United States. The firm currently consists of over 60 attorneys who primarily represent plaintiffs in complex civil litigation, and class action litigation, in federal and state courts. Berger Montague has played lead roles in major class action cases for over 50 years, and has obtained settlement and recoveries totaling well over $30 billion for its clients and the classes they have represented. (Ex. F, Drake Decl., Ex. A. E. Michelle Drake, Executive Shareholder, has served as lead, or co-lead counsel in numerous notable consumer protection matters, including but not limited to: *Gambles v. Sterling Infosystems, Inc.*, No. 15-cv-9746

(S.D.N.Y.) (FCRA class action, alleging violations by consumer reporting agency, resulting in a gross settlement of $15 million, one of the largest FCRA settlements to date); *In re: JUUL Labs, Inc. Mktg., Sales Practices, & Prod. Liab. Litig.*, No. 19-md-2913 (N.D. Cal.) (appointed to Plaintiffs' Steering Committee in multi-district litigation consolidated class action, regarding the marketing and sales practices of dangerous e-cigarettes to consumers); *In re: American Medical Collection Agency, Inc. Customer Data Security Breach Litig.*, No. 19-md-2904 (D.N.J.) (appointed to the Plaintiff's Quest Track Steering Committee in multi-district litigation consolidated class action, regarding the breach of consumers' medical information); *In re: TransUnion Rental Screening Sols., Inc. FCRA Litig.*, No. 1:20-md-02933-JPB (N.D. Ga.) (appointed as Interim Lead Counsel for the classes in multi-district litigation consolidated class action, regarding violations of the Fair Credit Reporting Act); *Thomas v. Equifax Info. Services, LLC*, No. 18-cv-684 (E.D. Va.) (FCRA class action, alleging violations by credit bureau, providing nationwide resolution of class action claims asserted across multiple jurisdictions, including injunctive relief, and an uncapped mediation program for millions of consumers); *Clark v. Experian Info. Sols., Inc.*, No. 16-cv-32 (E.D. Va.); (FCRA class action, alleging violations by credit bureau, providing a nationwide resolution of class action claims asserted by 32 plaintiffs in 16 jurisdictions, including injunctive relief and an uncapped mediation program, for millions of consumers); *Clark/Anderson v. Trans Union, LLC*, No. 15-cv-391 & No. 16-cv-558 (E.D. Va.) (FCRA consolidated class action, alleging violations by credit bureau, providing groundbreaking injunctive relief, and an opportunity to recover monetary relief, for millions of consumers); *Rilley v. MoneyMutual, LLC*, No. 16-cv-4001 (D. Minn.) (court certified a litigation class of over 20,000 Minnesota consumers alleging that MoneyMutual violated Minnesota payday lending regulations, resulting in $2,000,000 settlement with notable injunctive relief).)

Similarly, Francis Mailman Soumilas is a widely respected national consumer law firm that specializes in litigation of the Fair Credit Reporting Act. (Ex. E, Francis Dec. Ex. 2). The firm was trial and appellate counsel in the *Ramirez v. Trans Union*, a case in which it obtained a record-breaking $60 million dollar jury verdict (remitted and remanded) for a class action brought under the Fair Credit Reporting Act, and for which the U.S. Supreme Court has made a landmark case for Article III standing. The firm has obtained record-breaking jury verdicts and settlements in cases brought under the Fair Credit Reporting Act. Certified to serve as class counsel in over 70 consumer class actions by federal courts nationwide, Francis Mailman Soumilas has helped obtain groundbreaking legal rulings at both the trial court and appellate court levels. The firm has further served as counsel in some of the largest class action settlements in consumer protection litigation history. Due to the quality of its trial and appellate advocacy, FMS has been recognized by courts for its expertise and the high caliber of its work. *See, e.g., White v. Experian Info. Solutions*, No. 05-01070, 2014 WL 1716154, at *13, 19, 22 (C.D. Cal. May 1, 2014) (finding firm to be "FCRA specialists" and appointing the firm and its team as interim class counsel over objections from competing national law firm because their team's "credentials and experience [we]re significantly stronger in class action and FCRA litigation."); *see also Barel v. Bank of Am.*, 255 F.R.D. 393, 398-99 (E.D. Pa. 2009) (finding that firm has "done an excellent job in representing the class in the instant litigation."). In addition to the *Thomas v. Equifax*, *Clark v. Experian*, and *Clark/Anderson v. Trans Union* public records settlements approved in this district, some of the firm's recent accomplishments include obtaining a $2 million dollar settlement for consumers who were overcharged for college verifications in *Robinson v. National Student Clearinghouse*, No. 1-19-cv-10749, 2020 WL 4873728 (D. Mass. July 8, 2020) *aff'd* 14 F.4th 56 (1st Cir. 2021), and

