**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION**

CYNTISHA STEWART, *et al.*,          :          CASE NO.: 3:20cv903-JAG

       Plaintiffs,                                :

v.                                                           :

LEXISNEXIS RISK DATA RETRIEVAL
SERVICES, LLC a/k/a LexisNexis Risk      :
Data Management, *et al.*,

       Defendants.                              :

---

## INJUNCTIVE RELIEF ORDER

---

On [July 27], 2022, the Court entered its Order granting the Motion for Final Approval of Class Action Settlement and Entry of Final Judgment and Order (Docket No. 92). Prior to and on that date, the Court received argument from both Parties in support of this proposed Injunctive Relief Order. After consideration of the argument and factual detail provided and upon the Court's own determination, pursuant to that Order and Section 4.3 of the Settlement Agreement and Release, dated January 10, 2022 (the "Settlement Agreement"), the Court enters this Injunctive Relief Order.

For purposes of this Injunctive Relief Order, the Court adopts and incorporates the definitions and meanings of the defined terms set forth in the Settlement Agreement (the "Defined Terms"). The Defined Terms referenced in this Injunctive Relief Order are as stated below. The terms of this Injunctive Relief Order reflect the Injunctive Relief provisions in the Settlement Agreement.

## I. DEFINITIONS

1. "Litigation" means this civil action captioned, *Stewart, et al. v. LexisNexis Risk Solutions Inc., et al.*, No. 3:20-cv-903 in the United States District Court for the Eastern District of Virginia, and all other Settled Actions.

2. "Named Plaintiffs" means Cyntisha Stewart, Terry Brown, Eduardo Cantizzano, Lisa Hill-Green, Theresa Hill, Michael G. Clark, Christopher Peterson and Yolanda Jones or any of them.

3. "LNRDM" means Defendant LexisNexis Risk Data Management LLC, and any other predecessor entities engaged in the same Covered Conduct as LNRDM, including but not limited to, LexisNexis Risk & Information Analytics Group, Inc. and LexisNexis Risk Data Retrieval Services LLC.

4. "LNRS" means Defendant LexisNexis Risk Solutions Inc. and any other predecessor entities engaged in the same Covered Conduct as LNRS, including but not limited to, LexisNexis Risk Solutions Bureau LLC.

5. "Defendants" means LNRS and LNRDM.

6. "Party" and "Parties" mean the Named Plaintiffs, the Rule 23(b)(2) Settlement Class, the Rule 23(b)(3) Settlement Class and the Defendants.

7. "Class Counsel" means those attorneys approved and appointed by the Court to represent the Rule 23(b)(2) and Rule 23(b)(3) Settlement Classes.

8. "Collection Performance" means the assessment LNRDM will undertake to employ commercially reasonable procedures to achieve maximum possible accuracy of LNRDM's retrieval of Subsequent Case Update Events from Sources with a Visit Interval of sixty (60) days or less. Collection Performance assessment includes: (1)

selecting from each relevant Source a statistically significant number of Open Public Records bearing action dates in the prior seven years; (2) retrieving each selected Open Public Record from the Source to determine whether a Subsequent Case Update Event is publicly available; and (3) analyzing the responses retrieved and identifying means to improve retrieval of Subsequent Case Update Events where necessary.

9. "Consumer File Disclosure" means the document LNRS provides to a consumer in response to a consumer's request pursuant to 15 U.S.C. § 1681g for information in his or her file.

10. "Consumer Report" means the report as defined in 15 U.S.C. § 1681a(d) and provided by a consumer reporting agency as defined in 15 U.S.C. § 1681a(f).

11. "Court" means the United States District Court for the Eastern District of Virginia where the Litigation is pending.

12. "Covered Conduct" means (a) the reporting of Judgments, Liens or Landlord Tenant records and any related violations of the FCRA or FCRA State Equivalents, (b) LNRS' disclosure of Motor Vehicle Records on Consumer File Disclosures and any related violation of the FCRA or FCRA State Equivalents and (c) LNRDM's provision of data relating to Judgment, Lien and Landlord Tenant records and any related violations of the FCRA or FCRA State Equivalents.