obtaining the certification on contest of the largest tenant screening class action under the FCRA to date in *McIntyre v. RealPage, Inc.,* No: 2:18-cv-03934, WL 5017612 (E.D. Pa. Aug. 25, 2020).

Keogh Law has been class counsel in some of the largest all-cash class action settlements involving FACTA, an an anti-identity theft amendment to the FCRA that aims to protect the privacy of sensitive personal financial information. *Flaum v Doctors Assocs.,* 16-CV-61198-CMA (S.D. Fla. Mar. 11, 2019) ($30.9 million); *Legg v. Lab. Corp. of Am. Holdings*, No. 14-cv-61543-RLR (S.D. Fla. Feb. 18, 2016) ($11 million); *Legg v. Spirit Airlines, Inc*., No. 14-cv-61978-JIC (S.D. Fla. Aug. 2, 2016) ($7.5 million dollars). The firm also was class counsel in two of the largest Telephone Consumer Protection Act ("TCPA") settlements in the country. *See Hageman v. AT&T Mobility LLC, et al.*, Case 1:13-cv-00050-DLC-RWA (D. Mt.) (granting $45 million settlement for a class of 16,000 persons); *Capital One Tel. Consumer Protection Act Litig.*, 12-cv-10064 (N.D. Ill.) ($75 million settlement). The firm also has litigated dozens of consumer class settlements. (*See* Ex. A, Keogh Decl.) Keogh's Co-counsel in *Hill*, Stecklein & Rapp, are accomplished consumer attorneys in their own right. (Ex. B., Stecklein Decl.) They have been certified as class counsel in FCRA class actions and other class actions on behalf of consumers. *See N. Star Capital Acquisition LLC v. Dennis Budd*, No. 09-cv-836, Wyandotte County, Kansas District Court; *Ramona Curnal v. LVNV Funding, LLC*, No. 10-cv-001667, Wyandotte County, Kansas District Court; *Phillys Johnson v. MKA Enters. Inc*., No. 12-cv-498, Wyandotte County, Kansas District Court; *Oneida Ruby v. Atlantic Credit & Finance Inc*., No. 12-cv-577, Wyandotte County, Kansas District Court; *Dan Holiday Furniture LLC v. Heather Morris*, No. 1416-cv-14459, Jackson County, Missouri Circuit Court; *Russell Wilson v. Ridgmar Group, LLC*, No. 1616-cv01555, Jackson County, Missouri Circuit Court; *Jeffrey Hoelflicker v. CPS Logistics, Inc*., No. 15-cv-00679-BP (W.D. Mo.); *Dean Barrett v. Selene Fin. LP*, No. 4:17-cv-00985-BCW (W.D.

Mo.); *Samantha Hennessy, et al. v. Mid-America Apartment Communities, Inc*., No. 4:17-cv-00872-BCW (W.D. Mo.); *Timothy Detter v. KeyBank N.A*., No. 1616-CV10036, Jackson County, Missouri Circuit Court.