13. "Customer-Facing Documentation" means documentation that LNRS may provide to current and potential LNRS customers to assist in explaining Landlord Tenant records within LNRS Consumer Report products, including but not limited to, marketing, sales and promotional materials and technical user guides.

14. "Effective Date" means the date on which this Court's entry of the Final Judgment and Order and this Court's orders regarding attorneys' fees have all become final because the following has occurred: (1.) there are no objections to the Final Judgment and Order, or (2.) if there are any objections, (i.) the expiration of three (3) business days after the time to file a motion to alter or amend the Final Judgment and Order under Federal Rule of Civil Procedure 59(e) has passed without any such motion having been filed; (ii.) the expiration of three (3) business days after the time in which to appeal the Final Judgment and Order under Federal Rule of Appellate Procedure 4(a)(1) has passed without any appeal having been filed, or unless the day falls on a weekend or a Court holiday, in which case the date shall be deemed to be the next business day; and (iii.) if such motion to alter or amend is filed, or if an appeal is taken, three business days after a final determination of any such motion or appeal that permits the consummation of the Settlement. For purposes of this definition, the term "appeal" includes all writ proceedings.

15. "FCRA" means the federal Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.*

16. "FCRA State Equivalents" means any statute or regulation of any State, the District of Columbia, or Puerto Rico, that has the purpose or effect of regulating the collection, procurement, use, or disclosure of the same or similar information that meets the definition of Consumer Report.

17. "Final Judgment" or "Final Judgment and Order" means the final judgment and order of dismissal entered by the Court in this Litigation granting final approval of this Settlement Agreement (including certifying both the Rule 23(b)(2) and the Rule 23(b)(3) Settlement Classes, finding the benefits provided to and releases and other

consideration provided by such Classes to be fair, reasonable and adequate, approving Class Counsel's request for attorneys' fees, costs, and other expenses and Named Plaintiffs' requests for Service Awards).

18. "Injunctive Relief" means the injunctive relief programs to which the Defendants have agreed in the Rule 23(b)(2) Class Settlement which benefit the Rule 23(b)(2) Settlement Class, and as Ordered herein as further described in Section II.

19. "Injunctive Relief Order" means this Order.

20. "Judgment" means a record typically characterized by an award of money as ordered by the judge, a record of a Judgment in one court transcribed to another court, or a lien recorded on the basis of a Judgment. Subsequent case update events to "Judgment" records include satisfactions (payments in full), vacaturs (reversal of the judgment as if it did not occur) and releases of judgment liens. Judgment as defined herein does not include Landlord Tenant records which are separately defined in Section I(21).

21. "Landlord Tenant" means a record involving disputes between landlords and tenants. "Landlord Tenant" records include new suits (initial case filings), non-monetary adjudications ordering the tenant to leave the property (evictions), and awards of restitution (landlord tenant judgments). Subsequent case update events to "Landlord Tenant" records include satisfactions, vacaturs and dismissals.

22. "Lien" means a record typically reflecting the non-payment of state or federal taxes. Subsequent case update events to "Lien" records include releases (payments in full) and filed in errors (reversal of the lien as if it did not occur).

23. "LNRDM's Consumer Reporting Agency Customers" means LNRS and any customer of LNRDM who is contractually permitted to use data supplied by LNRDM regarding Public Records for permissible purposes as defined under the FCRA.

24. "LNRDM's Oklahoma Database" means those databases maintained by LNRDM (regardless of physical location) in which LNRDM stores and transmits data about Public Records to LNRDM's Consumer Reporting Agency Customers.

25. "Motor Vehicle Record" or "Motor Vehicle Records" mean traffic infraction records that may be reported in the "Motor Vehicle Records" section of Consumer File Disclosures.

26. "Open Public Record" means a Judgment, Lien, or Landlord Tenant record that does not have an associated publicly available Subsequent Case Update Event in LNRDM's Oklahoma Database.

27. "Public Record" means a Judgment, Lien or Landlord Tenant record that was obtained from a Source.