Given the depth of Class Counsel's expertise in this field and each firm's demonstrated track record of results, Class Counsel's rates are reasonable. Class Counsel's rates have also been approved repeatedly in courts throughout the country and are commensurate with rates charged by other attorneys in national class action consumer protection litigation. The rates attributed here are also supported by the Declaration of Dale Pittman, who is well respected in this District and nationally in the field and who has been previously recognized as possessing expert knowledge of appropriate rates in and by this Court (Ex. G, Declaration of Dale Pittman). *See, e.g*., *Dreher v. Experian Information Solutions, Inc. et al*, Case No. 3:11cv624, ECF 442 at 3 (E.D.Va. July 26, 2016) ("Dreher has provided the Court with an affidavit by a well-known and able attorney who handles many consumer protection cases. The lawyer says that both the hourly rates and amount of time are reasonable.")

        d)      **Class Counsel Fairly Anticipate an Additional Future Lodestar at Least in Excess of 10% of that Incurred to Date.**

These allocations and fee totals do not account for the substantial work required for the ongoing notice program, further litigation that may be required if disputes arise regarding implementation, implementation itself and multiple years of work monitoring and possibly enforcing the injunctive relief to be ordered by the Court. Class Counsel here is seeking a fee which, even though paid for entirely by Defendants and divided across multiple cases, is large. But so is the burden and risk that Class Counsel will be ordered to accept going forward.

The requested attorneys' fees recognize the substantial post-approval work that Class Counsel will undertake on behalf of the Class. While all class action settlements entail some

significant post-approval work by Class Counsel, this Settlement a multi-year commitment to monitor the Defendants' reporting process, and represent and assist class members as required.

Conservatively and based upon their experience in the leading injunctive relief class settlements under the FCRA, Class Counsel estimates that the additional lodestar expected after approval will exceed 10% of that incurred to date. With that adjustment, the measurable allocated lodestar will exceed $ 1,609,572.96.

**e)** **The Requested Multiplier is Reasonable in Light of the Injunctive Relief Results Achieved.**

This requested fee of $2,669,952.77 thus represents a 1.82 multiplier on the value of Class Counsel's to-date lodestar, and just 1.66 for the expected total for this Rule 23(b)(2) Settlement. This multiplier is well within the range of multipliers awarded in similar cases. *See Berry*, 807 F.3d at 617–18.[13]

Particularly in light of the result achieved, the requested fee is a reasonable, appropriate award for this case. The reasonableness determination is informed by the following factors:

---

[13] *See also In re Cardinal Health Inc. Sec. Litig.*, 528 F. Supp. 2d 752, 768 (S.D. Ohio 2007) (finding that requested fee amount with a lodestar multiplier of 7.89 was not unreasonable "[g]iven the outstanding settlement in this case and the noticeable skill of counsel"); *In re Charger Commc'n, Inc., Sec. Litig.*, No. MDL 1506, 4:02-cv-1186CAS, 2005 WL 4045741, at *1, *18 (E.D. Mo. June 20, 2005) (approving lodestar multiplier of 5.61); *In re Excel Energy, Inc., Sec., Derivative & ERISA Litig.*, 364 F. Supp. 2d 980, 989 (D. Minn. 2005) (approving a multiplier of 4.7 in a case that only involved document review, and was resolved without any depositions after two days of mediation); *In re Rite Aid Corp. Sec. Litig.*, 362 F. Supp. 2d 587, 589 (E.D. Pa. 2005) (awarding lodestar multiplier of 6.96 despite the fact that the parties engaged mostly in informal discovery and took no depositions); *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 362 (S.D.N.Y 2002) (describing multiplier of 4.65 as "modest" in a case in which plaintiffs conducted no depositions, only interviews, and confirmatory discovery consisted of tens of thousands of pages of documents); *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 489 (S.D.N.Y. 1998) (awarding 3.97 multiplier, reasoning that multipliers between 3 and 4.5 were common); *DiGiacomo v. Plains All Am. Pipeline*, Nos. Civ. H-994137, Civ. H-99-4212, 2001 WL 34633373, at *3, *11 (S.D. Tex. Dec. 19, 2001) (endorsing multiplier of 5.3 despite the fact no depositions were taken and most of the discovery was informal or document review); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 (9th Cir. 2002) (affirming multiplier of 3.65 to compensate class counsel for risk of taking the case); *Roberts v. Texaco, Inc.*, 979 F. Supp. 185, 197–98 (S.D.N.Y. 1997) (approving multiplier of 5.5 in what the court described as risky and hard fought litigation); *In re Interpublic Sec. Litig.*, No. 02 Civ.6527(DLC), 03 Civ.1194(DLC), 2004 WL 2397190, at *12 (S.D.N.Y. Oct. 26, 2004) (awarding multiplier of 3.96); *In re WorldCom, Inc., Sec. Litig.*, 388 F. Supp. 2d 319, 353 (S.D.N.Y. 2005) (awarding multiplier of 4).