28. "Released Parties" means:

    i. LNRS,

    ii. LNRDM, and

    iii. Each of their past and present employees, parents and subsidiaries and affiliate corporations or other business entities, members, officers, directors, employees, agents, contractors, personal representatives, insurers, attorneys and assigns, as well as LNRS's customers, resellers and retransmitters. For purposes of clarity, "Released Parties" does not include entities that purchased data from LNRDM unless such entity is presently related by corporate ownership to either Defendant.

    Notwithstanding any other provision of the Settlement Agreement, no LNRS customer, reseller or retransmitter is released for its own conduct or omission that is not based on and derivative of Covered Conduct by LNRS and/or LNRDM.

29. "Rule 23(b)(2) Class Settlement" means the settlement and terms included herein by which the Rule 23(b)(2) Settlement Class settles and releases the Rule 23(b)(2) Settlement Class Released Claims.

30. "Rule 23(b)(2) Settlement Class" or "Rule 23(b)(2) Settlement Class Members" mean all persons residing in the United States of America who at any time from July 24, 2013 through the date of Preliminary Approval had: (1) a Lien, Judgment or Landlord Tenant record made publicly available by a government source or a Lien, Judgment or Landlord Tenant related court record included in a Consumer Report furnished by LNRS or (2) a Motor Vehicle Record included in a Consumer File Disclosure by LNRS.

31. "Rule 23(b)(2) Settlement Subclass" means members of the Rule 23(b)(2) Settlement Class who only had a Motor Vehicle Record included in a Consumer File Disclosure by LNRS. Unless expressly stated otherwise, whenever this Agreement refers to the Rule 23(b)(2) Settlement Class, the Rule 23(b)(2) Settlement Subclass is also included.

32. "Rule 23(b)(2) Settlement Class Released Claims" are the claims settled in the Rule 23(b)(2) Settlement by each member of the Rule 23(b)(2) Settlement Class and his or her respective spouses, heirs, executors, administrators, representatives, agents, attorneys, partners, successors, predecessors, assigns, and all those acting or purporting to act on their behalf and include (a) the right to bring any claims that were or could have been alleged on behalf of a purported class or otherwise asserted on an aggregate basis in the Settled Actions against any and all of the Released Parties under the FCRA or FCRA State Equivalents relating to the Covered Conduct, as well as (b) any claims for statutory damages for violations of the FCRA or FCRA State Equivalents, which

each member of the Rule 23(b)(2) Settlement Class will acknowledge full satisfaction of, and shall be conclusively deemed to have fully, finally, and forever settled, released and discharged, subject to the limitation herein below. Notwithstanding the foregoing, the Rule 23(b)(2) Settlement Class Members do not release any Released Party who is a LNRS customer, reseller or retransmitter for its own conduct or omission that is not based on and derivative of Covered Conduct by Defendants and do not in the Rule 23(b)(2) Settlement release individual claims other than as to statutory damages.

33. "Rule 23(b)(3) Settlement" means the settlement and terms included herein by which the Rule 23(b)(3) Settlement Class settles and releases the Rule 23(b)(3) Settlement Class Released Claims.

34. "Rule 23(b)(3) Settlement Class" or "Rule 23(b)(3) Settlement Class Members" mean all individuals in the United States who disputed a lien or judgment record with LNRS (either directly or indirectly via a reseller) from July 24, 2016 through December 31, 2021. Excluded are counsel of record (and their respective law firms) for any of the Parties, employees of Defendants, and any judge presiding over this Litigation and their staff, and all members of their immediate family.