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Robinson v. Equifax Info. Servs.*, 560 F.3d 235, 243–44 (4th Cir. 2009). As shown above, Counsel here expended large amounts of time and labor, demonstrated skill commensurate with their preeminent reputations, and achieved an excellent result in this exceptionally large and complex action.

Particularly salient here is the 8th factor—the amount in controversy and the results obtained. Despite LexisNexis's defenses, Plaintiffs here achieved relief that provides substantial benefits for millions of consumers nationwide, making the requested fee more than reasonable. The injunctive relief is more robust than what was obtained in the Public Records Litigation and what the Fourth Circuit affirmed in *Berry*. Ultimately, the injunctive relief addresses the specific alleged harm that befell the Named Plaintiffs and seeks to ensure that consumers are not prejudiced by inaccurate Public Records in the future.

## IV.    CONCLUSION

For the reasons set forth above, the Court should grant Plaintiffs' and Class Counsel's motion requesting attorneys' fees of $ 2,669,952.77 and expenses of $ 115,047.23, totaling $2,785,000.00, in compensation for the benefit conferred on the Rule 23(b)(2) and grant the Class Representatives service awards in the amount of $ 65,000.00 as detailed above.

Dated: June 9, 2022

Respectfully submitted,

**CYNTISHA STEWART, et. al.**

By:     */s/Leonard A. Bennett*

Leonard A. Bennett, VSB #37523
Craig C. Marchiando, VSB #89736
**CONSUMER LITIGATION ASSOCIATES, P.C.**
763 J. Clyde Morris Blvd., Suite 1-A
Newport News, VA 23601
(757) 930-3660 – Telephone
(757) 930-3662 – Facsimile
Email: len@clalegal.com
Email: craig@clalegal.com

Kevin A. Dillon, VSB # 93475
Drew Sarrett, VSB#81658
**CONSUMER LITIGATION ASSOCIATES, P.C.**
626 E Broad Street, Suite 300
Richmond, VA 23219
(804) 905-9904 – Telephone
(757) 930-3662 – Facsimile
Email: kevin@clalegal.com

Kristi C. Kelly, VSB #72791
Andrew J. Guzzo, VSB #82170
Casey Nash, VSB #84261
J. Patrick McNichol, VSB #92699
**Kelly Guzzo, PLC**
3925 Chain Bridge Road, Suite 202
Fairfax, VA 22030
(703) 424-7572 – Telephone
(703) 591-0167 – Facsimile
Email: kkelly@kellyguzzo.com
Email: aguzzo@kellyguzzo.com
Email: casey@kellyguzzo.com
Email: pat@kellyguzzo.com

James A. Francis
John Soumilas *Pro Hac Vice*
Jordan M. Sartell
FRANCIS & MAILMAN, PC
Land Title Building
100 S. Broad Street, Suite 1902
Philadelphia, PA 19110
(214) 735-8600 – Telephone
(215) 940-8000 – Facsimile
Email: jfrancis@consumerlawfirm.com
Email: jsoumilas@consumerlawfirm.com

29

Email: jsartell@consumerlawfirm.com

Eleanor Michelle Drake
BERGER MONTAGUE
1229 Tyler Street NE, Suite 205
Minneapolis, MN 55413
Email: emdrake@bm.net

Keith J. Keogh
William M. Sweetnam
Keogh Law, LTD.
55 W. Monroe St., Ste. 3390
Chicago, Il 60603
312.374.3403 (Direct)
312.726.1092 (Main)
312.726.1093 (Fax)
Email: Keith@KeoghLaw.com

AJ Stecklein
Michael Rapp
Matthew Robertson
Stecklein & Rapp Chartered
748 Ann Avenue, Suite 101
Kansas City, Kansas 66101

*Counsel for Plaintiffs*