35. "Rule 23(b)(3) Settlement Class Released Claims" are the claims settled in the Rule 23(b)(3) Settlement by each member of the Rule 23(b)(3) Settlement Class and his or her respective spouses, heirs, executors, administrators, representatives, agents, attorneys, partners, successors, predecessors, assigns, and all those acting or purporting to act on their behalf that were or could have been alleged in the Settled Actions against any and all of the Released Parties, whether asserted on an individual or class basis, arising before the Effective Date whether known or unknown, matured or unmatured,

foreseen or unforeseen, suspected or unsuspected, accrued or unaccrued which the Rule 23(b)(3) Settlement Class Members ever had or now has, including but not limited to, all claims resulting from, arising out of, or in any way connected to the Litigation, its underlying subject matter or the events that qualified the individual for membership in the Rule 23(b)(3) Settlement Class of which each member of the Rule 23(b)(3) Settlement Class will acknowledge full satisfaction, and shall be conclusively deemed to have fully, finally, and forever settled, released and discharged, subject to the limitation herein below. Notwithstanding the foregoing, the Rule 23(b)(3) Settlement Class Members do not release any Released Party who is a LNRS customer, reseller or retransmitter for its own conduct or omission that is not based on and derivative of Covered Conduct by Defendants, including all claims alleged in *In Re: TransUnion Rental Screening Solutions, Inc. FCRA Litigation*, No. 1:20-md-02933-JPB.

36. "Settled Actions" means the four putative class actions resolved by this Settlement Agreement: *Hill v. LexisNexis Risk Solutions Inc.*, 18-cv-560 (W.D. Mo.); *Jones v. LexisNexis Risk Solutions Inc.*, No. 20-cv-06263 (S.D. Ohio); *Clark, et al. v. LexisNexis Risk Solutions Inc.*, No. 20-cv-01920 (D. Minn.); *Stewart, et al. v. LexisNexis Risk Data Retrieval Services, LLC a/k/a LexisNexis Risk Data Management, et al.*, No. 3:20-cv-903 (E.D. Va.).

37. "Settlement" means the exchange of consideration among the Rule 23(b)(2) Settlement Class, the Rule 23(b)(3) Settlement Class, Defendants and Class Counsel reflected in and contemplated by this Settlement Agreement and constituting the Rule 23(b)(2) Settlement and the Rule 23(b)(3) Settlement.

38. "Settlement Agreement" means the Settlement Agreement and Release, including its Exhibits.

39. "Source" means a particular courthouse, recorder's office or other government agency responsible for the publication of Public Records or providing access to Public Records.

40. "Subsequent Case Update Events," when referred to separately, means the subsequent case update events for Public Records as defined in Section I(20)–(22).

41. "Sunset Date" means the earlier of seven years from the Effective Date or June 30, 2029.

42. "Vendor" or "Vendors" refers to the persons or entities that retrieve Public Records from Sources on behalf of LNRDM.

43. "Visit" means each date where LNRDM or its Vendor retrieves a Public Record from a Source.

44. "Visit Interval" means the average number of days between Visits to a Source calculated with respect to an assessment timeframe.

## II. INJUNCTIVE RELIEF

The Court hereby orders that Defendants comply as follows:

a. Defendant LNRDM will report to its Consumer Reporting Agency Customers its Visit Intervals, as updated on a monthly basis, for each Source. On an annual basis while the Injunction is in effect, LNRDM shall disclose to Class Counsel the number of Sources that have a Visit Interval of 60 days or less and the number and identity of Sources that have a Visit Interval greater than 60 days. This information disclosed to Class Counsel will be confidential and subject to a protective order that limits the use

of the information, and all information derived therefrom, solely for purposes of assessing the Injunctive Relief herein.

b. Defendant LNRS will not sell or otherwise furnish in Consumer Reports Public Records obtained from LNRDM unless LNRDM follows the procedures for record collection set out in this Order, the most recent Visit Interval for such Source is sixty (60) days or less, and LNRDM conducts a Collection Performance at each Source at least once a year. LNRS shall have the right to request relief from this requirement with respect to Visit Intervals if, with product evolution, collection frequency becomes irrelevant to Consumer Report currency.

c. Defendants and Class Counsel will develop a sample size for each Source of LNRDM's Open Public Record data for the prior seven years of filings to permit conclusions as to agreed levels of confidence and error rate for update collection benchmarking and comparative analysis purposes.

d. On an annual going forward basis, LNRDM shall assess Collection Performance at each Source with a Visit Interval of sixty (60) days or less using the sample size derived in (c) for the prior seven years of filings with the intent to continually improve on its update collection practices. The Court recognizes Plaintiffs' acknowledgement that collection of 100% of the Subsequent Case Update Events for Public Records within any defined period of time at any Source in most cases will be neither feasible nor commercially reasonable. LNRDM will conduct a yearly confidential internal assessment to evaluate the efficacy of procedures to meet Collection Performance standards. The confidential internal assessment will be conducted through the Defendants' General Counsel's office, and any documents or other work product

generated by that confidential internal assessment will be protected by all applicable privileges or protections, including but not limited to the attorney-client privilege and the self-evaluative privilege, and shall not be discoverable. Defendants will evaluate the internal assessment and address any material findings identified in the assessment with senior management.

e. The Court approves the selection of Jeffrey Zeskind (the "Reviewer") as the independent, third-party to perform a one-time review ("the Review") of the methodology used to conduct the Collection Performance in (d), including the methodology to establish the sample size described in (c), and to substantively report to Class Counsel whether or not Defendants are meeting the terms of this Agreement and the methodology is commercially reasonable. The Review shall be performed within nine (9) months of the completion of (a)–(d) and shall be conducted at Defendants' sole expense. The Reviewer shall complete the Review within six (6) months after the process described in Section (f). Notwithstanding that time limitation, the Reviewer may be afforded a reasonable extension to complete the Review to the extent reasonably necessary.

f. Prior to the Review, the Reviewer and Class Counsel shall be provided, subject to an agreement to protect proprietary and confidential information, a detailed presentation of LNRDM's agreed Visit Interval and Collection Performance standards. Following this presentation, the Reviewer will be provided with the methodologies used to determine Visit Intervals and to conduct the Collection Performance in (d), including the methodology to establish the sample size described in (c), and shall review the commercial reasonableness as to each.

g. To determine "commercial reasonableness" with respect to the Visit Interval methodology, the Reviewer will:

1. Gain an understanding of LNRDM's procedures for measuring Visit Intervals from the documentation provided;

2. Confirm the understanding of LNRDM's procedures for measuring Visit Intervals by interviews with those preparing the Visit Interval measurements;

3. Gain an understanding of how often LNRDM prepares and measures Visit Intervals and determine if all Sources are measured;

4. Validate that measurement and reporting by reviewing monthly reports and the Sources included in the monthly reports;

5. Select a statistically valid sample of Sources for the previous year for which Visit Interval calculations were prepared and validate the Visit Interval calculation; and

6. Document and test that Visit Interval information is provided to LNRDM's Consumer Reporting Agency Customers on a monthly basis by reviewing a statistically valid sample of reports made available to LNRDM's Consumer Reporting Agency customers during the previous year.

h. To determine "commercial reasonableness" with respect to the Collection Performance procedures used to achieve maximum possible accuracy of LNRDM's retrieval of Subsequent Case Update Events from Sources with a Visit Interval of sixty (60) days or less, the Reviewer will perform the following steps to assess and evaluate the methodology used to (1) select from each relevant Source a statistically significant number of Open Public Records bearing action dates in the prior seven years; (2)

13

retrieve each selected Open Public Record from the Source to determine whether a Subsequent Case Update Event is publicly available; and (3) analyze the responses retrieved to identify means to improve retrieval of Subsequent Case Update Events where necessary:

1. Gain an understanding of LNRDM's procedures for measuring Collection Performance from the documentation provided;

2. Confirm the understanding of LNRDM's procedures for measuring Collection Performance by interviews with those preparing and those using the Collection Performance measurements, as well as documents determined necessary;

3. Determine how LNRDM has developed a sample of Sources;

4. Obtain from LNRDM a listing of all Sources and months for which a sample of cases was selected and Collection Performance was calculated;

5. Calculate the ratio or percentage of Sources that could have been tested to the population of Sources that were tested;

6. Using the listing of Sources tested obtained in (4) above, accumulate and report the number of Sources selected for the Collection Performance calculation by month to discern any patterns in LNRDM's processes;

7. Obtain from LNRDM and review the data available that shows the time period used for a Source to select a sample of cases for field work, testing, calculation and publication of Collection Performance metrics;

8. Assess the reasonableness of the variables or parameters used by LNRDM to determine sample size:

    i. Population size,

14

  ii. Confidence level,

  iii. Acceptable margin of error, and

  iv. Proportion;

9. Assess the reasonableness of the methodology (e.g., process, variables or parameters) used by LNRDM to determine Collection Performance;

10. Using the data from the Sources tested, recalculate and confirm the methodology used for Collection Performance for a statistically valid sample; and

11. Obtain information to determine what efforts to manage performance LNRDM has made with respect to Visit Intervals and Collection Performance and gain an understanding of such efforts and measurement of the results of such efforts.

i. If the Reviewer cannot confirm that LNRDM is meeting the terms of this Injunctive Relief Order, or the methodology is not commercially reasonable, the Reviewer will provide feedback to LNRDM and shall so advise Class Counsel that LNRDM is either not meeting the terms of this Injunctive Relief Order or the methodology is not commercially reasonable. Once the Reviewer concludes LNRDM is meeting the terms of this Injunctive Relief Order and the methodology is commercially reasonable, the Reviewer shall provide a substantive written report to the Court, filed under seal, and to Defendants and Class Counsel certifying LNRDM is meeting its obligations as set forth in the Injunctive Relief Order.

j. Defendants shall take necessary reasonable action to promptly remediate to the extent commercially reasonable any discrepancies reported by the Reviewer. In the event

the Parties are unable to agree on remedial actions, the process below outlined in Sections V and VII shall be followed.

k. LNRS shall not include in Consumer File Disclosures any Motor Vehicle Records that antedate the report by more than seven years.

l. LNRS will re-label the "suspension" and "reinstatement" date field names for Motor Vehicle Records that LNRDM retrieves from courthouses.

m. LNRS will identify the source of the Motor Vehicle Records in its Consumer File Disclosures.

n. LNRS will revise its Customer-Facing Documentation concerning the reporting of Landlord Tenant records to clarify the distinction between "new filings," "evictions," and "monetary judgments."

### III. TIMETABLE FOR IMPLEMENTATION OF INJUNCTIVE RELIEF

Defendants will make a reasonable and good faith effort to implement the Injunctive Relief within twelve (12) months of the Effective Date. Notwithstanding this provision, if Defendants are unable to comply with this deadline, Defendants may move the Court for a reasonable extension of time sufficient to permit completion of the task upon submission of an application to the Court showing good cause for the extension.

### IV. SUNSET DATE

The obligations of Sections II(a)–(n) of this Injunctive Relief Order will expire the earlier of seven years from the Effective Date or June 30, 2029 ("Sunset Date").

### V. DISPUTE RESOLUTION PROCESS

If any Rule 23(b)(2) or Rule 23(b)(3) Settlement Class member has a claim or dispute regarding Defendants' compliance with this Order or the Settlement Agreement, including but not limited

16

to the Injunctive Relief, then such Settlement Class member first must submit, *pro se* or through counsel, his or her dispute directly to Defendants before taking any other action. Upon receipt of such a dispute, Defendants will advise Class Counsel of the dispute. Defendants will investigate the dispute and respond to the Settlement Class member within thirty (30) days, with a copy of its response to Class Counsel. Defendants' response must state the results of Defendants' investigation of the allegation of non-compliance with the Settlement Agreement and any action taken or to be taken to address the Settlement Class member's dispute; or, if additional information is required for Defendants to complete their investigation, Defendants' response must identify the specific additional information that is required. Upon the submission of all the additional information required (as set forth in Defendants' response), Defendants will have twenty-one (21) days to complete their investigation of the Settlement Class member's dispute regarding the allegation of non-compliance with the Settlement Agreement and to provide a response containing the results of its investigation and any action taken or to be taken to address the dispute. Notwithstanding this provision, if Defendants are unable to comply with this deadline, Defendants may move the Court for a reasonable extension of time sufficient to permit completion of the investigation upon submission of an application to the Court showing good cause for the extension.

If, after the dispute resolution process described above has been completed, the Settlement Class member may submit his or her dispute regarding the allegation of non-compliance with the Settlement Agreement to the Court under the caption for this Litigation. The Settlement Class member's submissions to the Court must include copies of all correspondence between the Settlement Class member and Defendants regarding the dispute prior to the submission. The Court shall have exclusive and sole jurisdiction to resolve the dispute.

## VI. LIMITATIONS ON INJUNCTIVE RELIEF

Any action by Defendants determined in good faith to be reasonably necessary to comply with any federal, state, or local law, enactment, regulation, or judicial ruling shall not constitute a violation of this Order. In the event that any obligation of Defendants pursuant to this Order would be deemed unlawful with any future federal, state, or local law, enactment, regulation, or judicial ruling, then Defendants will file a motion for miscellaneous relief, seeking to be released from performing such obligation. Class Counsel shall file any brief in opposition within twenty (20) days after the service of Defendants' motion for miscellaneous relief (which may be extended by the Court for good cause). Should Class Counsel not file any brief in opposition within the twenty (20) day period, the Court shall presume that Class Counsel does not oppose the relief requested in Defendants' motion for miscellaneous relief. Defendants shall file any reply brief in support of their motion for miscellaneous relief within seven (7) days after the filing of any brief in opposition.

This Order shall not in any way impose any obligation, duty or responsibility on the Defendants or create a right on behalf of the Rule 23(b)(2) Settlement Class beyond what is described in this Order.

## VII. COURT'S JURISDICTION

The Court reserves continuing and exclusive jurisdiction over the parties with respect to all matters relating to this Injunctive Relief Order, including its administration, interpretation, effectuation, and enforcement of its provisions. None of the parties, including any Rule 23(b)(2) Settlement Class Member, shall be entitled to the recovery of attorney's fees, costs or other expenses other than as expressly provided herein in connection with any efforts to monitor compliance with this Injunctive Relief Order. Either Defendants or Class Counsel may file an

appropriate motion to enforce this Settlement Agreement in the event of breach of the agreement by the other. At its discretion, the Court may award attorneys' fees to the substantially prevailing party if the Court is required to reach a decision as to whether or not a party is in violation of the Injunctive Relief and/or breached the Settlement Agreement.

## VIII. NOTICES

All notices or formal communications under this Order, including any claims or disputes pursuant to Section V, shall be in writing and shall be given (i) by hand delivery; (ii) by registered or certified mail, return receipt requested, postage pre-paid; or (iii) by overnight courier to counsel for the Party to whom notice is directed at the following addresses:

For the Named Plaintiffs and Rule 23(b)(2) and Rule 23(b)(3) Settlement Classes:

Leonard Anthony Bennett
Consumer Litigation Associates, P.C.
763 J Clyde Morris Boulevard
Suite 1A
Newport News, VA 23601

Kristi C. Kelly
Kelly Guzzo PLC
3925 Chain Bridge Road, Suite 202
Fairfax, VA 22030

E. Michelle Drake
Berger Montague PC
1229 Tyler Street NE, Suite 205
Minneapolis, MN 55413

James A. Francis
Francis Mailman Soumilas P.C.
1600 Market Street
Philadelphia, PA 19103

Keith Keogh
Keogh Law Ltd.
55 W. Monroe Street
Chicago, IL 60603

19

For Defendants:

>Ronald I. Raether, Jr.
>Troutman Pepper Hamilton Sanders LLP
>5 Park Plaza, Suite 1400
>Irvine, CA 92614
>
>James F. McCabe
>Alston & Bird LLP
>560 Mission Street, Suite 2100
>San Francisco, CA 94105

Counsel may designate a change of the person to receive notice or a change of address, from time to time, by giving notice to the Court and all Parties in the manner described in this Section.

**IT IS SO ORDERED.**

DATED: [Jul 27], 2022

/s/ John A. Gibney, Jr.
Senior United States District Judge

HONORABLE JOHN A. GIBNEY, JR.
UNITED STATES DISTRICT JUDGE